1  LOCKE LORD LLP
2  MICHAEL F. PERLIS (095992)
   mperlis@lockelord.com
3  CARY J. ECONOMOU (211438)
   ceconomou@lockelord.com
4  F. PHILLIP HOSP (265225)
   phosp@lockelord.com
5  300 South Grand Avenue, Suite 2600
6  Los Angeles, CA 90071
   Telephone:  213-485-1500
7  Facsimile:   213-485-1200
8
9  Attorneys for Plaintiff
   MOTORCAR PARTS OF AMERICA, INC.
10

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

14  MOTORCAR PARTS OF AMERICA, INC., )   CASE NO. CV14-01153
                                      )
15                        Plaintiff,  )   **OPPOSITION TO DEFENDANTS'**
                                      )   **MOTION TO DISMISS**
16        vs.                         )   **PLAINTIFF MOTORCAR PARTS**
                                      )   **OF AMERICA, INC.'S**
17                                    )   **COMPLAINT FOR LACK OF**
                                      )   **PERSONAL JURISDICTION AND**
18  FAPL HOLDINGS INC., ET AL.,       )   *FORUM NON CONVENIENS*
                                      )
19                        Defendants. )
                                      )   Hearing Date:   June 19, 2014
20                                    )   Time:           8:30 a.m.
                                      )   Courtroom:      10
21                                    )   Judge:          Hon. George H. Wu
                                      )
22                                    )
                                      )
23                                    )
                                      )
24  _____ )
25                                        Complaint Filed: February 13, 2014
                                          Trial Date: N/A
26

27

28

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................... 1

II.     STATEMENT OF FACTS .................................................................. 3

III.    LEGAL STANDARD ...................................................................... 10

IV.     PERSONAL JURISDICTION EXISTS........................................... 10

      A.      Defendants Purposefully Directed Their Activities Towards California
         and the United States................................................................ 10

      B.      Defendants Cannot Demonstrate That Personal Jurisdiction
         Would Be Unreasonable. ......................................................... 15

V.      *FORUM NON CONVENIENS*.......................................................... 21

      A.      The Private Interest Factors Do Not Weigh In Favor of Dismissal......... 21

      B.      The Public Interest Factors Weigh Heavily In Favor of MPA. .............. 24

VI.     CONCLUSION ................................................................................ 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Locke Lord LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA  90071**

i

# TABLE OF AUTHORITIES

Page(s)

CASES

*1337523 Ontario, Inc. v. Golden State Bancorp., Inc.*,
    163 F. Supp. 2d 1111 (N.D. Cal. 2001)................................................17

*Advanced Skin & Hair, Inc. v. Bancroft*,
    858 F. Supp. 2d 1084 (C.D. Cal. 2012)...............................................10

*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995) ..............................................................23

*Boston Telecomms. Grp. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ............................................................22

*Brainerd v. Governors of the University of Alberta*,
    873 F.2d 1257 (9th Cir. 1989) ......................................................11, 12

*Cal. Software Inc. v. Reliability Research, Inc.*,
    631 F. Supp. 1356 (C.D. Cal. 1986) ...................................................15

*Calder v. Jones*,
    465 U.S. 783 (1984).............................................................................11

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011) ............................................................24

*Caruth v. Int'l Psychoanalytical Ass'n.*,
    59 F.3d 126 (9th Cir. 1995) ..........................................................17, 23

*Clarkson Co. Ltd. v. Rockwell Int'l Corp.*,
    441 F. Supp. 792 (N.D. Cal. 1977).....................................................17

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ..............................................................23

*Cubbage v. Merchant*,
    744 F.2d 665 (9th Cir. 1984) ..............................................................20

*CYBERsitter, LLC v. People's Republic of China*,
    805 F. Supp. 2d 958 (C.D. Cal. 2011).................................................10

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Data Disc, Inc. v. Sys. Tech. Assoc.*,
   557 F.2d 1280 (9th Cir. 1977) ............................................................................13

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ......................................................................passim

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ....................................................................18, 21

*Grosvenor Props. Ltd. v. Southmark Corp.*,
   896 F.2d 1149 (9th Cir. 1990) ............................................................................17

*Grunenthal GmbH v. Holz*,
   712 F.2d 421 (9th Cir. 1983) ..............................................................................18

*Hilgraeve Corp. v. Symantec Corp.*,
   265 F.3d 1336 (Fed. Cir. 2001) ..........................................................................17

*Hunter-Smith et al v. Fenwick Automotive Products Limited et al.*,
   Case No. 1:14-cv-00581-LPS (D. Del. May 5, 2014) (*See* Ex. T)........................16

*Khalij Commercial Bank Ltd. v. Woods*
   (1985) 50 O.R. (2d) 446, [1985] O.J. No. 2500 ..................................................18

*In re LDK Solar Securities Litigation*,
   No. C 07–05182 WHA, 2008 WL 4369987 (N.D. Cal. May 29, 2008) ...............11

*Lyddon v. Rocha–Albertsen*,
   No. 1:03-CV-05502 OWW, 2006 WL 3086951 (E.D. Cal. Oct. 30, 2006)..........11

*Mitan v. Feeney*,
   497 F. Supp. 2d 1113 (C.D. Cal. 2007) ...............................................................10

*Panavision v. Toeppen*,
   141 F.3d 1316 (1998) ......................................................................16, 19, 23

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).............................................................................................25

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ..............................................................................21

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................................10

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

iii

*Rocke v. Canadian Automobile Sport Club,*
    660 F.2d 395 (9th Cir. 1981) .................................................................. 18

*S.E.C. v. Ficeto,*
    No. CV 11-1637-GHK, 2013 WL 1196356 (C.D. Cal. Feb. 7, 2013) .................. 11

*Schoenbaum v. Firstbrook,*
    405 F.2d 200 (2d Cir. 1968) ............................................................. 14, 25

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ............................................................ 10, 11

*Sec. Investor Prot. Corp. v. Vigman,*
    764 F.2d 1309 (9th Cir. 1985) ................................................................ 10

*SEC v. Dunn,*
    587 F. Supp. 2d 486 (S.D.N.Y. 2008) ..................................................... 14

*Sher v. Johnson,*
    911 F.2d 1357 (9th Cir. 1990) ................................................................ 23

*Sinatra v. National Enquirer, Inc.,*
    854 F.2d 1191 (9th Cir. 1988) ..................................................... 15, 17, 20

*Theunissen v. Matthews,*
    935 F.2d 1454 (6th Cir. 1991) ................................................................ 17

*Tuazon v. R.J. Reynolds Tobacco Co.,*
    433 F.3d 1163 (9th Cir. 2006) ................................................................ 21

