LOCKE LORD LLP
MICHAEL F. PERLIS (095992)
mperlis@lockelord.com
CARY J. ECONOMOU (211438)
ceconomou@lockelord.com
F. PHILLIP HOSP (265225)
phosp@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone:   213-485-1500
Facsimile:   213-485-1200

Attorneys for Plaintiff
MOTORCAR PARTS OF AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTORCAR PARTS OF AMERICA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FAPL HOLDINGS INC., ET AL., <br><br> Defendants. | CASE NO. CV14-01153 <br><br> **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF MOTORCAR PARTS OF AMERICA, INC.'S FOURTH AND FIFTH CAUSES OF ACTION FOR VIOLATIONS OF SECTION 10(b) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> Hearing Date:   June 19, 2014 <br> Time:   8:30 a.m. <br> Courtroom:   10 <br> Judge:   Hon. George H. Wu <br><br> Complaint Filed: February 13, 2014 <br> Trial Date: N/A |

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................... 2

    A.      Defendants Receive 360,000 Shares of MPA's Common Stock. .............. 2

    B.      Defendants' Representations and Warranties. ........................................... 3

    C.      MPA Discovers Defendants' Fraudulent Misrepresentations. .................. 4

III.    ARGUMENT ............................................................................................ 6

    A.      Standard of Review. .................................................................................. 6

    B.      Section 10(b) and Rule 10b-5: The Catch-All Fraud Provisions. ............. 6

    C.      The *Morrison* Decision. ............................................................................ 7

    D.      This Case Involves Securities "Listed" On A Domestic Exchange. ......... 8

    E.      The Complaint Satisfies Rule 9(b)'s Particularity Requirements. ........... 11

        1.      MPA Has Alleged Specific Facts Demonstrating that Defendants
            Misrepresented and Omitted Material Facts. ................................... 11

        2.      MPA Has Alleged Facts Supporting a Strong Inference of
            Defendants' Scienter. ....................................................................... 13

IV.     CONCLUSION ....................................................................................... 16

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adaptive Broadband Sec. Litig.*,
   No. C 01-1092 SC, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002) ........................ 15

*In re Alstom SA Securities Litigation*,
   741 F. Supp. 2d 469 (S.D.N.Y. 2010) ................................................................. 9

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
   49 F.3d 541 (9th Cir. 1995) ................................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 6

*Chadbourne & Parke LLP v. Troice*,
   134 S. Ct. 1058, 188 L. Ed. 2d 88 (2014) ........................................................ 11

*Chiarella v. United States*,
   445 U.S. 222, 63 L.Ed.2d 348 (1980) ................................................................. 7

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) ........................................................................... 15

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) ............................................................................. 12

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011) ............................................................................. 13

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ............................................................... 14

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) ............................................................................. 12

*In re Lattice Semiconductor Corp. Sec. Litig.*,
   No. CV04-1255-AA, 2006 WL 538756 (D. Or. Jan. 3, 2006) ........................... 15

*In re LDK Solar Sec. Litig.*,
   584 F. Supp. 2d 1230 (N.D. Cal. 2008) ............................................................. 15

**Locke Lord LLP**
**300 South Grand Avenue, Suite 2600**
**Los Angeles, CA 90071**

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ................................................................. 7

*McGann v. Ernst & Young*,
   102 F.3d 390 (9th Cir. 1996) ................................................................ 11

*Morrison v. Nat'l Australia Bank Ltd.*,
   130 S. Ct. 1869 (2010) ................................................................. passim

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W.*
      *Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ............................................................... 13

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) ............................................................. 14

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) ............................................................... 12

*In re Paincare Holdings Sec. Litig.*,
   541 F. Supp. 2d 1283 (M.D. Fla. 2008) ............................................... 15

*Psimenos v. E.F. Hutton & Co., Inc.*,
   722 F.2d 1041 (2d Cir. 1983) ................................................................. 9

*Reiger v. PricewaterhouseCoopers LLP*,
   117 F. Supp. 2d 1003 (S.D. Cal. 2000) ................................................ 16

