SETH ARONSON (S.B. #100153)
saronson@omm.com
WILLIAM K. PAO (S.B. #252637)
wpao@omm.com
SARAH K. HALL (S.B. #274327)
shall@omm.com
MICHELLE C. LEU (S.B. #285437)
mleu@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendants
FAPL HOLDINGS INC., JACK SHUSTER,
GORDON FENWICK, PAUL FENWICK, and
JOEL FENWICK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MOTORCAR PARTS OF AMERICA, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAPL HOLDINGS INC., a Canadian corporation, JACK SHUSTER, an individual, GORDON FENWICK, an individual, PAUL FENWICK, an individual, and JOEL FENWICK, an individual,<br><br>Defendants. | Case No. CV14-01153<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF MOTORCAR PARTS OF AMERICA, INC.'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND *FORUM NON CONVENIENS***<br><br>Hearing Date: July 10, 2014<br>Time: 8:30 a.m.<br>Courtroom: 10<br>Judge: Hon. George H. Wu<br><br>Complaint Filed: February 13, 2014<br>Trial Date: N/A |

1

## TABLE OF CONTENTS

2

**Page**

3  I.    INTRODUCTION ......................................................................................... 1

4  II.   ARGUMENT ................................................................................................ 3

5      A.    MPA does not dispute that general jurisdiction is absent. .................... 3

6      B.    MPA cannot establish specific jurisdiction. .......................................... 3

7          1.    MPA cannot show "purposeful direction." ................................. 4

8          2.    Forcing Defendants to litigate in California would violate
              "traditional notions of fair play and substantial justice." .......... 5
9
              a.    The burden on Defendants to litigate in California
10                 makes personal jurisdiction unreasonable........................ 5

11             b.    All the remaining factors weigh against the exercise
                  of personal jurisdiction. .................................................... 7
12
          3.    At the least, MPA has not shown personal jurisdiction
13             over Paul and Joel Fenwick. ...................................................... 9

14     C.    There is no question this Court should dismiss on *forum non
          conveniens* grounds. ............................................................................ 9
15
          1.    The private factors weigh in favor of dismissal. ...................... 11
16
          2.    The public factors also weigh in favor of dismissal. ............... 13
17
   III.   CONCLUSION ........................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abert Trading, Inc. v. Kipling Belgium N.V/S.A.*,
  2002 WL 272408 (S.D.N.Y. Feb. 26, 2002) .........................................9

*Banco Nominees Ltd. v. Iroquois Brands, Ltd.*,
  748 F. Supp. 1070 (D. Del. 1990) .......................................................11

*Carijano v. Occidental Petroleum Corp.*,
  643 F.3d 1216 (9th Cir. 2011).................................................11, 12, 14

*Cook v. Champion Tankers AS*,
  2013 WL 1629136 (N.D. Cal. Apr. 16, 2013) ...................................10

*Costa v. Keppel Singmarine Dockyard PTE, Ltd.*,
  2003 WL 24242419 (C.D. Cal. Apr. 24, 2003)....................................7

*Dibdin v. South Tyneside NHS Healthcare Trust*,
  2013 WL 327324 (C.D. Cal. Jan. 29, 2013)........................................10

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ..............................................................5

*Flynn v. Everything Yogurt*,
  1993 WL 454355 (D. Md. Sept. 14, 1993)...........................................9

*Gund v. Philbrook's Boatyard*,
  374 F. Supp. 2d 909 (W.D. Wash. 2005) ..............................................9

*Happy Merchant Ltd. v. Far Eastern Shipping Co.*,
  1995 WL 705131 (N.D. Cal. Nov. 8, 1995).........................................7

*Jovanovic v. BluForest, Inc.*,
  2013 WL 129427 (D. Nev. Jan. 9, 2013) ..............................................8

*LockeBridge, LLC v. RGMS Media, Inc.*,
  2012 WL 2370114 (D. Mass. June 22, 2012) .....................................14

*M&I Eastpoint Tech., Inc. v. Mid-Med Bank*,
  2000 WL 1466150 (D.N.H. Jan. 28, 2008) ........................................10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mehta v. Power-One, Inc. et al.*,
   CV-13-04631-GW (CWx) (C.D. Cal. June 2, 2014) ...................................14, 15

*Moletech Global Hong Kong Ltd. v. Pojery Trading Co.*,
   2009 WL 3151147 (N.D. Cal. Sept. 25, 2009)..............................................10, 15

*Moss v. Nui Phao Mining Joint Venture Co.*,
   2010 WL 3222377 (N.D. Cal. Aug. 13, 2010).....................................................8

