SETH ARONSON (S.B. #100153)
saronson@omm.com
WILLIAM K. PAO (S.B. #252637)
wpao@omm.com
SARAH K. HALL (S.B. #274327)
shall@omm.com
MICHELLE C. LEU (S.B. #285437)
mleu@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendants
FAPL HOLDINGS INC., JACK SHUSTER,
GORDON FENWICK, PAUL FENWICK, and
JOEL FENWICK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MOTORCAR PARTS OF AMERICA, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>FAPL HOLDINGS INC., a Canadian corporation, JACK SHUSTER, an individual, GORDON FENWICK, an individual, PAUL FENWICK, an individual, and JOEL FENWICK, an individual,<br><br>Defendants. | Case No. CV14-01153<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS PLAINTIFF MOTORCAR PARTS OF AMERICA, INC.'S FOURTH AND FIFTH CAUSES OF ACTION FOR VIOLATIONS OF SECTIONS 10(b) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>Hearing Date:  July 10, 2014<br>Time:          8:30 a.m.<br>Courtroom:     10<br>Judge:         Hon. George H. Wu<br><br>Complaint Filed: February 13, 2014<br>Trial Date:      N/A |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ........................................................................................................ 2

    A. *Morrison* bars MPA's federal securities claims. .................................... 2

    B. In any event, MPA has not pleaded falsity and scienter with particularity. ............................................................................................. 4

        1. MPA's Complaint fails to show that Defendants made material misstatements. ............................................................. 5

        2. MPA's Complaint fails to show a strong inference of scienter. ........................................................................................ 7

    C. Having failed to establish a Section 10(b) claim, MPA cannot recover under Section 20(a). ..................................................................... 8

III. CONCLUSION ..................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................... 6

*Falat v. County of Hunterdon*,
2013 WL 1163751 (D.N.J. Mar. 19, 2013) ........................................................ 7

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ............................................................................ 8

*In re Alstom SA Secs. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) .............................................................. 3

*In re Amgen Inc. Secs. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008) ............................................................ 7

*In re A-Power Energy Generation Sys. Ltd. Secs. Litig.*,
2012 U.S. Dist. LEXIS 79417 ......................................................................... 6

*In re Netflix, Inc. Secs. Litig.*,
2005 WL 1562858 (N.D. Cal. June 28, 2005) .................................................. 7

*In re Royal Bank of Scotland Grp. PLC Secs. Litig.*,
765 F. Supp. 2d 327 (S.D.N.Y. 2011) .............................................................. 3

*In re Swift Transp. Co.*,
2006 WL 1805578 (D. Ariz. Mar. 29, 2006) .................................................... 5

*In re UBS Secs. Litig.*,
2011 WL 4059356 (S.D.N.Y. Sept. 13, 2011) ............................................. 3, 4

*Lapiner v. Camtek, Ltd.*,
2011 WL 445849 (N.D. Cal. Feb. 2, 2011) ...................................................... 7

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) ........................ passim

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*,
2013 WL 1188050 (D. Conn. Mar. 23, 2013) ................................................. 6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ............................................................................. 8

*Wool v. Tandem Computers, Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ........................................................................ 6, 7

**STATUTES**

Private Securities Litigation Reform Act ..................................................... 2, 4, 6, 7

**RULES**

17 C.F.R. § 10(b) ..................................................................................... 2, 3, 4, 8

17 C.F.R. § 20(a) ................................................................................................ 2, 8

Fed. R. Civ. P. 9(b) ................................................................................................ 4

## I. INTRODUCTION

When MPA purchased Fenco from the four Canadian citizens named here, it closed the deal in a private transaction, governed by Canadian law, in the office of its Canadian counsel. No matter how much MPA now regrets its acquisition of Fenco, there is nothing about MPA's decision to venture into Canada and pursue a private Canadian company that could possibly implicate U.S. securities laws. Even though MPA's stock was involved, it was not the object of the transaction: MPA was purchasing Fenco shares, not the other way around. Even though MPA is a publicly listed U.S. corporation, the Purchase Agreement was not executed in the United States. Even though MPA's stock is listed on Nasdaq, the actual shares MPA paid to Defendants were not traded on Nasdaq—or any other domestic exchange. There were no stockbrokers involved in the deal for Fenco, no buying or selling of shares in any type of public transaction whose integrity the Exchange Act is designed to protect. In keeping with the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.* and its progeny, federal securities laws do not extend across the U.S. border to securities transferred privately in Canada.

