UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-1153-GW(JEMx) | Date | July 10, 2014 |
| Title | *Motorcar Parts of America, Inc. v. FAPL Holdings, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Franz Phillip Hosp<br>Michael F. Perlis | | Seth A. Aronson<br>William K. Pao |

PROCEEDINGS:   DEFENDANTS' MOTION TO DISMISS PLAINTIFF MOTORCAR PARTS OF AMERICA, INC.'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS [14];

DEFENDANTS' MOTION TO DISMISS PLAINTIFF MOTORCAR PARTS OF AMERICA, INC.'S FOURTH AND FIFTH CAUSES OF ACTION FOR VIOLATIONS OF SECTIONS 10(b) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 [15]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the above-entitled motions are TAKEN UNDER SUBMISSION. Court to issue its ruling.

                                                                                         :   40

                                                     Initials of Preparer   JG

*<u>Motorcar Parts of Am., Inc. v. FAPL Holdings Inc., et al.</u>*, Case No. CV-14-01153 GW (JEMx) Tentative Rulings on: (1) Motion to Dismiss Complaint for Lack of Personal Jurisdiction and *Forum Non Conveniens*, and (2) Motion to Dismiss Fourth and Fifth Causes of Action for Violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

## I. Background

Motorcar Parts of America, Inc. ("Plaintiff") sued FAPL Holdings Inc. ("FAPL") (a Canadian corporation) and four Canadian citizens – Jack Shuster, Gordon Fenwick, Paul Fenwick and Joel Fenwick (collectively with FAPL, "Defendants") – acting as FAPL's principals, based on the sale of capital stock of Fenwick Automotive Products Ltd. ("Fenwick Auto"), its affiliate Introcan, Inc., and their subsidiaries (collectively, "Fenco") to Plaintiff. *See* Complaint ¶¶ 1, 5-9. All four individuals were also officers and/or directors of Fenwick Auto. *See id.* ¶¶ 6, 8-9; Gordon Fenwick Decl. (Docket No. 14-3) ¶ 6.

Plaintiff's claims are for breach of contract, negligent misrepresentation, common law fraud, and violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Section 10b-5 of the Exchange Act Rule, 17 C.F.R. § 240.10b-5. As to the individual defendants, Plaintiff also brings a claim for violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t.

Defendants now move to: 1) dismiss for lack of personal jurisdiction or based on an application of the doctrine of *forum non conveniens*, and to 2) dismiss the federal securities claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Court will first address the personal jurisdiction/*forum non conveniens* motion, because its resolution will determine whether it should be this Court, or some other, that will confront the viability of Plaintiff's securities claims.[1] In fact, the resolution of that motion is a sufficiently close-call that the Court will refrain from issuing any tentative ruling on the Rule 12(b)(6) motion until it has reached a hard-and-fast decision on the personal jurisdiction/*forum non conveniens* motion.[2]

---

[1] Plaintiff has moved to strike portions of the Declaration of Jack Shuster submitted in connection the personal jurisdiction/*forum non conveniens* motion. *See* Docket Nos. 14-2, 25, 31. The Court sustains Objection Numbers 1-5, 7 (only as to the first and tenth sentences of paragraph 19), 9 (as to last three sentences of paragraph 22), 10 (except as to sentences five, nine and ten of paragraph 23), 11-13, 14 (except as to sentence one of paragraph 26), 16, 18 (only as to sentences two and three of paragraph 31), 20, and 22, and overrules Objection Numbers 6, 8, 15, 17, 19, and 21.

[2] If the Court ultimately concludes that a *forum non conveniens* dismissal is appropriate here, it need not even engage in a personal jurisdiction analysis. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227-28 (9th Cir. 2011).

