| | |
|---|---|
| 1 | SETH ARONSON (S.B. #100153) |
| 2 | saronson@omm.com<br>WILLIAM K. PAO (S.B. #252637) |
| 3 | wpao@omm.com<br>MICHELLE C. LEU (S.B. #285437) |
| 4 | mleu@omm.com<br>O'MELVENY & MYERS LLP |
| 5 | 400 South Hope Street<br>Los Angeles, California  90071-2899 |
| 6 | Telephone:   (213) 430-6000<br>Facsimile:    (213) 430-6407 |
| 7 | |
| 8 | Attorneys for Defendants<br>FAPL HOLDINGS INC., JACK SHUSTER, |
| 9 | GORDON FENWICK, PAUL FENWICK, and<br>JOEL FENWICK |

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MOTORCAR PARTS OF AMERICA, INC., a New York corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>FAPL HOLDINGS INC., a Canadian corporation, JACK SHUSTER, an individual, GORDON FENWICK, an individual, PAUL FENWICK, an individual, and JOEL FENWICK, an individual,<br><br>　　　　　　　Defendants. | Case No. CV14-01153<br><br>**DEFENDANTS' RESPONSIVE SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND** ***FORUM NON CONVENIENS***<br><br>Judge:　　　　Hon. George H. Wu<br>Courtroom:　　10<br><br>Complaint Filed: February 13, 2014<br>Trial Date:　　　N/A |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................3

    A. Personal jurisdiction is unwarranted because Paul and Joel did not "utiliz[e] instrumentalities of the U.S. capital markets." ................3

    B. MPA's conclusory, group-pleaded Section 20(a) allegations do not warrant personal jurisdiction over Paul or Joel. ............................5

    C. MPA cannot establish general jurisdiction over Paul or Joel. ..............8

    D. As this Court has already recognized, Paul's and Joel's limited California contacts do not warrant personal jurisdiction. .....................9

    E. Personal jurisdiction over Paul and Joel is unreasonable. ..................10

    F. The absence of personal jurisdiction over Paul and Joel is yet another reason why this Court should dismiss the entire case on *forum non conveniens* grounds. .........................................................11

III. CONCLUSION ...................................................................................................12

# TABLE OF AUTHORITIES

Page

**CASES**

*Alberts v. Razor Audio, Inc.*,
   2012 WL 530427 (E.D. Cal. Feb. 17, 2012) ........................................................5

*AT&T v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) ................................................................................7

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) ..............................................................................7

*Convergence Techs. (USA), LLC v. Microloops Corp.*,
   711 F. Supp. 2d 626 (E.D. Va. 2010) ................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   131 S. Ct. 2846, 180 L. Ed. 2d 796, 806 (2011) .................................................8

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ............................................................................5

*In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*,
   2012 WL 1322884 (C.D. Cal. Apr. 16, 2012) .....................................................7

*In re LDK Solar Secs. Litig.*,
   2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) ............................................3, 5, 8

*Kairalla v. Advanced Med. Optics, Inc.*,
   2008 WL 2879087 (C.D. Cal. June 6, 2008) .............................................5, 7, 8

*Kingsley Capital Mgmt., LLC v. Members of Bd. of Dirs. of Park Ave.
   Bank of New York as of 2008*,
   2012 WL 3542321 (D. Ariz. Aug. 15, 2012) ......................................................7

*Logan Intern. Inc. v. 1556311 Alberta Ltd.*,
   929 F. Supp. 2d 625 (S.D. Tex. 2012) ..............................................................11

*Memsys, Inc. v. Act Tech. Seed Fund, L.L.C.*,
   2010 WL 2402846 (E.D.N.C. June 14, 2010) ..................................................12

*Reese v. Malone*,
   2009 WL 506820 (W.D. Wash. Feb. 27, 2009) ..................................................5

# TABLE OF AUTHORITIES
# (continued)

**Page(s)**

*S.E.C. v. Dunn*,
   587 F. Supp. 2d 486 (S.D.N.Y. 2008) .................................................................. 5

*San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*,
   979 F.2d 1356 (9th Cir. 1992) ............................................................................ 7