*Westcott v. Alsco Products of Canada Ltd.*
    (1960) 26 D.L.R. (2d) 281 (Nfld. S.C.) ................................................... 18

*Weyerhaeuser Co., Inc. v. Keating Fibre Int'l, Inc.,*
    416 F. Supp. 2d 1041 (W.D. Wash. 2006) .............................................. 20

**STATUTES**

15 U.S.C. § 78aa ......................................................................... 10, 14, 19

15 U.S.C. § 78cc(a) ............................................................................... 19

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case involves defendants FAPL Holdings, Inc. ("FAPL"), Gordon Fenwick, Joel Fenwick, Paul Fenwick, and Jack Shuster's (collectively, "Defendants") scheme to defraud plaintiff Motorcar Parts of America, Inc. ("MPA"), a public company headquartered in Torrance, California.[1] As part of this scheme, Defendants made numerous misrepresentations and misleading statements that induced MPA to provide capital and ultimately acquire Fenwick Automotive Products Ltd. ("Fenwick") and its affiliates (collectively, "Fenco"). Like the financial statements provided to MPA in connection with the acquisition, Defendants' Motion to Dismiss for lack of personal jurisdiction and *forum non conveniens* ("Motion") masks reality and the true nature of the claims at issue in the Complaint.

With Fenco having no cash or credit to operate its business, the only target in this case was MPA—and its management team—in California. Through Defendants' fraud, MPA committed itself to expend an unconscionable sum of money over an extended period of time to turn Fenco around. Despite duties owed to MPA in California, Defendants' scheme was conceived and accomplished by fraudulently inducing MPA's California management to rely on Defendants' misrepresentations and material omissions via telephone, electronic mail, and facsimile, as well as false financial information personally presented by Gordon Fenwick, Joel Fenwick, Paul Fenwick, and Jack Shuster (collectively, "Principals") to MPA executives in California. Furthermore, after the acquisition, MPA employed the Principals to assist in the management of Fenco. During that time, they continued to conceal the company's true financial picture.

---

[1] With this Opposition, MPA has filed the Declarations of Selwyn Joffe ("Joffe Decl."), David Lee ("Lee Decl."), Kevin Daly ("Daly Decl."), and F. Phillip Hosp ("Hosp Decl."). This Opposition is also being filed concurrently with the Opposition to Defendants' Motion to Dismiss the Fourth and Fifth Causes of Action.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

1

California is not only a fair forum, it is a compelling one. Application of the personal jurisdiction factors confirms this point. In addition to their multiple visits and business dealings within the state, the Principals also purposefully availed themselves of California by "expressly aiming" their wrongful conduct at MPA in California. Defendants fraudulently transmitted misleading statements into California for the purpose of inducing MPA's officers and directors to approve millions of dollars in loans, acquire Fenco, and release pre-existing security interests against Defendants' property.

Fenwick started as a Canadian company decades ago, but very little of its business involved Canada when it was acquired. Years prior to the acquisition, Fenco "determined it could no longer survive as a Canadian based manufacturing company" and moved all of its distribution and manufacturing facilities to the U.S. and Mexico. Due to its presence in the U.S., Fenco had litigated in U.S. courts and had a commercial liability policy covering California. Prior to the acquisition, Fenco stated that seventy percent of its sales would be attributable to its top U.S. customers. None of its main suppliers were Canadian. Its bank was headquartered in the U.S. It had U.S. bank accounts. And the vast majority of its assets were located in the U.S. as well, which is why Fenwick's bankruptcy action is now pending in a United States Bankruptcy Court.

Contrary to their claims, Defendants employed U.S. and Canadian attorneys to negotiate the various contracts and advise them on restrictions and reporting requirements of U.S. securities laws. They also retained U.S. and Canadian auditors to advise them on tax issues and Generally Accepted Accounting Principles ("GAAP"). While the Purchase Agreement was ultimately signed in Ontario, all of the fraudulent conduct influencing MPA's decision to sign the Purchase Agreement was aimed at California. Defendants' Motion to Dismiss should be denied.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## II.     STATEMENT OF FACTS

MPA is a New York corporation with its principal place of business in Torrance, California. MPA manufactures, remanufactures, and distributes aftermarket automobile parts. (Joffe Decl. ¶ 2.) Its common stock is listed on the Nasdaq Stock Market and publicly traded under the ticker symbol "MPAA." (*Id*.) For over twenty years, MPA has been headquartered in Torrance, California. (*Id.*) MPA's headquarters facility serves as the hub of MPA's operations—with approximately 200,000 square-feet dedicated to manufacturing and remanufacturing, shipping and receiving, warehousing, testing labs, inspection, packaging, and engineering. (*Id.* ¶ 4.) MPA's management team and corporate officers are also located in Torrance. (*Id.* ¶ 5.) Collectively, they oversee all aspects of MPA's business, including information systems, operations, human resources, all business development efforts, project coordination responsibilities, sales, customer service, corporate administration, significantly all accounting functions, all legal matters, and all SEC and Nasdaq compliance matters. (*Id.* ¶ 6.) The board of directors' and shareholders' meetings also occur in Torrance. (*Id.* ¶ 7.)

Founded in 1949, Fenwick was the second largest North American remanufacturer, manufacturer, and distributor of premium automotive products. (Mot. 3:6.) Fenwick entered the U.S. market in 1993. (Hosp Decl. ¶ 3, Ex. G at 165.) By 2006, the U.S. market accounted for seventy percent of Fenwick's sales. (*Id.* at 166.) Taking advantage of the weak American dollar and cheap labor, Fenwick relocated all of its distribution and manufacturing facilities to the U.S. and Mexico in 2009. (*Id.*) Its three facilities in Pennsylvania and New Hampshire employed approximately 475 people and comprised over 650,000 square feet. (*Id.* at 175.) Whereas, the administrative facility in Canada employed 132 people and comprised 20,000 square feet. (*Id.*)

Before the acquisition, Fenwick and its affiliated companies were wholly owned subsidiaries of FAPL:

**Chart 1.1.**



(Ex. G at 167.) The Principals owned FAPL and controlled the day to day management of its affairs. (*Id.*; Ex. A at 27.)

In 2010, Fenco and MPA's management had known each other for several years in the business and had previously discussed synergies between the two companies. (Joffe Decl. ¶ 8.) However, the first serious discussion about MPA's investment and ultimate acquisition did not occur until June 2010, when Jack Shuster flew to MPA's Torrance headquarters to meet with Selwyn Joffe, MPA's Chairman, President, & CEO. (*Id.*) At the meeting, Shuster proposed a partnership between the two companies whereby MPA would provide Fenwick with much needed capital in exchange for an option to purchase part of the company. (*Id.* ¶ 9.)