*Royal Bank of Scotland Group PLC Securities Litigation*,
   765 F. Supp. 2d 327 (S.D.N.Y. 2011) ................................................... 9

*SEC v. Mozilo*,
   No. CV 09–3994–JFW, 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) ................. 6

*SEC v. National Sec. Inc.*,
   393 U.S. 453, 21 L.Ed.2d 668 (1969) .................................................... 9

*SEC v. Zandford*,
   535 U.S. 813, 153 L.Ed.2d 1 (2002) ...................................................... 7

*Simpson v. AOL Time Warner, Inc.*,
   452 F.3d 1040 (9th Cir. 2006) ............................................................... 6

*Superintendent of Ins. v. Bankers Life & Cas. Co.*,
   404 U.S. 6, 30 L.Ed.2d 128 (1971) ....................................................... 7

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

iii

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)............................................................................ 13, 14

*Thompson v. Paul*,
   547 F.3d 1055 (9th Cir. 2008) ...................................................... 11

*Valentini v. Citigroup, Inc.*,
   837 F. Supp. 2d 304 (S.D.N.Y. 2011) ............................................ 10

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................... 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003) ............................................ 15

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998).............................................. 12

*Wool v. Tandem Computers Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ...................................................... 12

**STATUTES**

15 U.S.C. § 77k(a) ............................................................................ 11

15 U.S.C. § 78c(a)(13) ...................................................................... 8

15 U.S.C. § 78j(b) .......................................................................... 7, 10

15 U.S.C. § 78u-4(b)(2) .................................................................. 13

17 C.F.R. § 240.10b–5 .............................................. 7, 9, 10, 11, 13

Fed. R. Civ. P. 8(a) .......................................................................... 12

Fed. R. Civ. P. 9(b) ........................................................................ 11, 12

Fed. R. Civ. P. 12(b)(6) .................................................................. 6

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is a securities fraud case involving defendants FAPL Holdings, Inc. ("FAPL"), Gordon Fenwick, Joel Fenwick, Paul Fenwick, and Jack Shuster's (collectively, "Defendants") scheme to defraud plaintiff Motorcar Parts of America, Inc. ("MPA"), a public company headquartered in Torrance, California. As part of this scheme, Defendants made numerous misrepresentations and misleading statements that induced MPA to provide capital and ultimately acquire Fenwick Automotive Products Ltd. ("Fenwick") and its affiliates (collectively, "Fenco"). In connection with the acquisition, Defendants received 360,000 shares of MPA's common stock, which is listed and exclusively traded on the Nasdaq Stock Market.

In their Motion to Dismiss, Defendants make a number of meritless arguments. First, Defendants contend that MPA's securities fraud claims must be dismissed under *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 1869 (2010), which held that § 10(b) does not apply to transactions on foreign exchanges. However, the Court's decision *did not* restrict claims by U.S. citizens, like MPA, against foreign purchasers who purchased shares of stock listed on an American stock exchange. To satisfy the bright-line test in *Morrison*, a plaintiff must simply show that the transaction involved the purchase or sale of a security listed on a U.S. exchange. MPA has made that showing.

Second, Defendants contend that MPA somehow did not allege a material misrepresentation. In fact, the Complaint is perfectly clear on this subject. It specifically alleges that the Principals misrepresented and omitted facts material to Fenco's financial position.

Third, Defendants contend in conclusory fashion that MPA has failed to plead scienter. However, the specific allegations of the Complaint sufficiently show motive, opportunity, and recklessness, which is more than sufficient to satisfy the scienter standard.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

## II.    STATEMENT OF FACTS

### A.    Defendants Receive 360,000 Shares of MPA's Common Stock.

MPA is a New York corporation with its principal place of business in Torrance, California. (Compl. ¶ 4.) MPA manufactures, remanufactures, and distributes aftermarket automobile parts. (*Id.* ¶ 18.) Its common stock is listed exclusively on the Nasdaq Stock Market and publicly traded under the ticker symbol "MPAA." (*Id.* ¶ 4.)