*Nedlloyd Lines B.V. v. Super. Ct.*,
   3 Cal. 4th 459 (1992)........................................................................................14

*Opert v. Schmid*,
   535 F. Supp. 591 (S.D.N.Y. 1982) ...................................................................11

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235102 S. Ct. 252, 70 L. Ed. 2d 419 (1981) ........................................9

*Russel v. De Los Suenos*,
   2014 WL 1028882, (S.D. Cal. Mar. 17, 2014)..................................................10

*Sawtelle v. Farrell*,
   70 F.3d 1381 (1st Cir. 1995) ..............................................................................8

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004).....................................................................3, 4, 5

*STM Grp., Inc. v. Gilat Satellite Networks Ltd.*,
   2011 WL 2940992 (C.D. Cal. July 18, 2011) .............................................11, 12

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995)................................................................................5

**OTHER AUTHORITIES**

Hague Conference on Private International Law, 20: Convention of 18
   March 1970 on the Taking of Evidence Abroad in Civil or
   Commercial Matters - Status Table, available at
   http://www.hcch.net/index_en.php?act=conventions.status&cid=82
   (last visited April 6, 2014).................................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/Federal
     CourtManagementStatistics/2013/district-fcms-profiles-december-
     2013.pdf&page=68 ............................................................................................ 15

1    **I.      INTRODUCTION**

2            The four Canadian citizens named here as defendants owned a family-run

3    Canadian company that was pursued in Canada, appraised in Canada, and

4    purchased in Canada by a California-based multinational corporation.  Recognizing

5    that business deals sometimes sour, the parties included language in every key

6    agreement specifying which of their two countries' laws would govern MPA's

7    acquisition of Fenco.  They chose Canada.  The Letter Agreement is to be

8    "governed by and construed in accordance with" Canadian law.  The Debenture

9    Agreement is to be "governed by and construed in accordance with" Canadian law.

10   The Purchase Agreement is to be "governed by and interpreted and enforced in

11   accordance with" Canadian law.  And the Escrow Agreement is to be "governed by

12   and interpreted and enforced in accordance with" Canadian law.

13           The parties even took the trouble to spell out which of their two countries'

14   judiciaries would apply Canadian law if a dispute could not be resolved without a

15   court's intervention.  Again, they chose Canada.  The Debenture Agreement

16   requires them to submit to "the non-exclusive jurisdiction" of the Ontario courts.

17   The Purchase Agreement requires them to submit to "the non-exclusive

18   jurisdiction" of the Ontario courts—while also "waiv[ing] objection . . . that such

19   court provides an inconvenient forum."  And the Escrow Agreement requires them

20   to submit to "the ***exclusive*** jurisdiction" of the Ontario courts, again without

21   objecting to that forum as inconvenient.  The parties could have, of course, made

22   Ontario's jurisdiction exclusive in each agreement, not just one.  But the parties

23   also could have mentioned California somewhere—and they did not.  At every

24   stage, there was a clear expectation that litigation, if necessary, would occur in

25   Canada.  The parties' mediation in Canada only reinforced that presumption.

26           For MPA to insist now that California is a "compelling" forum ignores the

27   Canadian focus of the parties' history.  Its Opposition fails to show why a Canadian

28   court would not be more appropriate—or at the very least, more convenient.

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

1         This Court can dismiss on jurisdictional grounds because every significant

2    aspect of this deal, from the negotiations to the due diligence to the closing,

3    occurred in Canada.  MPA's Opposition concedes that California has no general

4    jurisdiction over any defendant.  As for specific jurisdiction, MPA cannot show

5    "purposeful availment" or "purposeful direction," and, in any event, exercising

6    personal jurisdiction would offend "traditional notions of fair play and substantial

7    justice."  All seven reasonableness factors point to Canada, especially the burden

8    that litigating here would place on Defendants.  Jack Shuster, Gordon Fenwick,

9    Paul Fenwick, and Joel Fenwick are all Canadian citizens who reside in Canada.

10   So are the witnesses they would call, none of whom has an incentive or obligation

11   to testify in a foreign forum 2,500 miles from home—especially witnesses whose

12   own liability could be exposed.  Defendants have no authority to compel them.

13   More importantly, neither does this Court.  Without the benefit of the Canadian

14   witnesses who prepared, audited, and reviewed Fenco's financial statements,

15   Defendants face a crippling burden, one that alone warrants dismissal.

16        Regardless of whether this Court is inclined to exercise personal jurisdiction,

17   there is no question that dismissal on *forum non conveniens* principles is warranted.