Not only is MPA's dispute with Defendants not a U.S. securities case, but the parties' own agreements reveal that nobody envisioned a U.S. securities case even potentially arising from their deal. When given the opportunity to specify what law would govern the Purchase Agreement—and the Letter Agreement and the Debenture Agreement and the Escrow Agreement—the parties chose Canadian law, not U.S. law. If for some reason the deal later soured, they all recognized that they would be scrutinizing the terms of a Canadian contract, not reexamining the reach of the Securities Exchange Act of 1934 ("Exchange Act"). As MPA's Oppositions to both this motion and to Defendants' *forum non conveniens* motion confirm, its federal securities claims have been manufactured for a single purpose: to gain access to a California court. Without federal securities claims, MPA could still prosecute its breach-of-contract and fraud case against Defendants; if it managed to

prove that case, MPA would not recover any less, and MPA does not argue otherwise. Instead, MPA hinges its entire jurisdictional analysis on a simplistic reading of *Morrison*—tacking on federal securities claims solely to avoid litigating in Canada.

If this case truly implicated U.S. securities laws, MPA would have drafted its Complaint with a keener appreciation for the heightened pleading standards of the Private Securities Litigation Reform Act ("Reform Act"). Given that MPA's own executives were ensconced in Fenco's Toronto headquarters, gaining firsthand knowledge of the company and its principals before and after the acquisition, the Complaint's inability to articulate specific allegations is striking. It fails to plead falsity with the requisite particularity, much less a strong inference of scienter. And without a Section 10(b) claim, MPA has no Section 20(a) claim.

## II.   ARGUMENT

### A.   *Morrison* bars MPA's federal securities claims.

MPA's attempt to invoke federal securities claims to recover for a Canadian acquisition violates the Supreme Court's recent decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). There, the Supreme Court makes clear that "the focus of the Exchange Act" is on "purchases and sales of securities in the United States"—not "exchanges or transactions abroad." *Morrison*, 561 U.S. at 266, 269. To determine the limits of U.S. securities laws, *Morrison* mandates a "transactional test": The Exchange Act governs only (1) "transactions in securities listed on domestic exchanges" and (2) "domestic transactions in other securities." *Id.* at 267, 269. In its Complaint, MPA initially attempted to establish the second prong, representing that the Purchase Agreement was "executed in Los Angeles" and that "the transaction took place domestically in that title to MPA's shares were [*sic*] transferred within the United States." (Compl. ¶¶ 15, 85.) Faced with the undisputed fact that those events occurred in Canada, MPA's Opposition abandons this theory. Instead, MPA now