1

## II. Analysis

### A. <u>Personal Jurisdiction</u>

As noted above, this case raises not only contract *and* tort claims, but it *also* includes claims under the Securities Exchange Act. In their Rule 12(b)(6) motion, Defendants raise strong arguments for why the Exchange Act claims are not appropriate here, but in order for the Court to address those arguments, it would have to first have personal jurisdiction over the Defendants. Once it had sufficient personal jurisdiction for purpose of resolving – and perhaps disposing of – the Exchange Act claims, the genie would be out of the bottle; personal jurisdiction would exist with respect to the remainder of the case as well. In other words, the Court cannot proceed to substantively resolve the Exchange Act claims in order to affect how it would then proceed to assess personal jurisdiction. The Court leads with this discussion because the presence of the tort claims, and *especially* the presence of the Exchange Act claims, may fundamentally alter the necessary personal jurisdiction analysis.

Defendants' opening argument on personal jurisdiction assesses the case as if the only claim at issue were a contract claim. *See* Docket No. 14-1, at 15:18-17:24. Typically, for contract claims, courts within the Ninth Circuit analyze the personal jurisdiction issue under a "purposeful availment" standard. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). What this means, at its essence, is that "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction." *Id.* As a result, the Ninth Circuit has instructed that, in contract-based matters, courts should look to whether the non-resident defendant agreed to any "ongoing obligations" in California, or the assumption of any "continuing commitments," or whether "performance of the contract require[d] the [d]efendants to engage in any substantial business in California." *Id.* If this case raised only a contract claim, Defendants might have a strong argument that the transaction at the heart of the case would be insufficient to establish personal jurisdiction over any of them.

However, where there are tort claims, the analysis is different. In that context, it is purposeful *direction* that matters.[3] *See Fiore v. Walden*, 688 F.3d 558, 576 (9th Cir. 2012),

---

[3] Contrary to Defendants' suggestion, *see* Docket No. 29, at 4:8-10, the "express aiming" or "purposeful direction" analysis does not examine which forum the various parties "expressly aimed" their activities at, nor at the forum where most of the overall activities were "expressly aimed." It looks only to where *the defendants* – the subject of the plaintiff's personal jurisdiction efforts – expressly aimed their activities (though some measure of comparative "aiming" might be appropriate in the context of assessing the *reasonableness* of an assertion of personal jurisdiction).

*rev'd*, No. 12-574, 2014 U.S. LEXIS 1635 (U.S. Feb. 25, 2014); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) ("[W]e believe that the Supreme Court's recent decision in *J. McIntyre Mach., Ltd. v. Nicastro*, __ U.S. __, 131 S.Ct. 2780 (2011), is consistent with the line of cases finding specific jurisdiction when there has been purposeful direction."); *see also Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) ("[I]n [intentional tort] cases the 'acts are performed for the very purpose of having their consequences felt in the forum state.'") (quoting *Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989)). *But see Wash. Shoe*, 704 F.3d at 673 n.2 (posing, but not resolving, question of whether "purposeful direction" – "purposeful availment" dichotomy still exists subsequent to plurality opinion in *J. McIntyre*, 131 S.Ct. at 2785-87).[4] Under this analysis, in order to invoke personal jurisdiction, a defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *See Wash. Shoe*, 704 F.3d at 673; *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1101 (2012).

Under that approach, the Court would have little difficulty concluding that personal jurisdiction existed here at least with respect to FAPL, Shuster and Gordon Fenwick. Plaintiff has presented evidence[5] tying Shuster and Gordon Fenwick to allegedly tortious representations

---

[4] The Supreme Court's recent decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014), clarified the necessary analysis for specific personal jurisdiction in tort cases, but did not signal any rejection of the Ninth Circuit's use of a purposeful direction-based construct. *See id.* at 1122 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."); *id.* ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); *see also id.* at 1123, 1126 (making clear that these principles apply to intentional tort claims).