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462, 97, S. Ct. 1292, 51 L. Ed. 2d 480 (1977) ..................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ......................................................................... 3, 8

*Secs. Investor Prot. Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) ............................................................................ 3

## I.   INTRODUCTION

MPA's purchase of Fenco—a family-owned Canadian company that had done business in Toronto for six decades—did not occur in California or anywhere else in the United States.  It did not involve Nasdaq or any other instrumentality of the U.S. capital markets.  The entire acquisition, from the negotiations to the signatures to the physical delivery of payment, was a private transaction, executed in the Toronto offices of MPA's and Fenco's Canadian counsel.  Not only was the deal largely confined to Canada, but none of Fenco's principals had less to do with MPA than Paul and Joel Fenwick, who visited California only twice during the process, both times to attend meet-and-greets that MPA hosted about potentially integrating the companies.  (D.E. 33 at 4.)  Neither meeting involved negotiations.

Given Paul's and Joel's limited contacts with California, this Court indicated in its July 10 Tentative Ruling that it was "inclined to conclude" that it did not have personal jurisdiction over Paul and Joel.  (*Id*.)  The facts and the law, even MPA's own allegations, support this conclusion.  The record, including MPA's declarations and correspondence with Fenco, shows that Paul and Joel remained on the sidelines, peripheral to the deal, and that neither purposefully directed any activities at California.  As this Court observed, "Plaintiff apparently does not have that level of evidence with respect to Paul Fenwick and Joel Fenwick," and it found no evidence "of anything happening at [the two California] meetings that would demonstrate that Plaintiff's claims 'arose out of' those meetings." (*Id.* at 4–5.)

If the issue were only MPA's breach-of-contract, negligent misrepresentation, and common-law fraud claims, it is indisputable that personal jurisdiction is absent.  But because MPA has attempted to improve its jurisdictional odds by twisting those claims into a federal securities case, this Court has asked for supplemental briefing on whether personal jurisdiction exists over Paul and Joel specifically for MPA's securities claims.  It does not.  The only difference now is that the personal jurisdiction analysis under MPA's securities claims takes a

broader view of minimum contacts, encompassing the United States in general. Even by that standard, Paul's and Joel's limited U.S. contacts had nothing to do with MPA's securities claims, which are based on Fenco's financial statements and not Fenco's operations.

Nothing in MPA's Supplemental Brief cures this deficiency. Although Defendants strongly dispute MPA's characterization of numerous facts, they focus here on the misconceptions underlying MPA's four jurisdictional arguments. First, MPA's contention that Paul or Joel "exploit[ed]" the U.S. capital markets misstates the nature of the parties' transaction. Fenco was a privately owned Canadian company; MPA bought it in Canada, in a Canadian law office, not through a U.S. public exchange. Second, MPA's contention that this Court automatically has jurisdiction over Paul and Joel as alleged "control persons" misses the mark because MPA has not shown that Paul or Joel controlled Fenco and, more importantly, MPA impermissibly substitutes statutory liability for personal jurisdiction. Third, by alleging that Paul and Joel had "continuous and systematic business contacts with the U.S.," MPA cites the standard for general jurisdiction—which it has never pursued—not specific jurisdiction. Fourth, as this Court has recognized, Paul's and Joel's attendance at the two California meetings does not constitute "purposefully directed conduct." Finally, even if MPA could establish that its claims somehow relate generally to Paul's and Joel's limited U.S. contacts, jurisdiction over two tangential Defendants would still be unreasonable—contrary to fair play and substantial justice—and, therefore, improper. The Court has already indicated a willingness to "seriously consider" declining the exercise of jurisdiction for precisely that reason. (D.E. 33 at 5.)

Without personal jurisdiction over Paul and Joel, judicial economy favors dismissal on *forum non conveniens* grounds. Rather than set the parties on a course toward two trials in two countries, the Court can ensure that this case is tried once, in Canada, where all Defendants are amenable to personal jurisdiction.