On June 23, 2010, Shuster returned to Torrance with Gordon Fenwick. (*Id.* ¶ 10.) At the meeting, Shuster and Fenwick gave a presentation discussing Fenco's products and market share, its business strategy, and a financial summary. (*Id.* ¶¶ 10-11, Ex. A.) In connection with the financial summary, Shuster and Fenwick

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

4

represented that Fenco's top U.S. customers accounted for almost seventy percent of its total sales. (*Id.* ¶ 10, Ex. A at 51.) They also provided financial statements indicating that the company's projected earnings before interest, taxes, depreciation, and amortization (EBITDA) was approximately $24 million. (*Id.* at 70.) They further represented that these projections were accurate. (*Id.*)

After the meeting, Trigiani and Shuster communicated regularly with MPA's corporate staff in Torrance, particularly with MPA's CFO, David Lee, providing financial statements and cost savings analyses that they knew MPA's Torrance team would be using in deciding whether to invest. (*Id.* ¶ 13; Lee Decl. ¶ 3. Ex. C.) Fenco's principals also communicated with MPA's Chief Accounting Officer, Kevin Daly, to assist him in converting Fenwick's financial statements to U.S. GAAP. (Lee Decl. ¶ 4, Ex. D.) These communications were in the form of telephone calls, mail, and electronic mail. (*Id.* ¶ 3.) Such communications frequently occurred multiple times in a single day. (*Id.*) In connection with its potential investment in Fenco, MPA hired Ernst & Young ("E&Y") in Los Angeles, MPA's outside auditor, to provide transaction services. (*Id.* ¶ 5.) E&Y's office in Los Angeles formed a team that included members of E&Y's offices in Los Angeles and Ontario, Canada. (*Id.*)

In August 2010, after receiving board authorization in Torrance, MPA entered into an agreement to loan Fenco $1,894,034.09 ("Debenture"), in which FAPL warranted that the "audited consolidated financial statements of [FAPL] and notes thereto as at and for the year ended March 31, 2009 present fairly in all material respects the consolidated financial position of [Fenwick]." (Joffe Decl. ¶ 14.) The loan was secured by a blanket lien on all of Fenco's assets, including assets located in Sacramento, California. MPA disclosed the Debenture in its SEC Form 8-K filed on August 30. (Hosp Decl. ¶ 4, Ex. H.)

Hoping to secure an additional investment, the Principals returned to Torrance again in September 2010. (Joffe Decl. ¶ 15.) As demonstrated by their internal emails entitled "IMPORTANT MEETING!!!," the purpose of their visit was to discuss and

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

exchange "information on how we each currently conduct business and the expectations going forward." (Hosp Decl. ¶ 5, Ex. I.) In addition to meeting with MPA, Fenco also applied for funding with Manufacturers and Traders Trust Company ("M&T") in Buffalo, New York. (*See* Ex. G.) In marketing materials presented to bank officials in the U.S., Fenco promoted its relationship with MPA stating, "Fenwick has access to capital through its strategic relationship with Motorcar Parts of America, Inc. (NASDAQ: "MPAA")." (*Id* at 165.) Fenco also touted its strong relationships with U.S. customers and suppliers. (*Id.* at 175.)

Virtually all of Fenco's revenue generating activity occurred in the U.S. (Joffe Decl. ¶ 2; Lee Decl. ¶ 9.) Prior to the acquisition, Fenco projected that approximately seventy percent of its sales would be attributable to its top five U.S. customers. (Lee Decl. ¶ 9; Ex. G at 175) It shipped products to these customers from distribution centers in the U.S. (Lee Decl. ¶ 9.) The remanufactured parts were assembled with used "cores" sorted by workers in its New Hampshire and Pennsylvania facility. (*Id.*) All three of its top "core" suppliers and two of its top three raw material suppliers were based in the U.S. (*Id.*) Other critical suppliers were based in the California: A-1 Automotive Core Supplier Company, Inc. (Santa Ana), Lap Co. (Fullerton), WJB Automotive Inc. (Ontario, CA), and The Recycler Core Company, Inc. (Riverside). (*Id.*; Hosp Decl. ¶ 6, Ex. J.) Fenco also utilized a warehouse in Sacramento, California to ship parts to its West Coast clients, Lee Decl. ¶ 9, and maintained a commercial liability policy for its activity in California, Hosp Decl. ¶ 7, Ex. K.

After M&T agreed to provide Fenco with a revolving credit facility, MPA's board in Torrance authorized an additional loan in the amount of approximately $2,969,000 ("Amended Debenture"), bringing the total aggregate loan amount to approximately $4,863,000. (Joffe Decl. ¶ 17.) The loan accrued interest at a rate equal to the prime rate as announced by The Wall Street Journal plus 8.75% per annum. (Shuster Decl., Ex. 6 at 44.) The Amended Debenture contained virtually identical

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

representations and warranties as the Debenture and was attached to MPA's SEC Form 8-K filed on December 12. (*Id.*)

With a view towards acquisition, Fenco continued to provide financial reports to MPA's corporate staff in Torrance and to E&Y. (Lee Decl. ¶ 10.) Such communications occurred on a daily basis. (*Id.*) The Principals also travelled to Los Angeles for several days in January 2011 to lead a joint OGSM (Objectives / Goals / Strategies / Measures) strategic planning conference and to discuss the overall MPA and Fenco integration strategy. (Lee Decl. ¶ 10, Ex. F.) In the months that followed, the parties both engaged legal counsel in Canada and the U.S. to negotiate the terms of the deal. (Hosp Decl. ¶ 9, Ex. M.) In addition, on March 1, Shuster and Trigiani came back to MPA's headquarters to meet with Joffe, Lee, Michael Umansky (MPA's General Counsel), and representative from M&T. (*See* Lee Decl. ¶ 11, Ex. F.)

On May 6, 2011, after receiving authorization from its board in Torrance, MPA executed the Purchase Agreement and acquired Fenco in exchange for 360,000 shares of its common stock.[2] (Joffe Decl. ¶ 21.) In acquiring the companies, MPA relied on the accuracy of the audited consolidated financial statements of FAPL and the notes thereto for the fiscal year ended on March 31, 2010, and the reviewed consolidated financial statements of FAPL for the nine month period ended on December 31, 2010. (Compl., Ex. A.) In the summaries of accounting policies, BDO stated that Fenco's financial statements were "prepared in accordance with Canadian GAAP, *which conforms, in all material respects, with [U.S. GAAP]*." (Hosp Decl. ¶ 10, Ex. N.) The Purchase Agreement and financial statements were attached to MPA's Form 8-K/A MPA filed on July 22, 2011 with the SEC.[3] (*Id.*)

---

[2] Under Section 6(f) of the Purchase Agreement, the parties acknowledged that MPA's common stock "is the class of securities of the Purchaser listed on the NASDAQ Global Market as of the date of this Agreement." There is no other established market for such shares.