On May 6, 2011, MPA purchased the outstanding capital stock of Fenco, in exchange for which Defendants contracted to receive 360,000 shares of MPA's common stock (the "MPA Shares"). (*Id.* ¶ 29.) In entering into this transaction, Defendants knew that the MPA Shares were subject to the U.S. regulatory scheme. (*Id.* ¶¶ 44-45.) As an initial matter, § 6(f) of the Purchase Agreement stated:

> MPA Common Stock is the class of securities of [MPA] listed on the NASDAQ Global Market as of the date of this Agreement. [FAPL's] MPA Shares, when issued, sold and delivered to [FAPL] pursuant to this Agreement will be duly and validly issued and fully paid and non-assessable and registered in the name of [FAPL] on the stock register of [MPA].

(*Id.* ¶ 11.) Furthermore, although Canadian law applied to the interpretation of the Purchase Agreement, § 13 of the Purchase Agreement stated, "***Nothing in this Agreement…limits or restricts in any way any remedies available, or damages payable, for claims involving fraud or fraudulent misrepresentation***." (Compl., Ex. A at 13.)

In conjunction with the Purchase Agreement, the parties executed a hold agreement ("Hold Agreement") pursuant to which the MPA Shares were subject to transfer restrictions during a period of eighteen months commencing on May 6, 2011 and ending on November 6, 2012 ("Hold Period"). (*Id.* ¶ 29.) In the Hold Agreement, the parties agreed that the disposition and transfer of the shares would "be governed by and construed in accordance with the laws of the State of New York." (Compl., Ex.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

2

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

B at 5.) The Hold Agreement further stated that FAPL was the record and beneficial owner of the shares and acquired the shares, free and clear of all liens, encumbrances, and claims whatsoever except for the restrictions under applicable "Securities Laws" and the Purchase Agreement. (*Id.* at 2.) Shuster, on behalf of FAPL, also executed a representation letter affirming its "accredited investor" status, among other things, under the Securities Act of 1933. Accordingly, Defendants received the right to freely trade the securities at any time after the completion of the Hold Period.

On May 8, 2011, MPA's transfer agent in New York issued the share certificate to FAPL. Defendants have subsequently instructed the transfer agent to remove the restrictive legend. After receiving an opinion letter from MPA's securities counsel in New York, the transfer agent removed the legend and issued FAPL an unrestricted stock certificate. (*See* Pl.'s Opp. to Defs. Mot. to Dismiss for Lack of Personal Jurisdiction at 8; Decl. of F. Phillip Hosp ¶ 11, Ex. O.) Defendants have further instructed the Escrow Agent to transfer the shares to a brokerage account.

### B.    Defendants' Representations and Warranties.

In acquiring Fenco, MPA relied on various representations and warranties contained in the Purchase Agreement.  In § 5(o), FAPL warrantied that:

> Since March 31, 2010, none of the [Fenco entities] have … except as described in [FAPL's] financial statements, made any change in its accounting principles and practices as theretofore applied including, without limitation, the basis upon which its assets and liabilities are recorded on its books and its earnings, profits and losses are ascertained.

(Compl. ¶ 32.)

Section 5(r), stated:

> **Financial Matters.**   The audited consolidated financial statements of [FAPL] and notes thereto as at and for the year ended March 31, 2010 and the unaudited 9 month period ended December 31, 2010, present fairly in all material respects the consolidated financial position of the Subsidiaries as at the dates indicated and the results of the operations and changes in financial position for the periods specified and reflect all material liabilities (absolute, accrued, contingent or otherwise) of the Subsidiaries (on a consolidated basis) as of the dates thereof and such

3

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

financial statements have been prepared in conformity with GAAP applied, except as otherwise state therein, on a consistent basis.