18   Given the thoroughly Canadian nature of this dispute—the law, the accounting

19   principles, the evidence, the witnesses, and the countless other practical

20   considerations—the seven private and five public *forum non conveniens* factors all

21   favor Canada.  Courts are afforded substantial deference in determining what is

22   "convenient," a commonsense standard that is far less rigorous than what is "fair."

23   Moreover, this Court can exercise its discretion to dismiss on *forum non conveniens*

24   grounds without even ruling on personal jurisdiction.  Under any analysis, MPA

25   should not be allowed to go shopping in Canada, negotiating for and assuming

26   control of a Canadian company, in a deal governed by Canadian law, and then force

27   the Canadians it targeted to defend themselves in a U.S. court.

28

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

II.     **ARGUMENT**

      A.     **MPA does not dispute that general jurisdiction is absent.**

      MPA's Opposition concedes that it cannot establish general jurisdiction, i.e., that Defendants have such "continuous and systematic" contacts with California so as to "approximate physical presence." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  In asserting personal jurisdiction, MPA focuses exclusively on specific jurisdiction, ignoring general jurisdiction altogether and conceding that only contacts that give rise to MPA's claims are relevant to the jurisdictional analysis. (*See* Opp. at 10–21; *see also id.* at 11 (noting that for the purpose of jurisdiction "the claim must arise out of or relate to the defendant's forum related activities")).  Thus, while MPA's Opposition dwells on Fenco's factories in Pennsylvania and New Hampshire and other operations *outside* California, these allegations are, by MPA's own admission, nothing but distractions.  None of these alleged contacts has anything to do with MPA's claims.

      B.     **MPA cannot establish specific jurisdiction.**

      Having conceded general jurisdiction, MPA's Opposition fails to establish specific jurisdiction.  Under the Ninth Circuit's three-prong test: (1) "[t]he non-resident defendant must . . . perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.  In its Opposition, MPA does not dispute that it cannot show "purposeful availment." And even if MPA could establish that Defendants' few trips to California in a broad sense "relate[]" to MPA's claims, the exercise of specific jurisdiction over Defendants here nonetheless violates "fair play and substantial justice."

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

### 1.    MPA cannot show "purposeful direction."

MPA's Opposition makes no attempt to dispute that MPA cannot establish "purposeful availment." Instead, MPA asserts only that another test, "purposeful direction," applies. To the extent MPA's newfound theory relies on its federal securities claims, however, it is meritless because as Defendants' 12(b)(6) motion has already shown, these claims—which hinge on a radical extraterritorial expansion of the U.S. securities laws—are not even colorable. (*See* D.E. 15-1.)

Even if "purposeful direction" were the applicable test, personal jurisdiction is still improper because if any party "expressly aimed" anywhere, it is MPA at Canada. *Schwarzenegger*, 374 F.3d at 803 (to establish purposeful direction, defendant must have "expressly aimed at the forum state") (internal quotations omitted). While MPA now attempts to selectively edit the parties' history— spinning the June 2010 meeting as "the first *serious* discussion about MPA's investment" (Opp. at 4 (emphasis added))—MPA does not deny that it was the one guided by an "acquisition/merger strategy" or that it was the first to initiate contact, traveling to Fenco's Toronto headquarters years before the California meeting. (Declaration of Jack Shuster ("Shuster Decl.") ¶¶ 10–14.) Further, MPA does not deny that Defendants accepted MPA's June 2010 invitation only after MPA insisted that it was still interested in acquiring Fenco despite Fenco's financial problems. (*See id.* ¶ 15.) As for MPA's claim that it was Fenco's "only target" (Opp. at 1), that is flat wrong. To the contrary, by June 2010, Fenco already had a deal with another buyer, which it terminated to enter in a new arrangement with MPA. (*See* Shuster Decl. ¶¶ 15–16.) And while MPA now makes much of the parties' telephone and e-mail communications, MPA does not deny that its auditors conducted extensive due diligence in Canada, its own senior executives traveled to Toronto and installed themselves in Fenco's headquarters, and that the parties negotiated for a week in Canada before closing the deal there. (*Id.* ¶¶ 17–22.) Thus, the most important events all occurred on the ground in Canada where

1   MPA's representatives had set up shop.  That distinguishes this case from *Dole*

2   *Food Co. v. Watts*, where the defendants "targeted" Dole in California, having

3   initiated discussions and negotiated almost entirely with Dole's California

4   managers.  *See* 303 F.3d 1104, 1108–10 (9th Cir. 2002).