1  contends that the Exchange Act governs on the sole basis that MPA's stock is listed
2  on Nasdaq—the first prong—notwithstanding that the actual shares at issue were
3  transferred privately between the parties in Canada.  Whereas MPA was once
4  wrong on the facts, MPA is now wrong on the law.
5        While its shortcut may be superficially appealing, MPA oversimplifies
6  *Morrison*, ignoring that *Morrison*'s fundamental "focus [was] on where the
7  securities transaction ***actually occurs***, not the stock exchange where ministerial pre-
8  purchase activities were directed."  *In re Alstom SA Secs. Litig.*, 741 F. Supp. 2d
9  469, 472 (S.D.N.Y. 2010) (emphasis added).  After all, the reason federal securities
10 laws apply to "transactions in securities listed on domestic exchanges" in the first
11 place is not because the exchanges are themselves important.  Rather, the
12 presumption is that transactions that occur on those exchanges must have occurred
13 in the United States.  When that presumption proves false, however, and the
14 transaction at issue occurs abroad, courts interpreting *Morrison* have repeatedly and
15 consistently found that federal securities laws do not—and cannot—apply.  *See id.*;
16 *see also In re UBS Secs. Litig.*, 2011 WL 4059356, at *5 (S.D.N.Y. Sept. 13, 2011)
17 (rejecting plaintiffs' "listing theory" because "the [*Morrison*] Court makes clear
18 that its concern was with respect to the location of the securities ***transaction***")
19 (emphasis in original); *In re Royal Bank of Scotland Grp. PLC Secs. Litig.*, 765 F.
20 Supp. 2d 327, 335–36 (S.D.N.Y. 2011) (rejecting plaintiffs' theory that Section
21 10(b) applies when security is "listed" on domestic stock exchange regardless of
22 whether security is purchased in U.S. or through domestic exchange, because "the
23 [*Morrison*] Court makes clear its concern is on the true territorial location where the
24 purchase or sale was executed").  In short, under the first prong of *Morrison*'s
25 transactional test, federal securities laws apply only if the actual securities at issue
26 were themselves traded on the exchanges.  *See In re Alstom*, 741 F. Supp. 2d at 473
27 ("That the transactions themselves must occur on a domestic exchange to trigger
28 application of § 10(b) reflects the most natural and elementary reading of

*Morrison*."). Even if they were *listed* on Nasdaq, it is indisputable that the MPA shares at issue were not *traded* on Nasdaq—or any domestic exchange—but transferred privately in Canada. That alone is fatal to MPA's federal securities claims.

To apply Section 10(b) to MPA's purchase of Fenco would be to inject U.S. securities laws into a Canadian transaction—one already expressly governed by Canadian law—which is exactly the extraterritorial expansion that *Morrison* warned against. In an era where acquisitions often involve transfers of stock, MPA's position would mean that U.S. securities laws would apply all around the world—anywhere U.S. publicly listed companies use their stock to make foreign purchases. That is not—and cannot be—the law. Tellingly, in urging this Court to expand the Exchange Act's reach, MPA relies exclusively on broad, general principles and pre-*Morrison* cases. (*See* Opp. at 8–11.) But none of MPA's authorities supersedes *Morrison*'s ban on regulating foreign transactions. That MPA cannot cite one case in which a court has squarely held that federal securities laws apply to securities transferred privately outside the United States—especially when such deals happen all the time—only confirms that MPA's position is meritless. *See Morrison*, 561 U.S. at 269; *see also In re UBS*, 2011 WL 4059356, at *5 ("In rejecting the 'conduct' and 'effects' tests, the [*Morrison*] Court made clear that the purpose of the Exchange Act is limited to the protection of the United States' national interest in domestic securities transactions.").

**B.     In any event, MPA has not pleaded falsity and scienter with particularity.**

Even if the Exchange Act were to somehow extend to cover MPA's Canadian acquisition, MPA's federal securities claims still fail because MPA does not come close to meeting the requisite pleading requirements. As MPA concedes, under Federal Rule of Civil Procedure 9(b) and the Reform Act, the Complaint must at least allege the "who, what, where, when and how" of the alleged

misstatements. (Opp. at 12 (internal quotation marks omitted).) Further, the Complaint must show a "strong inference that [Defendants] acted with the required state of mind." (*See id.* at 13 (internal quotation marks omitted).) Because this is a private commercial dispute masquerading as an Exchange Act violation, MPA's Complaint barely addresses these familiar pleading requirements.