[5] In determining whether Plaintiff has made a *prima facie* showing, "uncontroverted allegations in the complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (indicating that where the issue is decided without conducting an evidentiary hearing, plaintiff need only demonstrate facts that if true would support jurisdiction); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) ("[F]or the purpose of [demonstrating personal jurisdiction], the court resolves all disputed facts in favor of the plaintiff."). However, *in resolving conflicts*, "[a] prima facie showing must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts." *Oakley, Inc. v. Jofa AB*, 287 F.Supp.2d 1111, 1114 (C.D. Cal. 2003); *cf. America West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 800 (9th Cir. 1989) (noting in examining subject matter jurisdiction that plaintiff had "presented no competent evidence sufficient to rebut the defendants' affidavits"). If a defendant contests a plaintiff's *prima facie* showing, the plaintiff must ultimately prove the existence of minimum contacts by a preponderance of evidence, either at an evidentiary hearing or trial. *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n.3 (9th Cir. 1993); *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

directed at Plaintiff in California.[6] *See, e.g.*, Joffe Decl. (Docket No. 20) ¶ 10; *see also Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002) ("Because Watts and Boenneken knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers, we conclude that their actions were 'expressly aimed' at the forum state .... Watts and Boenneken's fraudulent communications were not 'untargeted negligence,' but rather were 'performed for the very purpose of having their consequences felt in the forum state.'") (quoting *Brainerd*, 873 F.2d at 1259-60); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1288 (9th Cir. 1977) ("The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement."); *see also Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) ("[A]ppellee Geneva Gambrell both purposefully directed her actions into the forum state and knew the brunt of the injury would fall on Neaves who lived and worked there. She asks us, however, to focus only on her conduct in mailing the fraudulent information, contending that it was 'only fortuitous' that the mailing was directed to California as opposed to, for example, Metropolitan's headquarters in New York. This argument, however, ignores the relevant consideration under *Calder* of the effect of the conduct in the forum state. When Gambrell addressed the envelope to Metropolitan, she was purposefully defrauding Neaves in California."). As to Paul Fenwick and Joel Fenwick, however, the Court would be inclined to conclude otherwise. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) ("Personal jurisdiction over each defendant must be analyzed separately.").

Plaintiff has evidence of Paul Fenwick and Joel Fenwick traveling to meet with Plaintiff's representatives in Los Angeles, but not of anything happening at those meetings that would demonstrate that Plaintiff's claims "arose out of" those meetings.[7] *See* Joffe Decl. ¶¶ 15,

---

[6] Plaintiff makes no attempt – or at least no *overt* attempt – to argue the existence of general personal jurisdiction over any of the defendants here.

[7] The allegations in Plaintiff's Complaint all refer generically to the "Principals" or the "Defendants," *see, e.g.*, Complaint ¶¶ 3, 44, 46, 48, 55, 71, 77, 82, 84 (the paragraphs specified in Plaintiff's Opposition brief, *see* Docket No. 19, at 12:12-15), but personal jurisdiction must be assessed on a defendant-by-defendant basis.

18; Lee Decl. (Docket No. 21) ¶¶ 7, 10[8]; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006) (*en banc*) (explaining that, among other things, for Constitutionally-sufficient "minimum contacts" to be present, the claim in question must be one "which arises out of or relates to the defendant's forum-related activities"). Plaintiff also presents evidence of unspecified "principals" and "personnel" associated with Fenco transmitting financial information to Plaintiff's Chief Financial Officer in Torrance on a weekly or daily basis, but it is unclear whether those individuals included Paul Fenwick and/or Joel Fenwick, or whether those transmissions were amongst those Plaintiff alleges were fraudulent. *See* Lee Decl. ¶¶ 3-4, 10. As the Supreme Court's recent decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014), now confirms, a defendant has to do something more than act in a tortious manner *outside* the forum state in a way that affects a known forum resident. *See, e.g., Pebble Beach*, 453 F.3d at 1157-58; *Schwarzenegger*, 374 F.3d at 799-800; *see also Wash. Shoe*, 704 F.3d at 675-79 (attempting to distinguish *Pebble Beach* and *Schwarzenegger*); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130-31 (9th Cir. 2010). Plaintiff apparently does not have that level of evidence with respect to Paul Fenwick and Joel Fenwick. Even if the Court were inclined to believe that any claims herein against Paul Fenwick and Joel Fenwick arose out of those defendants' purposefully-directed contacts with California, it would seriously consider *those defendants'* claims that jurisdiction over them would be unreasonable. *See Yahoo! Inc.*, 433 F.3d at 1206 (explaining that the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable, even if "arising out of" factor is satisfied).