## II. ARGUMENT

The standard for personal jurisdiction is the same for MPA's securities claims as it is for MPA's other claims: (1) "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *See In re LDK Solar Secs. Litig.*, 2008 WL 4369987, at *5 (N.D. Cal. Sept. 24, 2008) (internal quotations omitted) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). While the Ninth Circuit has not explicitly held that the last two prongs apply to federal securities claim, district courts, including those in the Central District, have routinely applied both in determining jurisdiction. *See e.g.*, *In re LDK*, 2008 WL 4369987, at *5. Thus, the only difference in the jurisdictional analysis for MPA's securities claims and its other claims is that instead of considering only Defendants' contacts with California, the Court must consider Defendants' contacts with the United States in general. *See Secs. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985). Even taking into account Paul's and Joel's U.S. contacts, MPA cannot establish personal jurisdiction.

### A. Personal jurisdiction is unwarranted because Paul and Joel did not "utiliz[e] instrumentalities of the U.S. capital markets."

Ignoring that MPA's acquisition of Fenco was a private Canadian transaction, MPA first asserts that Paul and Joel are subject to personal jurisdiction because they "purposefully availed themselves of the instrumentalities of a national exchange." (D.E. 42 at 3.) The suggestion that Paul and Joel—or anyone at Fenco—exploited Nasdaq underscores the futility of MPA's securities claims. As

part of its acquisition/merger strategy, MPA targeted Fenco, pursuing it in Canada, appraising it in Canada, and ultimately purchasing it in Canada without any party availing itself of a public stock exchange. There is no dispute that MPA received title to Fenco's shares in Canada. (*See* Compl., Ex. A at 2.) There is also no dispute that Fenco's shares were not publicly traded, either in Canada or the U.S. (*See id.* at 4 ("there is no published market for the Purchased Shares").)

In an attempt to manufacture jurisdiction, MPA contends that its own stock trades on Nasdaq and that its own financial statements are reported to the SEC. (D.E. 42 at 3–4.) But the proper focus of inquiry is ***Fenco's*** stock and financial statements—not MPA's. After all, the transaction was the purchase of Fenco's stock, which was the object of MPA's pursuit, not MPA's stock, which was merely a means of payment. (*See* Compl., Ex. A at 2 (MPA shares as "Purchase Price").) MPA could have just as easily acquired Fenco by paying cash or issuing debt. Further, as MPA's own Complaint makes clear, the crux of MPA's securities claims is that Defendants made misrepresentations in ***Fenco's*** financial statements, causing MPA to overpay for ***Fenco's*** stock. (*See* Compl. ¶ 83 ("Defendants misrepresented and omitted facts material to Fenco's financial position"); *see id.* ¶ 85 ("MPA has suffered damages in that . . . it paid an artificially inflated price for the stock of Fenco.").) Not once in pleading its securities claims does MPA refer to MPA's financial statements. (*See id.* ¶¶ 81–92.)

MPA's contention that jurisdiction is proper because Paul and Joel knew that their alleged misconduct would impact MPA's SEC filings is meritless on its face. (*See* D.E. 42 at 4–5.) Countless transactions a publicly traded company engages in can have an impact on its financial statements. If MPA's position were credited, then anyone who has any dealings with a U.S.-listed company could be haled into a U.S. court on the basis that he knew or should have known that his actions could somehow impact the company's financial statements. That is not—and cannot be—the law. Not even MPA's own authorities sweep so broad. In those cases, the

1  defendants *directly* impacted the U.S. stock markets, either by preparing false
2  financial statements of a company listed on a U.S. exchange or by trading on inside
3  information on a U.S. exchange. *See, e.g.*, *S.E.C. v. Dunn*, 587 F. Supp. 2d 486,
4  509–10 (S.D.N.Y. 2008) (finding jurisdiction over officer of public company who
5  prepared company's misleading financial statements).[1]  Here, MPA does not allege
6  that Paul and Joel prepared even Fenco's financial statements, let alone MPA's, or
7  that Paul and Joel traded on inside information.