[3] Fenco also entered into an amended and restated credit agreement with M&T, according to which MPA loaned Fenco an additional $10,000,000.

As to the terms of the Purchase Agreement, the parties only agreed to waive *forum non convenienes* objections if litigation commenced in Canada. (Compl., Ex. A.) Although the Purchase Agreement was to be interpreted under Canadian law, the parties agreed in § 24 that jurisdiction in Ontario courts was "**non-exclusive**," thereby vesting MPA with the right to prosecute an action in any other appropriate forum or jurisdiction. (*Id.*) Inherently, this included the right to oppose any attempt to dismiss the action after it is filed.[4] In addition, § 13 stated "Nothing in this Agreement … limits or restricts **in any way** any remedies available, or damages payable, for claims involving fraud or fraudulent misrepresentation." (*Id.*) Accordingly, the choice of law provision did not apply to claims for common law fraud or violations of U.S. securities laws.

On May 8, 2011, MPA's transfer agent in New York issued the share certificate to FAPL. Defendants have subsequently instructed the transfer agent to remove the restrictive legend. After receiving an opinion letter from MPA's securities counsel in New York, the transfer agent removed the legend and issued FAPL an unrestricted stock certificate. (Hosp Decl. ¶ 11, Ex. O.)

Following the acquisition, MPA discovered that many of the representations and warranties in the Purchase Agreement were untrue when made and that Defendants either knew that they were untrue or made those representations with a conscious disregard for their truth. (*See* Compl. ¶ 46) Among other things, MPA has alleged that Defendants (1) inflated Fenco's revenue by failing to record the full extent of future core returns at its facilities in Pennsylvania and New Hampshire (*id.* ¶¶ 48-50), (2) directed U.S. customers (e.g., Advance Auto Parts) to not return cores until after the acquisition so that liabilities would not be reflected in the financial

---

[4] Regardless of the merits of Defendants' waiver argument, the Motion to Dismiss for *forum non convenienes* still fails. As discussed below, Defendants have the high burden to demonstrate that litigating in this Court would be oppressive and vexatious. They fall far short of that requirement because the vast amount of the evidence and witnesses in this case are located in California, or otherwise within the Court's subpoena power under Rule 45.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

statements (*id.* ¶ 51), and (3) omitted numerous rebates and allowances to U.S. customers (e.g., NAPA Auto Parts) from the their accounts receivable sub-ledger or the accruals for contractual rebates and allowances due to the customers (*id.* ¶ 52).

These are but a few examples of Defendants' dishonest conduct. There are other instances of concealment during the due diligence period. For example, on October 20, 2010, Shuster sent an email to the Fenwicks stating:

> I was AGAIN asked by MPA (Selwyn this time) to provide signed copies of the employment agreements. They want to verify the agreement as well as make sure there is adequate non-competes therein (they are sensitive to all public company matters). ***I have lied in the past*** and indicated they were available. ***I was forced to lie again*** and say I would provide them. ***I can no longer lie.*** I said this would be a problem if not in place and it is turning out to be so. Deal is in your court.

(Hosp Decl. ¶ 12, Ex. P; *see also* Ex. Q.)

Based on the facts discovered, MPA timely tendered a notice of Direct Claims against Defendants pursuant to the indemnification procedures under § 14 of the Purchase Agreement. In March 2013, MPA subsequently agreed to a nonbinding and confidential mediation in Toronto. In doing so, MPA clearly stated in a letter that it reserved all rights and remedies under the Purchase Agreement "***including the right to assert its claims in a U.S. court***." (*Id.* ¶ 14, Ex. R.) The parties subsequently selected Retired Judge George W. Adams, not because of any nuances with Canadian contract law, which mirrors California law, but because he was one of the few mediators who was "***familiar with U.S. securities laws***" and presumably able to assess the merits of MPA's securities fraud claims. (*Id.*) However, as Defendants' counsel subsequently conceded, the mediation was unsuccessful because "[Judge Adams'] initial review of the parties' respective positions took much too long to complete…." (*Id.* ¶ 15, Ex. S.) Despite the result, MPA attempted to further settlement discussions and only filed this lawsuit after Defendants attempted to rescind a tolling agreement that the Principals had already signed. (Compl. ¶ 63.)

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

9

III.   **LEGAL STANDARD**

Where a motion to dismiss a complaint for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction in order to defeat a motion to dismiss. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Under that standard, the plaintiff need only allege facts which, if true, would support a finding of jurisdiction. *Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1087 (C.D. Cal. 2012); *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1118 (C.D. Cal. 2007). "The 'uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor.'" *CYBERsitter v. People's Republic of China*, 805 F. Supp. 2d 958, 966-67 (C.D. Cal. 2011) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)). "In other words, 'for purposes of this [prima facie] demonstration, the court resolves all disputed facts in the favor of the plaintiff.'" *Id.* at 967.

IV.   **PERSONAL JURISDICTION EXISTS.**

Generally, where there is no applicable federal statute governing personal jurisdiction, the district court looks to whether the defendants have minimum contacts with California. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Section 27 of the Securities Exchange Act of 1934 ("Exchange Act"), however, establishes the basis for personal jurisdiction in cases brought under the federal securities laws and applies to defendants with minimum contacts with the United States. 15 U.S.C. § 78aa; *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).

    A.   **Defendants Purposefully Directed Their Activities Towards California and the United States.**

A court may exercise "specific jurisdiction" when the following requirements are met: (1) the non-resident defendant purposefully directs his activities or

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

consummates some transaction with the forum or resident thereof, or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws, (2) the claim must arise out of or relate to the defendant's forum related activities, and (3) comports with fair play and substantial justice, i.e., it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. The ***plaintiff bears the burden*** of satisfying the first two prongs. If the plaintiff succeeds, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

As the Ninth Circuit noted in *Schwarzenegger*, "avaliment" and "direction" are two, distinct concepts where the former is typically used in suits sounding in contract, and where the latter is most often used in suits sounding in tort. "Because this is a securities fraud case, minimum contacts may be established either by purposeful direction or purposeful availment." *S.E.C. v. Ficeto*, No. CV 11-1637-GHK, 2013 WL 1196356, at *4 (C.D. Cal. Feb. 7, 2013) (citing *In re LDK Solar Securities Litigation*, 2008 WL 4369987, *6 (N.D. Cal. 2008) (concluding in a securities case that the "conduct plaintiffs identify contains elements both of purposeful availment and purposeful direction"); *Lyddon v. Rocha–Albertsen*, No. 1:03-CV-05502 OWW, 2006 WL 3086951, at *26 (E.D. Cal. Oct. 30, 2006) (explaining that "[a] purposeful direction analysis is most often used in suits sounding in tort, such as fraud")). The purposeful direction test is also appropriate because MPA's fraud allegations permeate the allegations supporting the contract claim. *Dole Food Co., Inc.*, 303 F.3d at 1111.