(*Id.* ¶ 33.) MPA has referred to the audited consolidated financial statements of FAPL and notes thereto for the year ended March 31, 2010 and the unaudited 9 month period ended December 31, 2010 as "Pre-Acquisition Financial Statements." Copies of the Purchase Agreement and the Pre-Acquisition Financial Statements were attached to the July 22, 2011 Form 8-K/A that MPA filed with the SEC. (*Id.* ¶ 38.)

Section 5(x), stated:

**Material Facts Disclosed.** None of the statements, documents, certificates or other items prepared or supplied by [FAPL] or the Subsidiaries to the Purchaser with respect to the transactions contemplated hereby contains any untrue statement of a material fact, or failed to disclose a fact that was necessary to be made in order for any material statement not to be misleading at the time it was provided.

(*Id.* ¶ 35.)

In § 11 of the Purchase Agreement, FAPL, jointly and severally with the Principals, agreed to indemnify MPA and pay for any damages arising out of the "any breach or inaccuracy of any representation or warranty given by [FAPL] contained in this Agreement" and "any liability (in excess of any insurance payments) relating to any product manufactured, constructed, installed, shipped, distributed, sold or provided by any of the Subsidiaries prior to the Closing Date, including any product liability or product warranty whether the damages in respect of such products are suffered before or after the Closing…." (*Id.* ¶ 36.) Although § 13 limited Defendants' indemnification obligations were limited to $4 million, it further stated that no limits applied for claims involving fraud. (*Id.*)

**C.    MPA Discovers Defendants' Fraudulent Misrepresentations.**

In September 2011, BDO completed its audit of Fenco's financial statements for the fiscal year ending on March 31, 2011 ("Post-Acquisition Financial Statements"). (*Id.* ¶ 40.) However, the losses reported in those statements were

substantially different than the numbers reported in the audited consolidated financial statements of FAPL and the notes thereto for the fiscal year ended on March 31, 2010. (*Id.*) This spurred an extensive internal review, during which MPA discovered that the Principals (1) inflated Fenco's revenue by using a full core valuation method without properly recording the full extent of future core returns, (2) directed customers not to return cores until after the acquisition so that liabilities would not be reflected in the financial statements, and (3) failed to account for numerous customer rebates and allowances that had not been posted to the customers' accounts receivable sub-ledger or the accruals for contractual rebates and allowances due to the customers. (*Id.* ¶ 47.)

As a result, MPA had to revise its initial estimate of Fenco's fair value on two occasions – in its March 7, 2012 Form 10-Q and its September 28, 2012 Form 10-K. (*Id.* ¶ 57.) Relying on the Pre-Acquisition Financial Statements at the time of the acquisition, MPA initially calculated that Fenco's assets and liabilities had a fair market value of $544,000. Because this amount was less than the fair value of the consideration transferred, MPA recorded the remaining amount on its books, $4,402,000, as goodwill. (*Id.*) In its most recent revision, however, MPA estimated that the fair value of net assets acquired was ($63,410,000). (*Id.*) In other words, based on facts uncovered after the acquisition, the estimated fair value of Fenco's net assets was actually $63,954,000 **less** than what MPA had initially calculated by relying on Defendants' financial statements and misrepresentations. (*Id.*)

In addition to these valuations, MPA was forced to invest tens of millons of dollars in additional funds to turn Fenco around. (*Id.* ¶ 59.) Ultimately, however, the damages caused by Defendants' mismanagement and fraudulent business practices proved too much to overcome as Fenco's revenues were insufficient to meet its operating expenses. (*Id.*)

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

## III.   ARGUMENT

### A.   Standard of Review.

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *SEC v. Mozilo*, No. CV 09–3994–JFW, 2009 WL 3807124, at *6 (C.D. Cal. Nov. 3, 2009) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In reviewing a motion a dismiss under Rule 12(b)(6), all allegations in the complaint, and all reasonable inferences therefrom, are taken as true, and the allegations are construed in the light most favorable to the non-moving party. *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006). Dismissal is proper only if it appears beyond doubt that the non-movant can prove no set of facts to support its claims. *Id.* Moreover, a "'district court's dismissal of a complaint without leave to amend is reviewed de novo and is improper unless it is clear that the complaint could not be saved by any amendment.'" *Id.* (quoting *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005)).