### 2.   Forcing Defendants to litigate in California would violate "traditional notions of fair play and substantial justice."

7   Even if MPA could somehow connect Defendants' Toronto-based operations

8   to California, personal jurisdiction is nonetheless unwarranted because forcing

9   Defendants to defend their case in California would violate "fair play and

10  substantial justice."  *Schwarzenegger*, 374 F.3d at 802.  This is especially true

11  given the many crucial—and unwilling—Canadian witnesses whom this Court

12  cannot compel to testify.  In considering "fair play and substantial justice," courts

13  consider seven factors: (1) the burden on the defendant of defending in the forum;

14  (2) the extent of the defendant's purposeful interjection into the forum state's

15  affairs; (3) the extent of conflict with the sovereignty of the defendant's state; (4)

16  the forum state's interest in adjudicating the dispute; (5) the most efficient judicial

17  resolution of the controversy; (6) the importance of the forum to the plaintiff's

18  interest in convenient and effective relief; and (7) the existence of an alternative

19  forum.  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  Contrary

20  to what MPA's Opposition imagines, all seven factors weigh against personal

21  jurisdiction—none more than the first.

### a.   The burden on Defendants to litigate in California makes personal jurisdiction unreasonable.

24  The burden on Defendants to litigate in California is extraordinary, which

25  alone warrants dismissal.  Most of the key witnesses are in Canada and outside this

26  Court's subpoena power.  The crux of MPA's case involves financial statements

27  prepared in Canada, audited in Canada, and scrutinized again in Canada.  To refute

28  MPA's claims, Defendants will need to call the former Fenco employees who

compiled those financials, the BDO Canada LLP auditors who signed off on them, the Ernst & Young Canada accountants who examined Fenco's operations for MPA, and the Canadian counsel who represented the parties throughout MPA's pursuit and purchase of Fenco in a deal "governed by and interpreted and enforced in accordance with" Canadian law.  Defendants have no control over these third parties, whereas almost all of MPA's witnesses are current business partners or employees, whom it presumably can convince to testify regardless of where this case proceeds.  (*See* Declaration of F. Phillip Hosp ("Hosp Decl.") ¶ 18.)  And while MPA posits the Hague Convention as an alternative, Canada is not a signatory to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.[1]

Further hamstringing Defendants, some key witnesses not only have nothing to gain by volunteering to testify in California but everything to lose.  For example, BDO Canada is a critical witness for Defendants.  As the Complaint makes clear, MPA purportedly "relied on financial statements ***reviewed or audited by BDO Canada LLP***."  (Compl. ¶ 30 (emphasis added).)  In addition, in June 2012—over a year after the acquisition—MPA itself represented to BDO Canada that Fenco's 2009 and 2010 financial statements, along with its 2011 financial statements, were accurate.  (*See* Supplemental Declaration of Jack Shuster ¶ 2; *id.*, Ex. 23.)  But in its Complaint, MPA claims that it suspected that the financial statements contained alleged misrepresentations as early as September 2011.  (*See* Compl. ¶ 40–44; *see also* Opp. at 8.)  At the same time, BDO Canada's substantial involvement with Fenco's financial statements raises questions about BDO Canada's own potential

---

[1] *See* Hague Conference on Private International Law, 20: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters - Status Table, available at http://www.hcch.net/index_en.php?act=conventions.status&cid=82 (last visited April 6, 2014).

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

liability.  Therefore, it is improbable that BDO Canada would willingly travel over 2,500 miles to give testimony—not when BDO Canada could potentially incriminate itself—even if Jack Shuster, as MPA disingenuously notes, is a former partner.[2]  Indeed, there would be nothing "logical" about that at all.  Similarly, MPA's contention that "[p]resumably, Defendants would have a right to demand that BDO produce accounting files" has no basis in fact.  (Opp. at 20.)  BDO Canada's client was Fenco, a wholly-owned subsidiary of MPA, not Defendants.  If anyone has a right to demand the files, it is MPA.

### b.   All the remaining factors weigh against the exercise of personal jurisdiction.

If crippling Defendants' case is not alone enough to offend "traditional notions of fair play and substantial justice," then the remaining reasonableness factors surely establish that personal jurisdiction is unwarranted.