### 1. MPA's Complaint fails to show that Defendants made material misstatements.

MPA's Complaint fails the falsity test because it does not sufficiently plead "what" the alleged misstatements are and "how" they are misleading. MPA contends only that the Pre-Acquisition Financial Statements are false because they "did not conform with Canadian or U.S. GAAP." (Compl. ¶ 83; Opp. at 12.) But nowhere does the Complaint specify the exact GAAP provisions the Pre-Acquisition Financial Statements allegedly violated. This is a critical shortcoming because GAAP is an extensive framework of accounting principles, standards, and procedures. To allege that Defendants violated "GAAP" without naming exact provisions is tantamount to alleging that Defendants violated "federal laws" without naming exact statutes. Thus, unless MPA can articulate what exact GAAP provisions are at issue and how they were violated, Defendants have no way of refuting MPA's charge.[1] *In re Swift Transp. Co.*, 2006 WL 1805578, at *12–13 (D. Ariz. Mar. 29, 2006) (plaintiffs failed to allege with specificity how defendants' financial reports violated GAAP where "Plaintiff has not identified any GAAP principle" establishing impropriety of defendants' business decision). The same holds true for MPA's vague contentions that "the Principals" made

---

[1] Likewise, to the extent that MPA alleges that the Pre-Acquisition Financial Statements are false because they violate "Fenco's accounting policies," MPA must plead exactly what policies are at issue. In its Opposition, MPA contends that "summaries of Fenco's accounting policies [are] contained in the Pre-Acquisition Financial Statements" themselves. (Opp. at 13.) But as MPA's own filings show, the statements contain numerous policies spanning four pages. (*See* D.E. 23-8.)

misrepresentations and omissions relating to its "core liabilities," "side agreements with major customers," and "fill rates." (*See* Compl. ¶¶ 47–50, 53, 55, 83.) What exactly did Defendants allegedly represent about these subjects? Where were these alleged misrepresentations made? In the Pre-Acquisition Financial Statements? If so, what line, figure, or provision?[2] The Complaint provides none of these critical facts.

Further, the Complaint fails to adequately identify "who" made the alleged misstatements. In an attempt to make this showing, the Complaint resorts to group pleading, grouping the Individual Defendants together as the "Principals" and then indiscriminately attributing the alleged misrepresentations to all of them. (*See, e.g.*, *id.* ¶¶ 25, 44, 47–48, 53, 55.) But as numerous courts—including this Court—have found, group pleading is improper under the Reform Act. *See In re A-Power Energy Generation Sys. Ltd. Secs. Litig.*, 2012 U.S. Dist. LEXIS 79417, at *39 (C.D. Cal. May 31, 2012) (Wu, J.) ("This Court does not believe that so-called 'group pleading' is permissible under either the Private Securities Litigation Reform Act or 9(b), and is arguably impermissible even under Rule 8, given the Supreme Court's opinion in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).").

MPA's *pre*–Reform Act case law does not show otherwise. (*See* Opp. at 12.) While MPA cites *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987), to argue that an exception exists for company statements, courts have rejected that very contention, reasoning that *Wool*'s rationale did not survive the passage of the Reform Act. *Lapiner v. Camtek, Ltd.*, 2011 WL 445849, at *3 (N.D. Cal. Feb. 2,

---

[2] *See NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, 2013 WL 1188050, at *24–25 (D. Conn. Mar. 23, 2013) (identifying lengthy passages alleged to be fraudulent without specifying which statements are false "does not satisfy the particularity requirements of Rule 9(b) or of the PSLRA, as it fails to give Defendants adequate notice of the claims against them").

2011) (declining to attribute corporate statements in "public filings, press releases and other publications" to individual defendants because "the majority of district courts within the Ninth Circuit[] have concluded that group pleading is no longer viable under the [Reform Act]") (internal quotations omitted); *In re Amgen Inc. Secs. Litig.*, 544 F. Supp. 2d 1009, 1035–36 (C.D. Cal. 2008) (citing *Wool* as pre–Reform Act case and ultimately finding that "group pleading presumption no longer applies since the passage of the [Reform Act]").

Finally, it is particularly inappropriate for MPA to group together the Individual Defendants given their vastly different roles at Fenco and widely disparate levels of involvement in the sale to MPA. For example, by MPA's own account, it conducted most of its negotiations with Fenco former CEO Jack Shuster, whereas Paul and Joel Fenwick had very little, if any, involvement in the deal. (*See* D.E. 19 at 3–9.) Thus, when MPA alleges that "the Principals" made material misrepresentations, it is critical that MPA clarify whom exactly it means. *See Falat v. County of Hunterdon*, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (finding that complaint relied on "impermissibly vague group pleading" where complaint named numerous defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" because "Defendants have not been given fair notice of the allegations against them").