Ordinarily, then, the Court would stop its analysis on this motion *now*, if only to allow Plaintiff the opportunity to ponder whether it still desired to proceed in this forum against only three of the five defendants it had sued, or whether it was more advantageous to instead initiate litigation elsewhere, where all five defendants could be held to account (if warranted). However, just as the tort claims prevent the Court from assessing personal jurisdiction here as if only a contract dispute were at issue, the Exchange Act claims preclude an ordinary tort-purposeful direction-based analysis.

Section 27 of the Securities Exchange Act confers personal jurisdiction over a defendant

---

[8] Joel Fenwick and Paul Fenwick both acknowledge such trips, but both also state that no negotiation of any transaction details took place during them. *See* Joel Fenwick Decl. (Docket No. 14-4) ¶ 7; Paul Fenwick Decl. (Docket No. 14-5) ¶ 7.

in any federal district court so long as the defendant has minimum contacts *with the United States in general*. *See Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985) ("[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district."); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1028-29 (9th Cir. 2009); 15 U.S.C. § 78aa. Contacts with the United States is all that is required. What is somewhat unclear is whether the second and third factors of the ordinary specific personal jurisdiction test – 2) arises out of/relates to and 3) reasonableness – apply, in their ordinary fashion, in the context of jurisdiction under the Exchange Act.

The Ninth Circuit does not appear to have spoken on that issue, though at least two district court decisions have applied those factors in the context of personal jurisdiction under the Exchange Act. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004); *In re LDK Solar Secs. Litig.*, No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 80717, *17-21 (N.D. Cal. Sept. 24, 2008); *S.E.C. v. Ficeto*, CV 11-1637-GHK (RZx), 2013 U.S. Dist. LEXIS 26223, *22-24 (C.D. Cal. Feb. 7, 2013). Thus far, at least, Defendants have focused their response to Exchange Act jurisdiction on the proposition that such jurisdiction is irrelevant because the Exchange Act claims themselves are insufficiently alleged and inappropriately asserted in light of the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). *See, e.g.*, Docket No. 29, at 4:4-7. But that puts the cart before the horse. If indeed they would make the same "arises out of" and "reasonableness" arguments as to at least Paul Fenwick and Joel Fenwick in connection with the Exchange Act claims, they have not explicitly done so thus far. On the other hand, apart from noting that personal jurisdiction in the context of Exchange Act claims looks to a defendant's minimum contacts with the United States in general, *see* Docket No. 19, at 10:20-24, Plaintiff has not directed much effort at explaining why that would make a difference with respect to the "arises out of" and "reasonableness" factors, or at arguing that those factors simply do not apply.

If indeed factors 2 and 3 of the normal specific jurisdiction test apply in the context of Exchange Act claims, the Court will undertake a detailed examination of at least the reasonableness of jurisdiction insofar as Paul Fenwick and Joel Fenwick are concerned. If those factors do not apply, the Court would be of the opinion that it is constrained to conclude that personal jurisdiction over all five defendants is proper here, including – because of the Exchange Act claims – over Paul Fenwick and Joel Fenwick. If it reaches that latter conclusion, remaining

would be the question of whether the Court should nevertheless dismiss the case upon an application of *forum non conveniens*.

### B. *Forum Non Conveniens*

In order to obtain a dismissal by way of *forum non conveniens*, Defendants bear the burden of "demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011). The "private interest factors" that the Court must take into consideration in resolving a *forum non conveniens* motion include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 1229. The "public interest factors" include "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Id.* at 1232. A district court may take evidence on such a motion. *See, e.g., Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011); *Leetsch v. Freedman*, 260 F.3d 1100, 1102 (9th Cir. 2001) (stating that a district court may abuse its discretion in the *forum non conveniens* context when it, among other things, relies on "a clearly erroneous assessment of the evidence") (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000)).