### B. MPA's conclusory, group-pleaded Section 20(a) allegations do not warrant personal jurisdiction over Paul or Joel.

By failing to assess Defendants individually, MPA's Section 20(a) allegations come nowhere close to establishing jurisdiction over Paul and Joel. As a threshold matter, MPA has not even established that Paul and Joel are "controlling persons." Of the 92 paragraphs forming MPA's Complaint, only two specifically mention Paul and Joel. And in those, MPA merely alleges that Paul and Joel are Canadian citizens who reside in Canada, that Paul and Joel were "controlling principals," and that Paul was a "director, vice-president and treasurer of Fenwick Auto" while Joel was a "director, vice-president and secretary of Fenwick Auto." (Compl. ¶¶ 8–9.) Such conclusory allegations, based on no more than a defendant's title, are insufficient for control-person liability. *See, e.g.*, *Alberts v. Razor Audio, Inc.*, 2012 WL 530427, at *6 (E.D. Cal. Feb. 17, 2012) ("Merely holding an executive position within a company is insufficient for control person liability [under Section 20(a)].") (internal quotations omitted); *Reese v.*

---

[1] *See also In re LDK*, 2008 WL 4369987, at *6 (finding jurisdiction over officers of U.S.-listed company who "signed the prospectus for the offering and caused it to be filed with the SEC"); *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *15 (C.D. Cal. June 6, 2008) (finding jurisdiction over officer of U.S.-listed company who was allegedly "personally involved in creating and disseminating the allegedly misleading statements"); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1068 (9th Cir. 2000) (finding jurisdiction over defendants that traded stock on U.S. exchange on inside information).

| | |
|---|---|
| 1 | *Malone*, 2009 WL 506820, at *10 (W.D. Wash. Feb. 27, 2009) (finding |
| 2 | "conclusory allegation that [defendant] acted as a controlling person" was "not |
| 3 | sufficient" to state Section 20(a) claim).  The remainder of the Complaint |
| 4 | impermissibly groups Paul and Joel together with the other Defendants.  As this |
| 5 | Court has already found, MPA cannot resort to group pleading to establish personal |
| 6 | jurisdiction; rather, "personal jurisdiction must be assessed on a defendant-by- |
| 7 | defendant basis." (*See* D.E. 33 at 4, n.7; *see also* D.E. 40 at 12 ("You can't say |
| 8 | defendants did this, and defendant did that and just lump them in a group.").) |
| 9 | Not only do MPA's allegations fall short, but the record shows that Jack |
| 10 | Shuster and Gordon Fenwick controlled Fenco, not Paul and Joel.  No transaction is |
| 11 | more important to a company than its sale, and as MPA's own evidence |
| 12 | demonstrates, Jack and Gordon led the negotiations while Paul and Joel stayed on |
| 13 | the sidelines.  MPA President and CEO Selwyn Joffe and MPA CFO David Lee |
| 14 | have both submitted declarations detailing extensive discussions with Jack and |
| 15 | Gordon. (*See* Joffe Decl. (D.E. 20) ¶¶ 8–10, 12, 13, 20; Lee Decl. (D.E. 21) ¶ 11.) |
| 16 | Neither declaration, by contrast, specifically mentions discussions with Paul or |
| 17 | Joel.  Similarly, none of the 17 e-mails attached to MPA's declarations shows any |
| 18 | direct communication between MPA and Paul or Joel.  And the only e-mails that |
| 19 | Paul and Joel themselves sent are internal Fenco communications that did not |
| 20 | involve anyone at MPA. (*See* Hosp. Decl. (D.E. 23), Exs. J, P, Q, U.)  These |
| 21 | include the emphatically cited "death bed" e-mail that MPA feigns alarm over, even |
| 22 | though MPA knew full well that it was acquiring a company in financial distress. |
| 23 | Finally, even assuming MPA has somehow shown that Paul and Joel are |
| 24 | "controlling persons," MPA's position improperly conflates the elements for |
| 25 | alleging liability with the requirements for establishing personal jurisdiction.  A |
| 26 | plaintiff that adequately pleads liability has shown only that a defendant may be |
| 27 | held to answer for alleged wrongdoing.  Where that defendant will be held to |
| 28 | answer—under what court's jurisdiction—is a separate analysis, and skipping past |