"Purposeful direction" is analyzed under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984), which requires defendants to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc.*, 303 F.3d at 1111 (fraudulent communications intended to induce California managers into detrimental contract arrangement was sufficient to subject nonresident actors to local jurisdiction). For example, in *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257,

11

1259 (9th Cir. 1989), the Ninth Circuit found jurisdiction in Arizona was proper where a Canadian defendant had made defamatory statements about a former employee in response to an inquiry from Arizona. The court held:

> Meekison is alleged to have committed intentional torts. His communications were directed to Arizona, even though he did not initiate the contact. Assuming the allegations in the complaint are true, Meekison knew the injury and harm stemming from his communications would occur in Arizona, where Brainerd planned to live and work. Those contacts with the forum support personal jurisdiction over Meekison in Arizona.

*Id.*

The facts of this case are far more compelling. Here, MPA has alleged that Defendants owed duties to it in connection with the acquisition and their subsequent employment. (Compl. ¶ 71.) MPA has also demonstrated that Defendants knowingly misrepresented and concealed material facts with the intent to induce MPA to acquire Fenco in exchange for 360,000 shares of MPA's common stock. (*See, e.g., id.* ¶¶ 3, 44, 46, 48, 55, 71, 77, 82, 84.) As part of the fraud, Defendants submitted false financial statements knowing that MPA would be relying on those statements and including the information in its SEC filings. (*Id.*) Defendants also knew that the shares issued by MPA were listed on the Nasdaq Stock Market and subject to U.S. securities laws, that MPA's principal place of business was located in California, that MPA's decisionmakers were located in California, and they communicated directly with those California decisionmakers and provided false financial information in the months leading up to the acquisition. (*Id.*)

In the Motion, Defendants focus in large part on the events surrounding the acquisition closing date. Those facts, however, have little bearing on the analysis given the nature of MPA's claims. The wrongful acts on which MPA sues were expressly aimed towards California, for the purpose of having a decision made in California. Without that decision, Defendants' scheme would have borne no fruit. Moreover, although the scheme needs a place of execution, the location of that event

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

was not relevant to the means or effects of the fraud, and therefore was irrelevant to the express aiming analysis. The closing could have occurred anywhere—indeed, even in California—but Defendants' scheme could only be effectuated by communications into and decisions made in California.

Those facts are more than sufficient to establish express aiming, but there is more. The Complaint alleges—and the Principals do not refute—that they were controlling principals of FAPL and were actively engaged in directing the day to day business of Fenco. As such, each of the Principals played a critical role as primary actors in the conduct giving rise to this litigation through their role in formulating and disseminating false and misleading financial information that they knew, or should have known, would be relied on by MPA. *Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1288 (9th Cir. 1977) ("The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement."). In addition, Defendants personally profited from years of continuous and systematic contacts with the U.S. and California: (1) They operated distribution and manufacturing facilities to the U.S.; (2) At least seventy percent of their sales revenue originated from U.S. customers paying with U.S. dollars; (3) Their U.S. customers included retail outlets who sold their auto parts in California; (4) They used California warehouses to facilitate delivery of their products to customers on the West Coast; (5) They maintained a California commercial liability policy; (6) They employed American workers and paid U.S. taxes; (7) They received a revolving credit facility from a U.S. bank; and (8) They established bank accounts in the U.S. (*See* Lee Decl. ¶ 9; Hosp Decl. ¶ 6, Ex. J.)

Defendants' intentional scheme to defraud MPA further supports a finding that they caused foreseeable harm in the forum state.[5] As an initial matter, Defendants'

---

[5] It is not necessary for MPA to prove reliance or damages because the "purposeful direction" test only requires "foreseeable harm" in the forum state, not foreseeable actual damages. *Martino*, 255 F. Supp. 2d at 287.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

conduct induced a sale of securities. Also, by causing false information to be injected into the domestic securities market through the submission of fraudulent financial information, Defendants threatened the integrity of the market. Indeed, as many courts have found, transactions affecting domestic stock markets are imbued with a national public interest and are sufficient to support a finding of foreseeable harm directed to the United States. *See Schoenbaum v. Firstbrook*, 405 F.2d 200 (2d Cir. 1968) (noting purpose of the Exchange Act is twofold: to protect domestic investors and to protect the domestic securities market). In short, injecting false information into the market through misrepresentations and misleading statements satisfies the requirement of "foreseeable harm." *Cf. SEC v. Dunn*, 587 F. Supp. 2d 486, 509-10 (S.D.N.Y. 2008) ("effects" test satisfied where Canadian defendant prepared false financial data for inclusion in financial statements of Canadian public company traded in the U.S.).

In the Motion, Defendants erroneously contend that jurisdiction is improper because some of Fenco's representations and other due diligence occurred in Canada. That argument conflicts with Ninth Circuit precedent. In *Dole Food Co., Inc. v. Watts*, the Ninth Circuit rejected a similar "bad acts" analysis, recognizing the economic reality that the injury occurred at Dole's principal place of business in California. In a similar claim involving fraudulent inducement, the court analyzed several cases and concluded that – even though most of the alleged bad acts occurred in Europe – Dole managers in California were induced to "approve the injurious transactions." The court held that "when a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the 'effects' test permits that forum to exercise personal jurisdiction." *Dole Food Co., Inc.*, 303 F.3d at 1114. The facts in this case are far more persuasive. Therefore, jurisdiction is proper.[6]

---

[6] Joffe travelled to Toronto to meet with the Principals and conduct physical due diligence. However, no investment decisions were made in Toronto prior to May 6, 2011. (Joffe Decl. ¶ 21.)

14

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**B.**     **Defendants Have Not Made A Compelling Case That Exercising Personal Jurisdiction Over Them Would Be Unreasonable.**

Once it has been decided that a defendant purposefully established minimum contacts with a forum, the defendant must present a "***compelling case***" that the presence of some other considerations would render jurisdiction unreasonable in order to defeat personal jurisdiction. *Dole Food Co., Inc.*, 303 F.3d at 1114. The court in *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988), identified the following seven factors to be considered in this analysis: (1) The extent of purposeful interjection; (2) The burden on defendant; (3) The extent of conflict with sovereignty of defendant's state; (4) The forum state's interest in adjudicating the suit; (5) The most efficient judicial resolution of the dispute; (6) The convenience and effectiveness of relief for plaintiff; and (7) The existence of an alternative forum. *Id.* at 1198-99 (citations omitted). Here, Defendants have failed to present a compelling case that the exercise of personal jurisdiction would be unreasonable.