### B.   Section 10(b) and Rule 10b-5: The Catch-All Fraud Provisions.

Section 10(b) of the Exchange Act and SEC Rule 10b–5 prohibit fraudulent conduct in connection with the sale or purchase of securities. Under Section 10(b), it is unlawful for any person, "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5, in turn, makes it unlawful for any person:

> (a) To employ any device, scheme or artifice to defraud,
>
> (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5; *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

The Supreme Court has directed lower courts to interpret the Exchange Act "flexibly" and broadly, rather than "technically [or] restrictively." *SEC v. Zandford*, 535 U.S. 813, 819, 153 L.Ed.2d 1 (2002) (internal quotation marks and citation omitted). "Section 10(b) was designed as a catch-all clause to prevent fraudulent practices," *Chiarella v. United States*, 445 U.S. 222, 226, 63 L.Ed.2d 348 (1980) (citation omitted), including not just "garden type variet[ies] of fraud" but also "unique form[s] of deception" involving "[n]ovel or atypical methods," *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 11 n. 7, 30 L.Ed.2d 128 (1971) (internal quotation marks omitted).

## C.   The *Morrison* Decision.

*Morrison* involved a so-called "foreign-cubed" (or "f-cubed") action – a transaction involving *foreign* investors who purchased shares of a *foreign* issuer on a *foreign* exchange. 130 S. Ct. at 2895 (Stevens, J., concurring) ("[T]his case has Australia written all over it."). In holding that the Australian plaintiffs had failed to state a claim under § 10(b) of the Exchange Act, the Court adopted a two-pronged test, holding that § 10(b) applies to "only … [1] the purchase or sale of a security *listed* on an American stock exchange, and [2] the purchase or sale of any other

security in the United States." *Id.* at 2888. A plaintiff states a claim under § 10(b) ***if either prong is satisfied***. *Id.*

Applying its new bright-line test to the facts before it, the Court held that the plaintiffs failed to state a claim upon which relief could be granted under § 10(b) because the case did not involve securities ***listed*** on a domestic exchange and all aspects of the purchases occurred outside the United States. *Id.* Given the absence of any nexus between the plaintiffs' stock purchases and the United States, the *Morrison* Court did not explore the bounds of the second, "domestic transaction" prong of the test.

**D.** **This Case Involves Securities "Listed" On A Domestic Exchange.**

This case falls squarely within the test set out in *Morrison*. In contrast to *Morrison*, this case involves the purchase and sale of common shares of a U.S. company that are exclusively listed and traded on the Nasdaq Stock Market. *See In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 49 F.3d 541, 543 (9th Cir. 1995) ("[T]he purchase and sale requirement has been held satisfied in a transaction involving an exchange of securities during a merger or consolidation of corporations…. The transfer of securities in exchange for a contractual obligation would seem to fit the prototypical definitions of purchase and sale.").[1] Furthermore, as of June 6, 2011, MPA's largest shareholder held just over 10% of the total outstanding common shares. (*See* Decl. of F. Phillip Hosp ¶ 19, Ex. V.) As a result of his holding, MPA stated in its SEC Form 10K that owning such a large block was a risk factor because he had the ability to exercise substantial influence over the company. (*Id.*) Although 3% percent is certainly less, it is still sufficiently large enough to at least trigger the broad antifraud purposes of § 10(b) and Rule 10b-5. Clearly, such purpose would be furthered by preventing fraudster from influencing the decisions of a public

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

---

[1] "Purchase" is "any contract to buy, purchase, or otherwise acquire" a security, including "any contract, agreement, or transaction for future delivery." 15 U.S.C. § 78c(a)(13).

8

company. *See SEC v. National Sec. Inc.*, 393 U.S. 453, 21 L.Ed.2d 668 (1969) (holding that the purchase and sale requirement was satisfied in a transaction involving an exchange of securities during a merger or consolidation).