***Purposeful Interjection.***  Even if Defendants' minimal contacts with California somehow qualify as "purposeful direction," this factor, in the context of "fair play and substantial justice," nonetheless favors Canada given that it was MPA that interjected itself into Canada, not the other way around.[3]

***Conflict with the Sovereignty of Canada.***  As MPA's Complaint acknowledges, Defendants are all citizens and residents of Canada.  For that reason alone, this factor weighs against California.  *Happy Merchant Ltd. v. Far Eastern*

---

[2] Similarly, EY Canada runs the risk of implicating itself if it were to voluntarily testify at trial.  Accountants from EY Canada spent almost a year at Fenco's headquarters conducting due diligence on Fenco's financial statements—and presumably found nothing wrong.  Thus, if Fenco's financial statements were incorrect, EY Canada may also be liable.  At the least, it is bad for EY Canada's business to voluntarily testify against a former client.

[3] *See Costa v. Keppel Singmarine Dockyard PTE, Ltd.*, 2003 WL 24242419, at *21 (C.D. Cal. Apr. 24, 2003) ("The fact that the court has made this finding [of purposeful availment] . . . does not obviate the need to consider the degree of defendants' intrusion into the state [for purposes of analyzing purposeful interjection factor].").

1  *Shipping Co.*, 1995 WL 705131, at *4–5 (N.D. Cal. Nov. 8, 1995) (finding, in

2  concluding personal jurisdiction would be "decidedly unreasonable," that "potential

3  conflict with the sovereignty of defendant's state presents an especially high barrier

4  when defendant is from a foreign nation").

5      ***California's Interest.***  California's interest in adjudicating this dispute is

6  minimal.  Even in cases involving alleged fraud and negligence, the forum state's

7  interests are nominal where, as here, the alleged misconduct occurred abroad.  *See,*

8  *e.g.*, *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995) (forum state has "far

9  less compelling interest" where "acts comprising the defendants' alleged [tortious

10  acts] occurred almost entirely outside of [forum state]").

11      ***Most Efficient Resolution.***  MPA's own papers show that Canada offers the

12  most efficient forum because Canadian law and Canadian accounting principles are

13  at the heart of this case.  *See Moss v. Nui Phao Mining Joint Venture Co.*, 2010 WL

14  3222377, at *3 (N.D. Cal. Aug. 13, 2010) (concluding in *forum non conveniens*

15  context that "a Canadian court would be able to apply Canadian contract law more

16  efficiently than this Court").  And while MPA contends that "the majority of the

17  evidence and witnesses are located here, in California" (Opp. at 19), its own

18  statements reveal that to be false.  Fenco's documents are apparently with the court-

19  appointed trustee in Fenco's bankruptcy action in Delware, 2,500 miles away from

20  California.  And setting aside Defendants' witnesses, not even a majority of MPA's

21  own witnesses are here: The Opposition names 11 witnesses (or categories of

22  witnesses), ***only one of them in California***.  (*See* Hosp Decl. ¶ 17.)

23      ***Importance of Forum to Plaintiff's Interest and Existence of Alternative***

24  ***Forum.***  MPA's Opposition does not dispute that both these factors weigh against

25  California.  This is unsurprising, given the dearth of evidence and witnesses in

26  California, and the regularity with which U.S. courts have found that Canada

27  qualifies as an alternative forum.  *See, e.g.*, *Jovanovic v. BluForest, Inc.*, 2013 WL

28  129427, at *1 (D. Nev. Jan. 9, 2013) (dismissing in favor of Canada where

1  Canadian law governed contract dispute and provided an appropriate remedy to

2  plaintiff); *Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 912 (W.D. Wash.

3  2005) (recognizing that Canada provided an adequate forum).

   **3.    At the least, MPA has not shown personal jurisdiction over**
   **Paul and Joel Fenwick.**

6  If nothing else, exercising personal jurisdiction over Paul and Joel Fenwick,

7  given their limited contacts with California, would violate "fair play and substantial

8  justice."  As CEO, Shuster represented Fenco during the parties' negotiations.

9  (Declaration of Paul Fenwick ("P. Fenwick Decl.") ¶ 6; Declaration of Joel

10  Fenwick ("J. Fenwick Decl.") ¶ 6.)  Neither Paul nor Joel Fenwick involved himself

11  in those talks.  Indeed, Paul and Joel Fenwick traveled to California only twice in

12  connection with the acquisition, both times to attend strategic planning sessions

13  during which the details of the actual transaction were not discussed.  (P. Fenwick

14  Decl. ¶ 7; J. Fenwick Decl. ¶ 7.)  And contrary to MPA's contention, even if both

15  were "controlling principals," that alone does not justify jurisdiction.  *Flynn v.*

16  *Everything Yogurt*, 1993 WL 454355, at *3 (D. Md. Sept. 14, 1993) ("[A] principal

17  would not reasonably anticipate being haled into court by virtue of the

18  corporation's activities there.") (internal quotations omitted).