### 2. MPA's Complaint fails to show a strong inference of scienter.

Having failed to show that Defendants made material misstatements, MPA falls even shorter of its burden to show that Defendants had the requisite scienter. To show scienter, MPA argues that Defendants were controlling shareholders who stood to gain from MPA's acquisition of Fenco. (*See* Opp. at 14–15.) Job titles, however, do not equate to scienter. *In re Netflix, Inc. Secs. Litig.*, 2005 WL 1562858, at *8 (N.D. Cal. June 28, 2005) ("[G]eneral allegations of defendants' positions within a company, their 'hands-on' style of management, or access to

1  internal reports do not give rise to a strong inference of scienter."). Nor does the
2  potential for monetary gain. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1166
3  (9th Cir. 2009) (allegations concerning "nothing but 'motive and opportunity'" are
4  "not enough to create a strong inference of scienter"). Even together, position and
5  motive are insufficient to prove scienter: If they were enough, plaintiffs would
6  almost always be able to establish scienter against a company's officers and
7  directors in merger cases, given "personal profit motive is present in almost every
8  merger." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008)
9  ("We join our sister circuits and hold that evidence of a personal profit motive on
10 the part of officers and directors contemplating a merger is insufficient to raise a
11 strong inference of scienter."). While MPA contends that it has "identifie[d]
12 internal emails directly showing the Principals' scienter," the only emails the
13 Complaint cites are from Gordon Fenwick. (*See* Compl. ¶¶ 49–50, 55.) Emails
14 sent by one Defendant have no bearing on the other Defendants; even as to Gordon
15 Fenwick, they show only that he was aware of Fenco's practices relating to core
16 liabilities and fill rates, not that these practices were fraudulent.

  **C.**  **Having failed to establish a Section 10(b) claim, MPA cannot recover under Section 20(a).**

19   MPA does not dispute that it cannot recover against the Individual
20 Defendants under Section 20(a) if it fails to plead a Section 10(b) violation against
21 FAPL Holdings. (*See* D.E. 15-1 at 16–17.) Because MPA has failed to plead a
22 Section 10(b) claim against any of the Defendants, including FAPL Holdings,
23 MPA's Section 20(a) claim should be summarily dismissed.

24 **III.**  **CONCLUSION**

25   Despite MPA's reductive take on *Morrison*, the Supreme Court was clear
26 that U.S. securities laws are intended to protect the integrity of U.S. transactions.
27 Before MPA asks this Court to stake out new ground and extend the Exchange Act
28 to transactions anywhere in the world—including private transfers of shares that no

8

REPLY MEM. OF POINTS AND AUTH. ISO
DEFS' 12(b)(6) MOT. TO DISMISS
CV14-01153

domestic exchange facilitated—MPA should at least be able to point to one court that has suggested such an extraterritorial expansion is proper. It has not because it cannot. This Court need not indulge MPA's transparent bid to manufacture jurisdiction in California. This case is about a private Canadian transaction for a private Canadian company—and the contract, enforced under Canadian law, that governs the deal. If this Court chooses to exercise personal jurisdiction over Defendants, it should dismiss the federal securities claims. Or it can defer to a Canadian court, as the parties' contract has always envisioned.

Dated: June 5, 2014　　　　　　　　　　　O'MELVENY & MYERS LLP

　　　　　　　　　　　　　　　　　　　　By: */s/ Seth Aronson*
　　　　　　　　　　　　　　　　　　　　　　　Seth Aronson

　　　　　　　　　　　　　　　　　　　　Attorney for Defendants
　　　　　　　　　　　　　　　　　　　　FAPL HOLDINGS INC., JACK
　　　　　　　　　　　　　　　　　　　　SHUSTER, GORDON FENWICK,
　　　　　　　　　　　　　　　　　　　　PAUL FENWICK, and JOEL FENWICK