    1. Existence of Adequate Alternative Forum

No one disputes that Canada is an adequate alternative forum for the resolution of this dispute – brought against a Canadian holding company and four individual Canadian citizen defendants – concerning a California company's purchase of a Canadian company. This factor is therefore no roadblock to the Court granting Defendants' motion.

    2. Deference to Plaintiff's Choice of Forum

"When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." *Carijano*, 643 F.3d 1216, 1227 (9th Cir. 2011); *see also id.* at 1227 (indicating, in a case involving a forum plaintiff, that "[i]n weighing the relevant factors, the district court consistently understated Occidental's heavy burden of showing that the Los Angeles forum results in 'oppressiveness and vexation…out of all proportion' to the plaintiff's convenience.")

(quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)); *id.* ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.") (quoting *Piper*, 454 U.S. at 255). Plaintiff has its principal place of business in California, in this District. *See* Complaint ¶ 4. California is, therefore, a "presumptively convenient" forum, and Defendants consequently bear a "heavy burden" of demonstrating that the private and public factors "clearly point towards trial" in Canada.

### 3. Private Interest Factors
#### a. *The residence of the Parties and Witnesses*

As noted above, Plaintiff has its principal place of business in California, and Defendants are all Canadian citizens and residents of Toronto. *See* Shuster Decl. (Docket No. 14-2) ¶¶ 2, 6; Gordon Fenwick Decl. (Docket No. 14-3) ¶ 2; Joel Fenwick Decl. (Docket No. 14-4) ¶ 2; Paul Fenwick Decl. (Docket No. 14-5) ¶ 2; Joffe Decl. (Docket No. 20) ¶¶ 2, 5-6. The third-party witnesses the parties have identified, generally or otherwise, are located outside of California, and largely in Canada. *See* Shuster Decl. (Docket No. 14-2) ¶ 35; Gordon Fenwick Decl. (Docket No. 14-3) ¶ 15; Hosp Decl. (Docket No. 23) ¶ 18. Moreover, most of the third-party witnesses Plaintiff has identified are of Fenco's customers. *See* Hosp Decl. (Docket No. 23) ¶ 18. Although their testimony may be relevant, they can of course speak to only limited issues, and will therefore be only relatively minor witnesses.

Finally, at least to the extent Plaintiff's tort claims are concerned, evidence concerning the Canadian Defendants' state(s) of mind would presumably be of central concern. *See, e.g., Carijano*, 643 F.3d at 1230 ("Most of Plaintiffs' claims turn not on the physical location of the injury but on the mental state of the Occidental managers who actually made the business decisions that allegedly resulted in the injury.... [The district court] failed to consider how critical such locally-based evidence is to the litigation...."); *see also* Docket No. 19, at 22:3-4 ("[T]his lawsuit generally relates to misrepresentations made by Defendants in connection with the acquisition."). On balance, therefore, this factor slightly favors a conclusion that litigation would be more convenient in Canada.

#### b. *The Forum's Convenience to the Litigants*

There is no question that this forum is convenient to Plaintiff and, considering that its principal place of business is here, that convenience is, as noted above, due some measure of

significant consideration. It is equally plain that this forum is *inconvenient* for Defendants. They are, as noted, a Canadian holding company (with no current operations) and four individual Canadian citizens. It is, of course, true that they have traveled here in the past on business, including in connection with the transaction that is at the core of this dispute. But they make their home on the other side of the continent, and the individual defendants all have – as one might expect – personal reasons why litigating this matter in California would cause them some measure of hardship (though some of those reasons are more pressing than others). *See* Shuster Decl. (Docket No. 14-2) ¶¶ 4 (citing the cost of travel and the fact that his wife, who also resides in Canada, "suffers from fibromyalgia, which requires me to regularly provide her with assistance, such as accompanying her to doctor's appointments and helping with general household duties"); Gordon Fenwick Decl. (Docket No. 14-3) ¶ 5 (citing the cost of international travel and the fact that his wife "runs a small business in Canada, and she requires my assistance five days a week"); Joel Fenwick Decl. (Docket No. 14-4) ¶ 3 (citing cost of travel and fact that he had "started a real-estate brokerage business that is still in its early stages and requires my constant attention"); Paul Fenwick Decl. (Docket No. 14-5) ¶ 3 (citing cost of travel and the fact that he suffers from "a heart condition – which led to an emergency angiogram and a cardiac ablation – that currently prevents me from traveling for extended periods of time and is worsened by stress");. At the same time, Plaintiff questions why all four individual defendants would necessarily need to be here, in Los Angeles, for the entire trial or for any extended period of time.