1  it violates constitutional due process.  While the Ninth Circuit initially held in *San
2  Mateo County Transit District v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d
3  1356 (9th Cir. 1992), that plaintiffs may establish jurisdiction for a control-person
4  claim by alleging that the defendant controlled the primary violator, a superseding
5  Ninth Circuit case rejected that approach.  In *AT&T v. Compagnie Bruxelles
6  Lambert*, the plaintiff alleged that the defendant owned and controlled the primary
7  violator, and by alleging liability under federal environmental law, the plaintiff
8  argued that it had also established jurisdiction.  *See* 94 F.3d 586, 588 (9th Cir.
9  1996).  Rejecting this approach, the Ninth Circuit found that plaintiffs "may not use
10 liability as a substitute for personal jurisdiction."  *See id.* at 590–91.  That is
11 because "[p]ersonal jurisdiction has constitutional dimensions . . . [and] Congress
12 cannot override the due process clause, the source of protection for non-resident
13 defendants."  *Id.* at 591.
14       Numerous courts concur, including courts addressing this issue in the
15 securities context.  *See, e.g.*, *In re Countrywide Fin. Corp. Mortg.-Backed Secs.
16 Litig.*, 2012 WL 1322884, at *8–9 (C.D. Cal. Apr. 16, 2012) ("Ninth Circuit law
17 requires the Court to evaluate an officer defendant's connection with a forum
18 separately from the allegations of control.") (citing *AT&T*, 94 F.3d at 590–91).[2]
19 And while the court in *Kairalla v. Advanced Medical Optics, Inc.* continued to
20 follow *San Mateo*, it is unclear whether the *Kairalla* court was aware of the Ninth
21 Circuit's subsequent decision in *AT&T*.  2008 WL 2879087 (C.D. Cal. June 6,
22 2008).  In any event, *Kairalla* is distinguishable because, there, plaintiffs alleged

---

[2] *Kingsley Capital Mgmt., LLC v. Members of Bd. of Dirs. of Park Ave. Bank of New York as of 2008*, 2012 WL 3542321, at *5–6 (D. Ariz. Aug. 15, 2012) (finding that "Arizona legislature may not use the Securities Act's scope of control person liability to extend the constitutional scope of personal jurisdiction") (citing *AT&T*, 94 F.3d at 590–91); *see also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 667–68 (6th Cir. 2005) (finding, after considering both *San Mateo* and *AT&T*, that "[t]he broad understanding of control person liability adopted by the [federal] securities laws cannot on its own support personal jurisdiction").

1 that the defendant was personally involved in creating and disseminating the
2 allegedly misleading statements and that he was responsible for "a significant
3 degree of day-to-day control" over the U.S.-listed corporation. *Id.* at *15. That is
4 plainly not the case here for Paul or Joel.

### C. MPA cannot establish general jurisdiction over Paul or Joel.

MPA's contention that Paul's and Joel's "continuous and systematic" contacts" with the U.S. give rise to jurisdiction is not even colorable. That is the test for general jurisdiction, not specific jurisdiction. *See* D.E. 42 at 7; *Schwarzenegger*, 374 F.3d at 801 (to establish general jurisdiction over nonresident defendant, plaintiff must show defendant engaged in "continuous and systematic" contacts"). MPA has already conceded that general jurisdiction is absent for all Defendants. (*See* D.E. 33 at 4, n.6 ("Plaintiff makes no attempt—or at least no *overt* attempt—to argue the existence of general personal jurisdiction over any of the defendants here.").) Even if MPA were attempting to assert general jurisdiction here, it would fail because Paul and Joel are domiciled in Canada, not the United States. *See* Compl. ¶¶ 8, 9; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796, 806 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

To the extent that MPA is attempting to use the general jurisdiction standard to somehow establish *specific* jurisdiction, MPA ignores that none of Paul's and Joel's U.S. contacts has any relevance to MPA's securities claims. In determining specific jurisdiction, numerous district courts, including the Central District, have weighed defendants' U.S. contacts only when plaintiffs' securities claims "arise" from these contacts. *See, e.g.*, *In re LDK*, 2008 WL 4369987, at *5 ("claim must be one which arises out of or relates to the defendant's forum-related activities"). In its Supplemental Brief, MPA itself acknowledges that the contacts must have a "sufficient nexus or connection" with its securities claims. (*See* D.E. 42 at 8.)