***Purposeful Injection.*** The extent of the Defendant's purposeful interjection into the activities of the forum state parallels the minimum contacts question. *Dole Food Co., Inc.*, 303 F.3d at 1115. As discussed above, Defendants engaged in numerous acts intentionally directed at California. Particularly where intentional conduct is alleged, as it is here, the purposeful injection factor weighs heavily in favor of finding personal jurisdiction. *Cal. Software Inc. v. Reliability Research, Inc.*, 631 F. Supp. 1356, 1364 (C.D. Cal. 1986) (it would be "unfair" to require plaintiffs to sue in defendants' home states for the defendants' intentional, forum-related activity).

***Burden on Defendants.*** The exercise of jurisdiction will impose no undue burden on Defendants in light of the significant role they played in the misconduct giving rise to this case. If a nonresident acting outside the state intentionally causes injuries within the state, local jurisdiction is presumptively *not unreasonable*. Under such circumstances, the defendant(s) must "reasonably anticipate" being haled into court in the forum state. *Dole Food Co., Inc.*, 303 F.3d at 1112. For this reason, courts

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

15

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

impose a very high burden that Defendants have not met. *See Panavision v. Toeppen*, 141 F.3d 1316, 1323 (1998) ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'").

Furthermore, the burden (if any) of litigating in this forum does not warrant dismissal. Defendants claim that it would be burdensome for them to obtain evidence and testimony. That concern is unfounded. The court appointed trustee in Fenco's bankruptcy action has custody and control over most, if not all, of the Fenco's records. (Daly Decl. ¶ 3.) Very little, if any, records remain in Canada. (*Id.*) Moreover, there is no indication, and certainly no proof, that BDO would be unwilling to testify. In this regard, it is relevant to note that Shuster, who lives part time in Florida, was a former partner with BDO. As such, it would be logical to presume that he could convince BDO to testify if this case were to continue in California. Additionally, like Canada, the United States, is a large country. The time and cost for Defendants to travel and bring documents to this forum is, perhaps, no greater than to other parts of Canada. Defendants are sophisticated parties with substantial resources and have demonstrated the ability to travel when it suit them. (Joffe Decl. ¶ 22; Hosp ¶ 17, Ex. U.) They have also shown that they are still able to retain competent local counsel, to prepare two motions to dismiss, and to obtain declarations.

***Conflict with Sovereignty of Canada.*** In the Motion, Defendants fail to demonstrate how this case conflicts with the sovereignty of Canada. They do not identify any pending proceeding in Ontario, any conflict with Canadian law, or any reason why this Court cannot competently apply Canadian law to this case.[7] In fact,

---

[7] Two employment cases have been filed in connection with Fenco's bankruptcy. One case is currently pending in the U.S. District Court for the District of Delaware (after a withdrawal of reference to the bankruptcy court), *Hunter-Smith et al v. Fenwick Automotive Products Limited et al.*, Case No. 1:14-cv-00581-LPS (D. Del. May 5, 2014) (*See* Ex. T). The other case is pending in the Ontario Superior Court of Justice. (*See* Shuster Decl., Ex. 21).

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

federal courts have observed that the Canadian and U.S. judicial systems "are rooted in the same common law traditions." *Theunissen v. Matthews*, 935 F.2d 1454, 1462 (6th Cir. 1991).[8] It is also important to recognize the significance of the relationships between Defendants and MPA's headquarters. Specifically, Defendants were entrusted with the responsibility of managing Fenco for MPA, a U.S. corporation, and in performing their duties hindered MPA's ability to save the company by concealing material facts related to its financial condition. (*See, e.g.,* G. Fenwick Decl., Ex. 6 (Dkt. 14-3); P Fenwick Decl., Ex. 1 (Dkt. 14-5).) Certainly, a fiduciary relationship with a company based in California must be considered to be a "United States-based relationship" especially where the fiduciaries report to executives in the U.S. (*Id.*)

Moreover, in assessing the sovereignty factor, courts are supposed to consider a defendant's "connections to the United States in general, not just to the forum state." *See Caruth v. Int'l Psychoanalytical Ass'n.*, 59 F.3d 126, 128 (9th Cir. 1995). Here, Defendants have managed Fenco for decades and specifically relocated its distribution and manufacturing facilities to the U.S. to benefit from the exchange rate. More recently, they obtained financing from U.S. banks and established U.S. bank accounts. Thus, Defendants have "manifested an intent to serve and to benefit from the United States market." *Sinatra*, 854 F.2d at 1200.

With respect to GAAP, Defendants' own accountant stated that the Pre-Acquisition Financial Statements "***conform[ed], in all material respect***s" to U.S. GAAP. (Hosp Decl. ¶ 10, Ex. N; Compl. ¶ 30.) Defendants' argument that MPA consented to the jurisdiction of Ontario is equally specious. The forum-selection

---

[8] *See, e.g., Grosvenor Props. Ltd. v. Southmark Corp.*, 896 F.2d 1149 (9th Cir. 1990) (interpreting the application of Canadian law governing personal liability of a corporate officer in the context of a claim for breach of contract); *Clarkson Co. Ltd. v. Rockwell Int'l Corp.*, 441 F. Supp. 792 (N.D. Cal. 1977) (applying Canadian law to an antitrust and breach of contract action); *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336 (Fed. Cir. 2001) (applying Ontario law to license agreement); *1337523 Ontario, Inc. v. Golden State Bancorp., Inc.*, 163 F. Supp. 2d 1111 (N.D. Cal. 2001) (Canadian law to contract dispute).