In support of their argument that *Morrison* compels the dismissal of the Complaint, Defendants place primary reliance on out-of-district, lower court opinions involving dissimilar facts. In *Royal Bank of Scotland Group PLC Securities Litigation*, 765 F. Supp. 2d 327 (S.D.N.Y. 2011), the district court held that § 10(b) did not reach transactions involving a foreign company's shares that were traded only on a foreign exchange but where American Depository Receipts ("ADRs") representing those shares were listed and traded on an American exchange. The court held that ADRs were merely placeholders for the ordinary shares traded on foreign exchanges, and thus allowing § 10(b) claims to survive would undermine *Morrison's* concern for "avoiding the regulation of foreign exchanges." *Royal Bank of Scotland*, 765 F. Supp. 2d at 336. *In re Alstom SA Securities Litigation*, 741 F. Supp. 2d 469, 471-72 (S.D.N.Y. 2010), is another case involving ADRs where the district court dismissed claims related to securities purchased on a foreign stock exchange while permitting claims related to ADRs traded on the NYSE to proceed.

This case does involve facts that would trigger any of the same concerns. MPA's shares are exclusively traded on the Nasdaq Stock Market and have no nexus with any foreign regulatory body. *See also Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041, 1045 (2d Cir. 1983) ("Congress ... did [not] want United States commodities markets to be used as a base to consummate schemes concocted abroad"). Furthermore, the shares received by Defendants are not merely placeholders. At the time of the acquisition, they represented almost three percent of MPA's total outstanding shares and the value of each share is directly linked to the current price per share on the Nasdaq Stock Market at the time they are sold. *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304 (S.D.N.Y. 2011) (applying the "economic reality" test and holding that notes not listed on domestic exchange

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

9

satisfied the first prong of the *Morrison* test because they were (1) linked to securities listed on the NYSE and (2) contained a feature that converted the notes into securities listed on the NYSE if the value of the assets to which the note was linked fell below a certain price).

In their Motion, Defendants also seek to insert a requirement that the transaction actually occur on a U.S. exchange or that the transaction occur in connection with a registered offering. Those arguments are unfounded. Defendants did not receive preferred shares or any other special class of stock. Since the acquisition, FAPL has had all voting rights and rights to dividends. Moreover, in the Exchange Act, Congress assigned special significance to whether a security was listed on a domestic exchange. *See* 15 U.S.C. § 78j(b). Accordingly, *Morrison* specifically held that § 10(b) applies to "only transactions in securities ***listed*** on domestic exchanges and domestic transactions in other securities…." *Morrison*, 130 S.Ct. at 2884. This is the baseline from which a court must determine the extraterritorial reach of Section 10(b) and Rule 10b-5. Imposing any further restriction would be improper. The fact that Congress and the Supreme Court both found it necessary to distinguish between securities that are listed on domestic exchanges and domestic transactions demonstrates that transactions involving the purchase or sale of shares of stock listed on a domestic exchange has independent significance and that all transactions in those securities fall within the purview of the Exchange Act under the plain language of both the statute and *Morrison*. Therefore, dismissal would be completely unwarranted because MPA's shares are listed on a domestic national securities exchange to trigger any of the policy concerns expressed in *Morrison*.

Defendants' limited interpretation of the statute also contravenes case law recognizing the breadth of Section 10(b), as compared to other parts of the federal regulatory scheme. For example, in contrast to the "catchall function" of Section 10(b) and Rule 10b–5, Section 11 of the Securities Act creates liability only for material misrepresentations or omissions in connection with a registered securities offering.

*See* 15 U.S.C. §§ 77k(a). Indeed, the fact that Congress specifically limited Section 11 to transactions involving registered securities offering, but did not so limit Section 10(b) is evidence that reading a registration requirement into Section 10(b) and the *Morrison* ruling would be improper. *See McGann v. Ernst & Young*, 102 F.3d 390, 395 (9th Cir. 1996) (adopting same logic with respect to §§9 and 10(a)).