   **C.    There is no question this Court should dismiss on *forum non***
   ***conveniens* grounds.**

21  Regardless of how it decides jurisdiction, this Court should dismiss on *forum*

22  *non conveniens* grounds.  Personal jurisdiction addresses whether this Court ***can***

23  adjudicate this case; *forum non conveniens* addresses whether it ***should***.  For the

24  purposes of *forum non conveniens*, the key consideration is obvious:

25  "convenience."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S. Ct. 252,

26  262, 70 L. Ed. 2d 419, 431 (1981) (recognizing that "the central focus of the *forum*

27  *non conveniens* inquiry is convenience").  The threshold for dismissal is thus lower

28  than that for personal jurisdiction.  *See Abert Trading, Inc. v. Kipling Belgium*

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

*N.V/S.A.*, 2002 WL 272408, at *7 (S.D.N.Y. Feb. 26, 2002) (granting motion to dismiss on *forum non conveniens* grounds, despite finding personal jurisdiction); *M&I Eastpoint Tech., Inc. v. Mid-Med Bank*, 2000 WL 1466150, at *11 (D.N.H. Jan. 28, 2008) (same).  In deciding whether dismissal is proper for *forum non conveniens*, district courts are afforded "substantial deference."  *Moletech Global Hong Kong Ltd. v. Pojery Trading Co.*, 2009 WL 3151147, at *4 (N.D. Cal. Sept. 25, 2009) ("The District Court's decision may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.").

Here, dismissal under *forum non conveniens* is not only appropriate, but "convenience" so overwhelmingly weighs in favor of Canada that this Court should exercise its discretion to dismiss on *forum non conveniens* grounds without even ruling on personal jurisdiction.[4]  MPA's Opposition does not dispute that Canada provides an adequate alternative forum.  Thus, the only issue is whether the private and public factors show that litigating in California is "convenient."  How can it be if almost nothing related to MPA's acquisition of Fenco—from the documents to Defendants' witnesses, not to mention Defendants themselves—is in California?  Canadian, not California, law is paramount.  And even if forcing Defendants to defend themselves without key witnesses were to somehow comport with "fair play and substantial justice," doing so would at a minimum still be inconvenient.  *STM*

---

[4] *See Dibdin v. South Tyneside NHS Healthcare Trust*, 2013 WL 327324, at *1–3 (C.D. Cal. Jan. 29, 2013) (dismissing case on *forum non conveniens* grounds and declining to address personal jurisdiction issue); *Russel v. De Los Suenos*, 2014 WL 1028882, at *1, 4 (S.D. Cal. Mar. 17, 2014) (granting motion to dismiss on *forum non conveniens* grounds and denying as moot motion on personal jurisdiction); *Cook v. Champion Tankers AS*, 2013 WL 1629136, at *9 (N.D. Cal. Apr. 16, 2013) ("Because the Court finds that dismissal of this action is appropriate on the grounds of collateral estoppel and forum non conveniens, the Court does not reach the issue of whether it has personal jurisdiction over [defendant].").

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

*Grp., Inc. v. Gilat Satellite Networks Ltd.*, 2011 WL 2940992, at \*7 (C.D. Cal. July 18, 2011) (forcing defendant to litigate where material witnesses would be unwilling to testify would be "oppressive" because "it is unlikely that Defendant will be able to sufficiently defend itself"); *Banco Nominees Ltd. v. Iroquois Brands, Ltd.*, 748 F. Supp. 1070, 1075–76 (D. Del. 1990) (private factors "strongly" favored dismissal where litigating in forum state "may very well deprive the Defendant of key witnesses necessary to establish the Defendant's affirmative defenses," as witnesses were English citizens and "likely to be unwilling").

### 1. The private factors weigh in favor of dismissal.

All seven private factors here point to dismissal.  In ruling on *forum non conveniens*, courts consider the following private interests: (1) the location of the parties and witnesses; (2) the location of material evidence; (3) whether witnesses can be compelled to testify, and if not, whether they are unwilling to testify; (4) the costs of bringing witnesses to the forum; (5) the convenience to the parties; (6) whether there are issues enforcing the judgment; and (7) any other practical considerations that support an efficient and expedient trial.  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011).