In the end, the Court views this factor as largely neutral.

    c.   *Access to Physical Evidence and Other Sources of Proof*

Plaintiff emphasizes here that evidence relevant to Fenco is now in the hands of Fenco's bankruptcy trustee, *not* in Canada. *See* Daly Decl. (Docket No. 22) ¶ 3. But Defendants note that Fenco's bankruptcy proceeding is in *Delaware*, not California, meaning even those physical records once held or possessed by Fenco would not be readily available in California. *See id.*; Shuster Decl. (Docket No. 14-2) ¶ 33. Delaware, of course, is much closer to Ontario than to Los Angeles. In the end, however, with the ease of electronic transmission of documents, the present physical location of those documents is of somewhat less importance.

Physical evidence on Plaintiff's side of the deal will presumably emanate from Plaintiff's headquarters in Torrance, California, even if it is true that Plaintiff's representatives largely

9

worked out of Toronto during the due diligence process pre-dating the transaction. *See* Lee Decl. (Docket No. 21) ¶ 12; Shuster Decl. (Docket No. 14-2) ¶¶ 17, 20; Gordon Fenwick Decl. (Docket No. 14-3) ¶ 15.

Third-party physical evidence, however, would be overwhelmingly based in Canada. Defendants point out that much of the deal-work occurred in Toronto, the relevant agreements specify application of Ontario and/or Canadian law, Fenco was inspected and appraised in Canada by Toronto auditors, the relevant financial audits were prepared by Canada-based accountants, and Fenco was operated in Canada until its collapse. *See* Shuster Decl. (Docket No. 14-2) ¶¶ 5, 17, 20, 22, 27, 35; Gordon Fenwick Decl. (Docket No. 14-3) ¶ 15; Joffe Decl. (Docket No. 20) ¶ 19; Lee Decl. (Docket No. 21) ¶ 5. Canadian bankers and Canadian attorneys were of course involved in helping to fund and review the transaction. *See* Shuster Decl. (Docket No. 14-2) ¶¶ 18, 23; Joffe Decl. (Docket No. 20) ¶ 19. Reference, in at least the first instance, to Canadian Generally Accepted Accounting Principles ("GAAP") will be paramount in assessing Fenco's financials, even if Canada's version of GAAP "conforms, in all material respects, with" United States GAAP. *See* Shuster Decl. (Docket No. 14-2) ¶¶ 5, 17; Hosp Decl. (Docket No. 23) ¶ 10, Exh. N.

Defendant counters that, in recent years (before it ceased operations), much of Fenco's operations – at least in terms of its distribution and manufacturing – occurred outside of Canada. *See* Lee Decl. (Docket No. 21) ¶ 9; Shuster Decl. (Docket No. 14-2) ¶ 8. While that may be true, those operations (largely taking place in Pennsylvania and New Hampshire, at least insofar as Plaintiff has emphasized the point) had relatively little to do with the instant dispute, other than the impact they may have had on Fenco's financials. In any event, insofar as Fenco's financials are concerned, it is the state of mind of Defendants and Fenco's other employees in relation to those financials that is primarily of concern, at least insofar as the fraud claims are concerned.

In sum, therefore, this factor favors a conclusion that litigation would be most convenient in Canada.