1  MPA's argument fails its own test.  Aside from the two California
2  meetings—which this Court already found did not give rise to MPA's claims—the
3  only other potential U.S. contacts here are Paul's management of Fenco's facilities
4  in the northeastern U.S., Joel's supervision of procurement, which at times included
5  procuring materials from U.S. suppliers, and Joel's U.S. client meetings.  (D.E. 42
6  at 9–10.)  Business practices, however, are not securities violations.  *See Santa Fe*
7  *Indus., Inc. v. Green*, 430 U.S. 462, 479, 97 S. Ct. 1292, 1304, 51 L. Ed. 2d 480
8  (1977) ("We thus adhere to the position that Congress by § 10(b) did not seek to
9  regulate transactions which constitute no more than internal corporate
10 mismanagement.") (internal quotations omitted).  MPA's securities claims hinge on
11 the alleged impropriety of Fenco's audited financial statements, not on Fenco's
12 manufacturing and sourcing operations.  (*See* Compl. ¶¶ 82–84 (alleging that
13 "Defendants misrepresented and omitted facts material to Fenco's ***financial***
14 ***position***") (emphasis added).)  Thus, for the purposes of jurisdiction, the only
15 relevant contacts are those relating to the making of the alleged misstatements.
16 MPA does not—and cannot—point to anything in the record showing that Paul and
17 Joel prepared Fenco's financial statements.

**D.   As this Court has already recognized, Paul's and Joel's limited California contacts do not warrant personal jurisdiction.**

20 MPA's attempt to relitigate the sufficiency of Paul's and Joel's limited
21 California contacts raises nothing new.  Again, MPA makes much of Paul's and
22 Joel's two California visits.  (*See* D.E. 42 at 10–12.)  But for the same reason that
23 this Court found that these contacts do not give rise to MPA's other common-law
24 fraud claims (*see* D.E. 33 at 4–5), they also cannot give rise to MPA's securities
25 fraud claims: at no time during these meetings did the parties negotiate the
26 transaction at issue, i.e., MPA's acquisition of Fenco.  While MPA now tries to
27 play up Paul's and Joel's involvement in those meetings—claiming that "Paul and
28 Joel were certainly not passive participants" and that they were "designated to lead

the operations and manufacturing group" (*see* D.E. 42 at 11)—MPA's counsel was less certain during the parties' July 10, 2014 hearing, admitting that Paul and Joel "were not the lead participants." (*See* D.E. 40 at 4.) And given that the Complaint improperly "lump[s]" Defendants in a group, none of MPA's repeated citations to the Complaint helps MPA establish jurisdiction. (*See* D.E. 40 at 12.)

### E. Personal jurisdiction over Paul and Joel is unreasonable.

Even assuming that MPA could show that its securities claims arise from Paul's and Joel's limited contacts with the U.S., this Court has already found serious questions as to the reasonableness—and, thus, appropriateness—of exercising personal jurisdiction. (*See* D.E. 33 at 5 ("Even if the Court were inclined to believe that any claims herein against Paul Fenwick and Joel Fenwick arose out of those defendants' purposefully-directed contacts with California, it would seriously consider *those defendants'* claims that jurisdiction over them would be unreasonable.").) On closer examination, there is no question that all seven reasonableness factors weigh against exercising jurisdiction over Paul and Joel.

- *First*, while the extent of all Defendants' "purposeful interjection" into the U.S. is minimal, that is especially true of Paul and Joel. Again, Paul and Joel visited California only twice during the acquisition process, and MPA's own evidence shows that it primarily dealt with Jack and Gordon. (*See supra* at 1, 6.)

- *Second*, the burden to Paul and Joel of litigating in California is substantial because both are Canadian citizens who reside in Canada. (P. Fenwick Decl. (D.E. 14-5) ¶¶ 2–3; J. Fenwick Decl. (D.E. 14-4) ¶¶ 2–3.)

- *Third*, the potential for conflict with the sovereignty of Defendants' state is high. MPA has alleged U.S. securities violations, but the law is clear that federal securities laws cannot apply to a private transaction in Canada. (*See* D.E. 15-1; D.E. 30.)