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Locke Lord LLP*
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

clause in § 24 of the Purchase Agreement states that jurisdiction in Ontario courts is "non-exclusive." Canadian courts recognize such language is a clear indicator that parties deliberately intended for claims to be litigated in another appropriate forum and that such terms do not act as a limit on the parties' right to choose one forum over the other. *Khalij Commercial Bank Ltd. v. Woods* (1985) 50 O.R. (2d) 446, [1985] O.J. No. 2500, para. 11 (QL); *Westcott v. Alsco Products of Canada Ltd.* (1960), 26 D.L.R. (2d) 281 (Nfld. S.C.) ("[Giving exclusive jurisdiction to the Ontario courts] could have been done very simply by merely adding the word "exclusive" before "jurisdiction" in the clause. This has not been done, and it may well be that the parties deliberately refrained from doing anything more than giving a concurrent jurisdiction to the Ontario courts".).[9]

**California's Interest in MPA's Claims**. "California has a strong interest in providing a forum for its residents and citizens who are tortiously injured." *Dole Food Co., Inc.*, 303 F.3d at 1115-16. California also "has a strong interest in ensuring that its citizens are fully compensated for their injuries, in part to protect the state's economic resources from unnecessary expenditures." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984); *Rocke v. Canadian Automobile Sport Club*, 660 F.2d 395, 399 (9th Cir. 1981) (finding that the state where the economic impact of tortious behavior is felt has an interest in the litigation). These principles apply to corporations with their principal place of business in the state, regardless of the state of incorporation. *Dole Food Co., Inc.*, 303 F.3d at 1116.

Federal courts in California also have a strong interest in seeing that U.S. securities laws are enforced and that companies residing in the district have an effective means of redress when a fraud is carried out. *Grunenthal GmbH v. Holz*, 712

---

[9] Defendants' discussion about the Escrow Agreement is irrelevant. This lawsuit relates to the Purchase Agreement. As far as this Court is concerned, having funds or shares in escrow is no different than a defendant having funds in an international bank account. MPA has also asserted damages in connection with its fraud claims that far exceed the amount in escrow. (*See* Shuster Decl., Ex. 17 at 126 (Dkt. 14-2).)

18

F.2d 421, 424–25 (9th Cir. 1983). Section 13 of the Purchase Agreement reinforces that interest, stating that nothing in the agreement "limits or restricts in any way any remedies available, or damages payable, for claims involving fraud or fraudulent misrepresentation." (Compl., Ex. A.) Similarly, the anti-waiver provision in the Exchange Act is an express and unequivocal directive that the rights and obligations under the securities laws cannot be waived. 15 U.S.C. § 78cc(a). Federal courts have exclusive jurisdiction to adjudicate cases brought under U.S. securities laws. As such, requiring MPA to litigate in Canada would divest it of the right to pursue those claims and defeat the purpose of the Exchange Act's anti-waiver provision.

Certainly, the fact that MPA conducts business outside of California should not detract from its standing as a California resident. MPA's principal place of business is in California, MPA employs Californians, MPA pays California taxes, and MPA should not lose its protection as a California citizen because it chooses to do business beyond California's borders. There is simply no support for Defendants' contention that, in effect, having a California headquarters allows MPA to be sued in California, but does not give MPA the protection of local courts when it is defrauded at the very same location. In fact, in *Panavision*, the Ninth Circuit ruled that California maintained a strong interest in providing an effective means of redress for Panavision, a multi-national corporation, because California was Panavision's principal place of business. *See Panavision*, 141 F.3d at 1323. This Court should also give full weight to California's interest in this litigation.

***Most Efficient Judicial Resolution.*** California is the most efficient forum for this case. Despite Defendants' argument, the majority of the evidence and witnesses are located here, in California. (*See* Hosp Decl. ¶ 17.) MPA has identified numerous witnesses—including current and former employees of MPA, former managers and employees of Fenco's New Hampshire and Pennsylvania facilities who sorted and processed the cores, representatives of Fenco's U.S. customers (e.g., Advance Auto Parts) who were directed not to return cores until after the acquisition (Compl. ¶ 52),

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

19

representatives of Fenco's U.S. customers (e.g., NAPA Auto Parts) who were given undisclosed rebates and allowances, and MPA's auditors at E&Y — all who reside in the U.S. (*See* Hosp Decl. ¶ 19.) In contrast, Defendants have not identified any specific witnesses located in Canada. Their claim that this case would be inefficient because the events relating to the transactions purportedly occurred in Canada ignores the nature of MPA's allegations. It also does not account for the fact that Fenco filed for Bankruptcy in June 2013 and that Fenco's internal records are no longer located in Canada. Instead, they are the custody and control of Chapter 7 Trustee in the U.S.

Defendants also fail to provide any support for their argument that most of the witnesses and evidence would not be obtainable. Presumably, Defendants would have the right to demand that BDO produce accounting files. The fact that Shuster is a former partner at the firm makes their chances of obtaining such records even more likely. And, for the few uncooperative and unidentified witnesses in Canada, Defendants would have the power to compel their testimony under the Hague Convention. Conjectures about Canada's "special commercial court" are feckless since there is no indication that the process is any more expeditious. Shuster also fails to identify the attorney with whom he purportedly spoke. Accordingly, California is the much more efficient forum for this case. *See Cubbage v. Merchent*, 744 F.2d 665, 671-72 (9th Cir. 1984) (where witnesses and other evidence located in forum state, that forum was most efficient).

***Alternative Forum.*** "Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Sinatra*, 854 F.2d at 1201 (internal quotations and citation omitted). Because the exercise of jurisdiction in California is not unreasonable, this factor is irrelevant in this case. Thus, where the remaining factors do not demonstrate unreasonableness, "the purposeful interjection factor is the most relevant to deciding this prong of the jurisdiction test." *Weyerhaeuser Co., Inc. v. Keating Fibre Int'l, Inc.*, 416 F. Supp. 2d 1041, 1046 (W.D. Wash. 2006). Defendants engaged in numerous acts purposefully directed their

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

conduct to influence MPA's decisions in California, thereby purposefully interjecting themselves into California. This Court's exercise of jurisdiction over Defendants is therefore reasonable.

## V.  DISMISSAL ON *FORUM NON CONVENIENS* WOULD BE IMPROPER

A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *Dole Food Co., Inc.*, 303 F.3d at 1118. A plaintiff's choice of forum receives great deference and a strong ground for retention of jurisdiction exists. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 n. 8 (9th Cir. 2006). Accordingly, "[t]he plaintiff's choice of forum will not be disturbed unless the "private interest" and "public interest" factors strongly favor trial in the foreign country." *Id.* (citing *Gates Learjet*, 743 F.2d at 1334). "[T]he standard to be applied [to a motion for dismissal on the ground of forum non conveniens] is whether ... defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* (internal quotation marks and citation omitted). *Forum non conveniens* is "an exceptional tool to be employed sparingly, [not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Id.* (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).) For the reasons that follow, the Court should conclude that Defendants have not shown that they are entitled to a dismissal for *forum non conveniens*.

### A.  The Private Interest Factors Do Not Weigh In Favor of Dismissal.

The factors relating to the private interests of the litigants include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

of a case easy, expeditious and inexpensive." *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009).