Similarly, the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb(f)(1)(A), forbids a class action by any private party alleging a "misrepresentation or omission of a material fact in connection with the purchase or sale of a ***covered security***." In contrast to the broad definition of "security" under Section 10(b), the term "covered security" is defined narrowly as "[a security] listed, or authorized for listing, on a national securities exchange…" *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1064, 188 L. Ed. 2d 88 (2014). Given the fact that the shares purchased by Defendants would fall within the bounds of such a narrowly defined term, it would be unreasonable to read any additional limitations into the test enunciated by *Morrison*.

### E.   The Complaint Satisfies Rule 9(b)'s Particularity Requirements.

To state a securities fraud claim, plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008).

### 1.   MPA Has Alleged Specific Facts Demonstrating that Defendants Misrepresented and Omitted Material Facts.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." While fraud must be pled with particularity, the allegations must be as short, plain and concise as is reasonable under the circumstances. Fed. R. Civ. P. 8(a); *Wenger v.*

*Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1239 (N.D. Cal. 1998) ("[t]he heightened pleading standard of Rule 9(b) is not an invitation to disregard the requirement of simplicity, directness and clarity" of Rule 8). The ultimate test for pleading sufficiency under Rule 9(b) is whether the complaint identifies the circumstances constituting the fraud such that a defendant can prepare an adequate answer. *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007); *Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir. 1994). This requirement is satisfied by allegations indicating the "who, what, where, when and how" of the fraudulent conduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995).

Defendants assert that the Complaint is not sufficiently particularized, as it fails to allege falsity with the requisite specificity. In fact, the complaint is perfectly clear on this subject. It specifically alleges that the Principals misrepresented and omitted facts material to Fenco's financial position, including but not limited to (i) that the "Pre-Acquisition Financial Statements" did not conform with Canadian or U.S. GAAP, (ii) the extent of Fenco's outstanding core liabilities, including the fact that it instructed various customers not to return cores until after the Purchase Agreement's execution date, (iii) the terms of various side agreements with major customers, (iv) substantial inventory and other payable amounts due to vendors for pre-acquisition transactions and/or penalties, and (v) reasonable sales forecasts based on realistic fill rates. (Compl. ¶ 83.)

Defendants attempt to invoke the group pleading rule under Rule 9(b) and the PSLR. This argument rings hollow because the Ninth Circuit recognizes an exception to the group pleading rule "where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information.'" *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987). This case falls within that exception. The Complaint identifies specific financial reports on which MPA relied, namely the (1) the audited consolidated financial statements of FAPL and the notes thereto for the fiscal year ended on March

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

12

31, 2010, and (2) the reviewed consolidated financial statements of FAPL for the nine month period ended on December 31, 2010. (Compl. ¶ 30.) The Complaint further alleges that each of the Principals acted as controlling principals of FAPL "individually and in concert with each other" in violating Section 10(b) and Rule 10b-5. (Compl. ¶ 82.)

Defendants' purported confusion with respect to GAAP and Fenco's stated accounting methodology overlooks the summaries of Fenco's accounting policies contained in the Pre-Acquisition Financial Statements. The stated policies are directly tied to the alleged misrepresentations. For example, Fenco represented that its "revenue was net of discounts, rebates, and allowances" and yet MPA learned after the acquisition that Defendants "failed to accrue for significant customer discounts that were not reflected in the customer agreements on file." Defendants purported confusion as to GAAP is also inconsequential. Fenco's accounting policies state that the Pre-Acquisition Statements were "prepared in accordance with Canadian GAAP, which conforms, in all material respects, with [U.S. GAAP]."