**Location of Parties and Witnesses**.  Only MPA is in California.  On the other hand, Defendants are in Canada, along with most of their witnesses.  (*See supra* at 5–7.)  Not even the majority of MPA's own witnesses are in California.  (*See* Hosp Decl. ¶ 17.)  Most of them are scattered across the eastern half of the United States, much closer to Canada than California.  *See Opert v. Schmid*, 535 F. Supp. 591, 595 (S.D.N.Y. 1982) (private-interest factors "strongly" favored dismissal where alleged misconduct occurred in Europe and "many of the defendants' witnesses and at least some of the plaintiff's witnesses reside in Europe").

**Location of Material Evidence**.  Very little evidence, if any, is in California.  By MPA's own admission, all of Fenco's documents—including documents

1   relating to the financial statements at the heart of this case—are in the custody of

2   Fenco's bankruptcy trustee in Delaware, 350 miles from Canada, 2,500 miles from

3   California.

4       ***Compelling Witnesses to Testify.***  Most of Defendants' key witnesses are in

5   Canada and outside this Court's subpoena power—including former Fenco

6   employees, BDO Canada auditors, EY Canada accountants, Royal Canadian Bank

7   executives, and the parties' Canadian counsel.  (*See* D.E. 14-1 at 17.)  Because

8   Canada is not a signatory, the Hague Convention is not a solution.  (*See supra* at 6.)

9   And while MPA protests that Defendants have not named specific witnesses in

10  Canada or proved that those witnesses are in fact unwilling to testify in California,

11  at this stage neither is required.  It is enough that Defendants have described who

12  those witnesses are and why their testimony is relevant.  Likewise, it is also enough

13  that Defendants have represented that these witnesses are unlikely to appear—

14  which they did in their opening brief and again do so here—and that this outcome

15  seems "probable."  *STM Grp.*, 2011 WL 2940992, at *7 (finding "no assurance that

16  the parties will be able to compel testimony of Peruvian witnesses" if case

17  proceeded in California because "Defendant allege[d] [in motion] that it is

18  'unlikely' that such witnesses would testify voluntarily," and "Defendant's

19  predictions seem probable") (citing *Carijano*, 643 F.3d at 1231).  Indeed, in the

20  case of some witnesses here, it is more than "probable" that they would not

21  voluntarily travel thousands of miles to testify, especially when they might risk

22  incriminating themselves in the process.  (*See supra* at 6–7.)

23      ***Costs of Bringing Witnesses to Forum.***  Given that most of Defendants'

24  witnesses, even most of MPA's, are outside California and thousands of miles

25  away, it is indisputable that the costs of bringing witnesses to the forum will be

26  substantial.  Although MPA is a multinational company with hundreds of millions

27  of dollars in annual sales, Defendants are four individuals—a year and a half

28

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

removed from any involvement with Fenco—and a holding company with no operations.

*Convenience to Parties*.  Defendants face numerous personal burdens if this case were to continue in California.  Since 2011, for example, Paul Fenwick has suffered from a heart condition that makes extended travel unduly burdensome; doctors have performed cardiac ablation on him—inserting a catheter through a vein to disrupt his abnormal heart rhythm.  (*See* P. Fenwick Decl. ¶ 3.)  Jack Shuster is the primary caregiver for his disabled wife; she suffers from fibromyalgia, a disorder characterized by widespread musculoskeletal pain and debilitating fatigue.  (*See* Shuster Decl. ¶ 4.)  On the other hand, Canada *is* a convenient forum for MPA, which it freely admitted when it waived all objections to Ontario as an inconvenient forum.  (*See* D.E. 14-1 at 9–10.)  And nothing in MPA's Opposition suggests that it cannot prosecute its claims—and seek full relief—in Canada; it just chooses not to.

*Issues Enforcing Judgment and Other Practical Considerations.*  MPA's Opposition leaves undisputed that these factors also weigh against California.  Even assuming MPA were able to prove its case, MPA does not deny that a U.S. judgment would still need to be enforced in a separate proceeding in Canada, while such a step would be unnecessary for a Canadian judgment.  (*See* D.E. 14-1 at 23.)  Further, MPA does not deny that a related case is already pending in Ontario Superior Court, and that judicial economy and convenience dictate that the same court adjudicate both.  (*See id.*)  This is especially relevant if there is no jurisdiction here over some of the defendants, and MPA decides to pursue claims against them in Canada.

### 2.    The public factors also weigh in favor of dismissal.

As with the private factors, all the public factors favor dismissal.  In deciding *forum non conveniens*, courts consider the following public-interest factors: (1) the court's familiarity with the governing law; (2) whether there is a local interest in the

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153

lawsuit; (3) the burden on local courts and juries; (4) court congestion; and (5) the costs of resolving a dispute unrelated to a particular forum. *Carijano*, 643 F.3d at 1232.