### d. *Whether Unwilling Witnesses Can be Compelled to Testify*

As noted above, the third-party witnesses the parties have identified, generally or specifically, reside outside of California. Although Defendants have not specified particular

third-party witnesses, or whether, in fact, such witnesses would be *unwilling* to testify,[9] the third-party witnesses they have suggested as being to germane to a resolution of this dispute – including former Fenco employees who prepared Fenco financial statements, Fenco's auditors, and Canadian accountants, bankers and attorneys – are not located in California. They are, instead, largely located in Canada.

Plaintiff suggests that Defendants must actually show that the witnesses they have identified would be unwilling to testify. *See Carijano*, 643 F.3d at 1231. In *Carijano*, however, the proponent of the dismissal had neither shown, nor "even represent[ed]," that any witness is unwilling to testify. *See id.* That is not the case here. Moreover, in *Carijano* the opponent of the motion had presented five declarations from defendant's former employees who all indicated a willingness to testify. *See id.* Once again, that is not the case here. The Court finds Defendants' representations in this regard sufficient at this stage; as they have argued, there is virtually nothing to gain and potentially quite a bit to lose for any of the third-party witnesses involved in the preparation and examination of Fenco's financials and audits to testify here.

This factor, therefore, favors a Canadian forum.

### e. *The Cost of Bringing Witnesses to Trial*

Because the vast majority of party and third-party witnesses are to be found outside – and, in most cases, well outside – California's borders, the expense of bringing those witnesses to trial will be considerable, relatively speaking. If the case is to proceed in California, that cost will be borne, primarily, by four individuals and a holding company with no operations. This factor, therefore, counsels in favor of a conclusion that a Canadian court would be most convenient for resolution of this case.

### f. *The Enforceability of the Judgment*

Plaintiff has given the Court no reason to question Defendants' position that the enforceability of a Canadian judgment would pose no problems, or extra steps, should a verdict be rendered in Plaintiff's favor. On the other hand, a California verdict in Plaintiff's favor would still necessitate further steps to enforce that judgment. This factor, therefore, also favors a Canadian forum.

---

[9] Plaintiff argues that the Court should presume BDO Canada auditors would be willing to testify in California because Shuster was a former partner in BDO Canada. Defendants respond – logically, in this Court's view – that such a presumption is likely unwarranted considering that such testimony could expose the third party witnesses' to liability for themselves.

### g. *Any Other Practical Problems Making Trial Easy, Expeditious and Inexpensive*

It is not a practical "problem," but the Court also notes that when, in May 2013, the parties attempted to resolve this dispute pre-litigation by way of mediation, that mediation occurred in Toronto, before a Canadian Superior Court judge and University of Toronto law professor, *see* Shuster Decl. (Docket No. 14-2) ¶ 32 – a mediator Plaintiff asserts the parties selected "because he was one of the few mediators who was 'familiar with U.S. securities laws' and presumably able to assess the merits of [Plaintiff's] securities fraud claims." Hosp Decl. (Docket No. 23) ¶ 14, Exh. R; Docket No. 19, at 9:19-22.

Finally, the individual defendants assert that they have counterclaims against Plaintiff which will be governed – as a result of a choice of law clause in their employment agreements – by Canadian law.[10]

Both of these additional factors, if they are to be considered at all, favor Canada.

### 4. Public Interest Factors

#### a. *The Local Interest in the Lawsuit*

The Court has little difficulty concluding that there is a local interest in this lawsuit. *See Carijano*, 643 F.3d at 1232 ("The local interest factor has the different aim of determining if the forum in which the lawsuit was filed has its own identifiable interest in the litigation which can justify proceeding in spite of…burdens [associated with familiarity with the applicable law, docket congestion, and costs and other burdens on local courts and juries]."). Plaintiff is a California citizen, and it alleges that Defendants both defrauded it and breached the Purchase Agreement the parties entered. Plaintiff adds to those observations by arguing that Canada's interest in the lawsuit would be minimized by virtue of the fact that, prior to its corporate demise, Fenco had a much larger "footprint" in the United States than in Canada, and Canada's general interest in regulating Canadian corporations should be "diminished" where the corporation is no longer in business, the alleged fraud in question is directed at a foreign business, and involves shares traded on a foreign exchange. However, Plaintiff cites no authority in support of these points.