- *Fourth*, the U.S.'s interest in adjudicating this dispute is minimal because the actions and events on which MPA's securities claims turn—the preparation of Fenco's financial statements, MPA's due diligence, the parties' closing— all occurred in Canada, not the U.S. (*See* D.E. 14-2 at 6–10.)

- *Fifth*, Canada offers the most efficient resolution of this controversy. Every important event related to this transaction occurred in Canada, and the critical evidence and witnesses—who are outside this Court's subpoena power—are also in Canada. (*See* D.E. 14-1 at 18–20.)

- *Sixth and seventh*, the U.S. is not important to MPA's interest in convenient and effective relief, and there is no question that Canada qualifies as an alternative forum. By agreeing that Canada's laws apply and by waiving its objections to litigating in Ontario, MPA has already conceded that Ontario is both an effective and convenient venue. (*See* Compl., Ex. A at 20.)

Finally, there are special circumstances that make exercising jurisdiction over Paul and Joel unreasonable. This Court has already noted that "Defendants raise strong arguments as to why the Exchange Act claims are not appropriate here." (D.E. 33 at 2.) Given the Court's doubts about the viability of MPA's securities fraud case, it is thus unreasonable to exercise jurisdiction over Paul and Joel on the basis of claims that will, in all likelihood, be dismissed. If this were permissible, plaintiffs could almost always assert meritless claims just to create jurisdiction.

### F. The absence of personal jurisdiction over Paul and Joel is yet another reason why this Court should dismiss the entire case on *forum non conveniens* grounds.

If this Court finds that personal jurisdiction over Paul and Joel is unwarranted, judicial economy and the interests of justice strongly favor dismissal on *forum non conveniens* grounds. Keeping this case in California would invite duplicative proceedings and run the risk of inconsistent rulings. By contrast, given that ***all*** Defendants are amenable to personal jurisdiction in Canada, MPA's claims could be efficiently resolved in Canada together in a single forum. Where there is personal jurisdiction over some defendants but not others, courts have found dismissal appropriate on *forum non conveniens* grounds. *See, e.g.*, *Logan Intern. Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 634 (S.D. Tex. 2012) ("Because several defendants in this case are being dismissed for lack of personal jurisdiction,

judicial economy favors trying this case one time in the Canadian Lawsuit rather than having one trial in Canada and a second trial in Houston.").[3]

### III.  CONCLUSION

In its Tentative Ruling and again at the July 10, 2014 hearing, the Court recognized the uphill battle MPA faces in asserting Exchange Act claims against all Defendants, including Paul and Joel Fenwick.  While Defendants continue to believe that *Morrison*'s extraterritorial bar on the applicability of the U.S. securities laws would ultimately doom those claims, the Court need not reach that question.  Its initial doubts about exercising personal jurisdiction over Paul and Joel find decisive support in the record, which confirms that Paul's and Joel's limited contacts with both MPA and the United States do not give rise to MPA's securities claims.  Without personal jurisdiction over two Defendants, the Court can ensure that all Defendants appear together in Canada by dismissing on *forum non conveniens* grounds.  But even if the Court were to find personal jurisdiction warranted, it can still dismiss on *forum non conveniens* grounds, recognizing all the practical, commonsense reasons for resolving a dispute over a Canadian company, involving Canadian witnesses and Canadian law, in a Canadian court.

Dated: August 25, 2014                           O'MELVENY & MYERS LLP

By:  */s/ Seth Aronson*
    Seth Aronson
Attorney for Defendants
FAPL HOLDINGS INC., JACK SHUSTER, GORDON FENWICK, PAUL FENWICK, and JOEL FENWICK

---

[3] *Cf. Convergence Techs. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 642 (E.D. Va. 2010) (concluding transfer of multi-defendant case was "in the interest of justice" when only some defendants were subject to personal jurisdiction in transferor forum and all defendants were subject to personal jurisdiction in transferee forum); *Memsys, Inc. v. Act Tech. Seed Fund, L.L.C.*, 2010 WL 2402846, at *4 (E.D.N.C. June 14, 2010) (finding transfer appropriate where, without transfer, "plaintiff likely would have to re-file in [transferee forum] against defendants [] were the court to find personal jurisdiction lacking here").