As discussed above, this lawsuit generally relates to misrepresentations made by Defendants in connection with the acquisition. Defendants can hardly characterize this case as involving a foreign transaction or investment when they themselves admitted in their marketing materials that "Fenwick determined it could no longer survive as a Canadian based manufacturing company." (Ex. G at 166.) Despite what Defendants say now, their past admissions demonstrate that MPA's acquisition of Fenco was not a geographic conquest. To the contrary, MPA viewed Fenco as an attractive partner because it had a similar distribution network and broader product lines in the U.S. and Mexico. MPA had hoped to expand beyond its alternator and starter business, and to leverage its similar, but more efficient, distribution channels in the U.S. and Mexico to improve Fenco's profitability. None of these benefits had any connection with Canada. (Joffe Decl. ¶ 12.)

Defendants contend that the Court should find against MPA based upon the fact that it is a large corporate entity that conducts its operations internationally and that Defendants are four individuals and a holding company located in Canada. Although such concerns might be compelling in another case (e.g., an hourly employee submitting a fraudulent time card abroad), those concerns are not present here. FAPL has no ongoing business or employees. Defendants are wealthy and sophisticated professionals who are alleged to have caused tens of millions of dollars in damages to a local company.

Even more fundamentally, Defendants' argument ignores the nature of MPA's claims. Like any other international corporation, MPA is only able to conduct business effectively if it has the undivided loyalty of its senior agents and fiduciaries, especially those residing in other countries who are placed by the company into positions of substantial authority and discretion. Even the most international of companies have to be secure in relying on the loyalty of the persons they select for

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  international, senior positions. Given those interests, there is nothing inherently unfair

2  about holding senior level executives and fiduciaries like the Principals to answer in

3  California for their intentional, fraudulent misconduct in concealing a massive fraud

4  that ultimately resulted in Fenco filing for bankruptcy.

5       The defense of any litigation places an unwanted burden on any defendant (just

6  as Defendants' fraud has placed on MPA), and a defendant would always find it less

7  burdensome to litigate at home. If these considerations resolved the issue, long-arm

8  jurisdiction would always be rejected. That, of course, is not the law. Defendants must

9  instead establish that the inconvenience of litigating "is so great as to constitute a

10  deprivation of due process." *Panavision*, 141 F.3d at 1323; *see also Caruth*, 59 F.3d at

11  128-29. The fact that some inconvenience may be placed on Defendants "will not

12  overcome clear justifications for the exercise of jurisdiction" in this case. *Panavision*,

13  141 F.3d at 1323. Modern courts also tend to give this factor little weight because of

14  the ease of communication by phone, fax and electronic mail and the availability of

15  discount transportation. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990);

16  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).

17       Furthermore, Defendants have failed to satisfy their burden of showing that

18  litigation in California would be unduly burdensome. Instead, they have presented no

19  evidence to support their claim that litigation in California would be "impossibly

20  expensive" for them to defend. For example, Defendants had an opportunity to present

21  evidence on their financial capabilities and the precise extent of the burden California

22  litigation places upon them, but chose not to do so. Rather, they have merely

23  submitted their own conclusory, self-serving declarations. Especially in the absence of

24  an evidentiary hearing, these declarations are insufficient to satisfy Defendants'

25  burden. *See, e.g.*, *Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995) (refusing to

26  consider unsupported claim that defense would be "extremely burdensome"). 

27  Certainly, MPA's willingness to participate in a mediation in Toronto should not be

28  factor. MPA expressly stated that it reserved all rights to litigate this case in U.S.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

23

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

federal court. To disregard MPA's reservation of rights would punish a party who put its best foot forward in trying to resolve a dispute before litigation.[10]

Defendants have also failed to identify with any reasonable particularity the witnesses and documents that they would be precluded from obtaining if this case proceeded here. In *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1231 (9th Cir. 2011), the Ninth Circuit stated that "the initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify." As in *Carijano*, Defendants in this case have "not shown, nor [do they] even represent, that any witness is unwilling to testify. Instead [they have] produced a declaration identifying categories of witnesses [they] intend[] to call who are outside [the Court's] control." *Id.*

Defendants' own conduct also belies their claim that litigation in California would be unduly burdensome. Defendants had the foresight and finances to retain a top-notch Los Angeles law firm for purposes of mounting a defense. Defendants speak English as their primary language and have demonstrated that they have a propensity for travel when it suits them. (Joffe Decl. ¶ 22; Hosp Decl. ¶ 17, Ex. U.) In any event, Defendants' presence in California is not necessary for the day-in, day-out process of this action. Thus, while Defendants may be inconvenienced by this action, this litigation does not place an unconstitutionally unreasonable burden upon them.

**B.    The Public Interest Factors Weigh Heavily In Favor of MPA.**

The public interest factors to be weighed by the Court include (1) administrative difficulties relating to court congestion, (2) imposing jury duty on citizens of the forum, (3) having local disputes settled locally, and (4) avoiding problems associated with the application of foreign law. *Carijano*, 643 F.3d at 1232. These considerations also weigh heavily in favor of MPA.

---

[10] Defendants had the burden of proof in bringing the Motion. Any attempt to supplement their declarations in connection with the reply brief would be improper and should be stricken.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

The public interest in this case favors this forum. Fenco has filed for bankruptcy and is now under the jurisdiction of the bankruptcy court and control of the Chapter 7 Trustee. Moreover, prior to filing for bankruptcy, Fenco had a much larger footprint in the U.S. than in Canada. The United States' interest in securities regulation to protect the "integrity of both domestic investor decision and market mechanisms" is also overriding. *Schoenbaum*, 405 F.2d at 208–09. While Canada has an interest in regulating corporations, that interest is logically diminished when the corporation is no longer in business, the fraud is directed at a foreign business, and involves shares traded on a foreign exchange. This Court's familiarity with U.S. securities laws also favors this forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981).

Imposing jury duty of the citizens Los Angeles does not present an issue. MPA is a local employer and serving on a jury would be in a local resident's personal and civic interests to ensure that the proper remedies are available. Finally, as discussed above, Defendants have not identified any pending lawsuit in Canada or any conflict with Canadian law, to the extent it applies.

## VI.  CONCLUSION

For decades, Defendants have profited financially from their regular contacts in California and the United States. Facing financial ruin, they provided false and misleading financial information to MPA with the purpose of inducing MPA to acquire their company. For the reasons discussed above, Defendants' Motion should be denied.

Dated:  May 15, 2014                  LOCKE LORD LLP


                                      By: /s/ Michael F. Perlis
                                           Michael F. Perlis (095992)
                                           Cary J. Economou (211438)
                                           F. Phillip Hosp (265225)

                                      Attorneys for Plaintiff
                                      MOTORCAR PARTS OF AMERICA, INC.

**Locke Lord LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA  90071**

25