### 2.    MPA Has Alleged Facts Supporting a Strong Inference of Defendants' Scienter.

Scienter is properly alleged where, as here, a plaintiff "state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The "inquiry...is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003). Consequently, courts consider claims holistically. *Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011). An inference of scienter is "strong" if it is "cogent and compelling" and "at least as likely as any plausible opposing inference." *Tellabs*, 551 U.S. at 328-29.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

A holistic review of the facts alleged in the Complaint reveals a strong inference of scienter. First, "[s]cienter may also be established by alleging facts to show that Defendants had a motive to commit fraud." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1023 (S.D. Cal. 2005). In this case, MPA has alleged that Fenco was experiencing serious liquidity issues and that they knew that MPA would be relying on the Financial Statement in conducting its due diligence and deciding whether to ultimately acquire Fenco. Without the cash to operate its business, the Complaint alleges that Defendants had "extreme pressures and incentives to overstate sales and revenues" to "induce MPA to acquire Fenco's outstanding stock for an inflated price and to secure releases for pre-existing security interests against Defendants' property ensure the acquisition closed by producing strong financial statements." (Compl. ¶ 80.)

Second, the Complaint identifies internal emails directly showing the Principals' scienter. For example, MPA alleges that the Principals misrepresented Fenco's financial condition by using a target fill rate of 95% to calculate Fenco's net sales. In support of its allegation that the Principals knew that Fenco's actual fill rates were much lower, MPA identifies an internal email from Gordon Fenwick addressed to *all* the Principals in which he stated "I stand behind my statement made at the management meeting 3 weeks ago, where I stated we are losing $5MM per month in Sales Revenue due to Fill Rate issues." Allegations involving company records, reports and warnings are classic evidence of scienter. *Immune Response*, 375 F.Supp.2d at 1022 (scienter adequately pled where defendants had access to specified reports or statements containing contrary facts and described meetings where issues were discussed); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) (scienter adequately pled where contemporaneous reports, available to the person making forecasts, contradicted defendants' statements); *In re Lattice Semiconductor Corp. Sec. Litig.*, No. CV04-1255-AA, 2006 WL 538756, at *14-15 (D. Or. Jan. 3, 2006) (allegations that defendants attended monthly and

14

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

quarterly financial review meetings and received daily and weekly reports based on databases tracking products showed that defendants had access to information and supported strong inference of scienter); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1249 (N.D. Cal. 2008) (finding scienter based, in part, on receipt of email putting defendants on notice that financial statements were misleading).

Third, MPA alleges extensive GAAP violations, in conjunction with specific allegations describing the vast differences between the losses reported by Fenco in the Post-Acquisition Financial Statements, as compared to the Pre-Acquisition Financial Statements. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1023 (9th Cir. 2005); *In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478, at *12 (N.D. Cal. Apr. 2, 2002) (when significant GAAP violations are described, they provide powerful indirect evidence of scienter). In addition, MPA alleges that, because of their positions, the Principals knew, or should have known, that Fenco's accounting was improper. *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185-86 (S.D.N.Y. 2003) (complaint established strong circumstantial evidence that CEO and Chief Financial Officer ("CFO") knew or should have known company was overstating its financials); *In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1293 (M.D. Fla. 2008) (scienter adequately pled as to CEO and CFO, given, *inter alia*, their access to insider information, experience and accounting backgrounds).

Defendants attempt to challenge the adequacy of the specific allegations of scienter claiming that Defendants had no reason to suspect that the accounting practices at issue were fraudulent because the financial statements were reviewed or audited by BDO. This is a red herring. As with any audit, financial statements are ultimately the responsibility of management. Furthermore, the effectiveness of an auditor's review can be impaired when management falsifies assumptions and estimates, which is exactly what MPA alleges in this case. *See Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007–08 (S.D. Cal. 2000)

(noting that an independent accountant often depends on its client to provide the information base for the audit).

## IV.    CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Dismiss and should grant such other and further relief as the Court deems just and proper, including the right to amend the Complaint, if necessary.

Dated:  May 15, 2014                          LOCKE LORD LLP


                                              By: /s/ Michael F. Perlis
                                                    Michael F. Perlis (095992)
                                                    Cary J. Economou (211438)
                                                    F. Phillip Hosp (265225)

                                              Attorneys for Plaintiff
                                              MOTORCAR PARTS OF AMERICA, INC.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071