**Court's Familiarity with Governing Law.**  It is indisputable that Canadian courts are more familiar with Canadian law, and here the governing law is overwhelmingly Canadian. *See Mehta v. Power-One, Inc. et al.*, CV-13-04631-GW (CWx), at *9 (C.D. Cal. June 2, 2014), Dkt. No. 55. (Wu, J.) (finding "[w]hile this Court of course **can** apply Delaware law, Delaware courts are much more prepared to do so with ease").  Canadian law governs MPA's contract claim.  As for MPA's fraud claims and federal securities claims, MPA contends that the choice-of-law provision does not apply because the Purchase Agreement provides that "[n]othing in this Agreement . . . limits or restricts in any way any remedies available, or damages payable, for claims involving fraud or fraudulent misrepresentation." (Opp. at 8.)  But whether the Purchase Agreement's choice-of-law provision covers those claims is itself an issue that must first be resolved under Canadian, not U.S., law. *See Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459 (1992) (looking first to Hong Kong law to determine whether Hong Kong choice-of-law provision in shareholder agreement also applied to breach of fiduciary duty claim).  It is also indisputable that Canadian accounting standards govern the financial statements at the heart of this case.

**Local interest.**  California's interest in this lawsuit is minimal at best because the actions and events on which this case turns—the preparation of Fenco's financial statements, MPA's due diligence, the parties' closing—all occurred in Canada, not California. *LockeBridge, LLC v. RGMS Media, Inc.*, 2012 WL 2370114, at *10 (D. Mass. June 22, 2012) (forum state's interest weighed against personal jurisdiction where defendants had no connection with forum state, and "alleged wrongful conduct . . . appears to have occurred entirely outside of [forum state]").  That MPA is a New York corporation with operations worldwide also

lessens California's interest in this case.  *See Mehta v. Power-One, Inc. et al.*, CV-13-04631-GW (CWx), at \*9 (Wu, J.) (finding where plaintiff's principal place of business was in California that "there is certainly an equal interest in at least Delaware, and to some extent, nation-and perhaps world-wide" because plaintiff was "also a Delaware corporation").

     ***Burden on Local Juries and Court Congestion.***  As this Court has recognized, court congestion is a serious problem in California.  *See id.* (noting in granting motion for *forum non conveniens* that "this District is routinely one of the highest-volume federal district courts in the country").  The Central District of California received 16,712 filings last year.[5]  Given California's minimal interest here, there is no reason to burden this Court, or California citizens, with a case that is more conveniently heard in Canada.  *See id.* (finding burden on local court and jury substantial in part when "case involves a claim that is effectively national, if not international in scope, to be decided under non-California law"); *Moletech*, 2009 WL 3151147, at \* 7 (finding that "[b]ecause California has little, if any, interest in this case, there is no reason to impose the burdens of trial and jury service on citizens of this forum").

     ***Costs.***  Given that this case has almost nothing to do with California but everything to do with Canada, California should not bear the costs of resolving this dispute, especially when MPA concedes that Canada is an adequate forum.

## III.   CONCLUSION

     MPA knows the way to Toronto.  It traveled there to woo Fenco.  It traveled there to inspect Fenco.  It traveled there to buy Fenco.  It traveled there to operate Fenco.  It traveled there to mediate these very claims with Fenco's former principals.  And it has conceded that traveling there is neither an inconvenience nor

---

[5]*See* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=68.

1  an obstacle to pursuing the relief it seeks.  MPA also knows that a Canadian

2  business dispute has no place in a California court.  To have any hope of airing its

3  grievances in California, MPA has attempted to stretch this action into a federal

4  securities case—a Hail Mary pass that would have this Court redefine the

5  extraterritorial reach of the U.S. securities laws.  This Court need not expend scarce

6  resources on such a complex and precarious inquiry.  It can dismiss, either as a

7  matter of "fair play and substantial justice" or simply under principles of

8  convenience, confident that these issues will be more fully and expeditiously

9  adjudicated in a Canadian forum.

10

11  Dated: June 5, 2014                    O'MELVENY & MYERS LLP

12                                         By:   */s/ Seth Aronson*
                                                 Seth Aronson

13                                         Attorney for Defendants
14                                         FAPL HOLDINGS INC., JACK
                                           SHUSTER, GORDON FENWICK,
15                                         PAUL FENWICK, and JOEL FENWICK

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEM. OF POINTS & AUTH.
ISO DEFS' MOT. TO DISMISS
CV14-01153