---

[10] Defendants also assert that Plaintiff and two of its senior management are already defendants in what Plaintiffs deem a "related case" already proceeding in Ontario. Aside from the fact that that lawsuit concerns employment-related fallout flowing from the transaction and Fenco's subsequent failure, however, the Court questions how "related" the case is to this one, and therefore sees little reason to place much emphasis on the existence and location of that suit.

12

b. *The Court's Familiarity with the Governing Law*

Defendants' repeatedly emphasize that the parties repeatedly agreed to application of Canadian law in various agreements – including the Purchase Agreement that is the focus of Plaintiff's breach of contract claim – related to the transaction at the heart of this litigation. Canadian law will, therefore, undoubtedly play some role in this litigation. What law will govern Plaintiff's tort claims is, at this juncture, somewhat uncertain, however. Defendants have directed the Court to California authority indicating that even the question of which forum's law would apply to those claims would itself be decided, under the circumstances of this case, by way of reference to the law of Ontario/Canada. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 467-71 & n.7 (1992). Plaintiff does not appear to take issue with that argument or application of that authority.

Obviously, federal statutory law would govern Plaintiff's Exchange Act claims. That last fact, however, does not dictate this Court's maintenance of this action, even if a dismissal would raise the possibility that an alternative forum would not recognize such claims upon re-filing. *See Howe v. Goldcorp. Invest., Ltd.*, 946 F.2d 944, 950-52 (1st Cir. 1991); *cf. Richards v. Lloyd's of London*, 135 F.3d 1289, 1294-96 (9th Cir. 1998) (en banc) (enforcing forum selection clause calling for case to be decided in England, despite argument that the clauses contravened strong public policy embodied in federal and state securities law and RICO, and despite Exchange Act's "anti-waiver" provision, 15 U.S.C. § 78cc(a), "because English law provides…sufficient protection" to the plaintiffs).

This factor favors a conclusion that Canada is the more convenient forum.

c. *The Burden on Local Courts and Juries*

A trial in this forum would of course burden this Court and the jury upon which it relies. But any case imposes such a burden. That burden, here, is no different in that regard, as there is clearly some measure of a connection between this dispute and this forum. That being said, the "hub" of this dispute would appear to be in Canada, though its "spokes" reach out to a variety of locations across much of North America.

On balance, this factor is largely neutral.

d. *Congestion in the Court*

Defendants surmise that Canadian courts would offer the parties a swifter resolution than California because of the existence of a special commercial court. However, apart from the fact

13

that the Court has sustained an objection to the evidence supporting this contention, even if admissible it would be based in some measure on speculation. Defendants have not provided the Court with any statistics about the relative caseloads of the *fora* implicated here, though this Court has previously generally recognized the relatively high caseload of this District, at least as compared to other federal districts.

As presented thus far, this factor does not favor Defendants.

   e. *The Costs of Resolving a Dispute Unrelated to a Particular Forum*

As noted, there is, in fact, a relationship between this dispute and this forum. This factor, therefore, does not favor Defendants.

  5. Conclusion in Balancing the Factors

There is an adequate available forum. Thus far, as set forth above, the Court has concluded that five of seven private interest factors fairly clearly favor a Canadian forum, that one at least slight favors that forum, and that the final one is neutral. However, Defendants have only thus far managed to demonstrate that one of the five public interest factors favor their position, while one of the remaining four appears neutral. If this were an exercise in simply making tally marks, Defendants would win. But, because Plaintiff has brought suit in its home forum (or one of its home fora), Defendants shoulder a heavy burden. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S.Ct. 568, 583 n.8 (2013) ("We have noted in contexts unrelated to forum-selection clauses that a defendant 'invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.'") (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). Assuming the Court reaches *forum non conveniens*, this is the question the parties should focus on answering at oral argument.