LOCKE LORD LLP
MICHAEL F. PERLIS (095992)
mperlis@lockelord.com
CARY J. ECONOMOU (211438)
ceconomou@lockelord.com
F. PHILLIP HOSP (265225)
phosp@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone: 213-485-1500
Facsimile: 213-485-1200

Attorneys for Plaintiff
MOTORCAR PARTS OF AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTORCAR PARTS OF AMERICA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FAPL HOLDINGS INC., et al., <br><br> Defendants. | CASE NO. 2:14-cv-01153-GW-JEM <br><br> Honorable George H. Wu <br><br> **MOTORCAR PARTS OF AMERICA, INC.'S SUPPLEMENTAL REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** <br><br> [Pursuant to August 8, 2014 Order Re Supplemental Briefing, Dkt. 37] <br><br> Complaint Filed: February 13, 2014 <br> Trial Date: N/A |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT .................................................................................................. 1

    A.   Jurisdiction From Using Instrumentalities of U.S. Capital Markets ......... 1

    B.   Personal Jurisdiction Over Control Persons ............................................. 3

    C.   Contacts With the U.S. Establish Personal Jurisdiction ........................... 4

    D.   Joel and Paul Purposefully Directed Conduct to California
         That Had A Foreseeable Effect of Causing Injury in California. .............. 6

III. PERSONAL JURISDICTION IS NOT UNREASONABLE. ............................ 8

IV.  DISMISSAL BASED ON FORUM NON CONVENIENS IS IMPROPER..... 10

V.   CONCLUSION ............................................................................................. 12

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Action Embroidery Corp. v. Alt. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) .................................................................................1

*Asahi Metal Indus. Co. v. Sup. Crt. of Cal.*,
  480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ........................................8

*Boston Telecomms. Grp., Inc. v. Wood*,
  588 F.3d 1201 (9th Cir. 2009) ........................................................................10, 11

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ...........................8, 9, 10

*Burnham v. Sup. Crt. of Cal.*,
  495 U.S. 604, 110 S. Ct. 2105, 109 L. Ed. 2d 631 ................................................9

*Candela Corp. v. Palomar Med. Tech., Inc.*,
  No. 9:06-cv-277, 2007 U.S. Dist. LEXIS 19994
  (E.D. Tex. Feb. 22, 2007) .....................................................................................11

*Carijano v. Occidental Petro. Corp.*,
  643 F.3d 1216 (9th Cir. 2011) ..............................................................................10

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................................3

*CYBERsitter v. People's Rep. of China*,
  805 F. Supp. 2d 958 (C.D. Cal. 2011) ...................................................................2

*Dole Food Co., Inc. v Watts*,
  303 F.3d 1104 (9th Cir. 2002) ................................................................................9

*Gates Learjet Corp. v. Jensen,*
  743 F.2d 1325 (9th Cir. 1984) ..............................................................................11

*Grunenthal Gmbh v. Holz*,
  712 F.2d 421 (9th Cir. 1983) ..................................................................................9

*Herbert v. Fisher Sci. Co. LLC,*
  No. 13-00452 DKW-BMK, 2014 U.S. Dist. LEXIS 51436
  (D. Haw. April 14, 2014) ......................................................................................11

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990), cert. denied, 499 U.S. 976, 111 S. Ct. 1621,
  113 L. Ed. 2d 719 (1991) ................................................................................... 3

*Kedkad v. Microsoft Corp.*,
  No. C13-0141 THE, 2013 U.S. Dist. LEXIS 158470
  (N.D. Cal. Nov. 4, 2013) .................................................................................. 10

In re LDK Solar Secs. Litig., No. C07-05182 WHA, 2008 U.S. Dist. LEXIS
  (N.D. Cal. Sept. 24, 2008) ................................................................................. 3

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) .......................................................................... 11

*Metro. Life Ins. Co. v. Robertson Corp.*,
  84 F.3d 560 (2d Cir. 1996) ................................................................................. 8

*Panavision v. Toeppen,*
  141 F.3d 1316 (9th Cir. 1998) ............................................................................ 9

*Paracor Fin. Inc., v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ............................................................................. 3

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................. 1

*Sec. Investor Prot. Corp. v. Vigman*,
  764 F.2d 1309 (9th Cir. 1985) ................................................................... 1, 4, 8

*S.E.C. v. Ficeto*,
  No. CV 11-1637-GHK, 2013 U.S. Dist. LEXIS 26223
  (C.D. Cal. Feb. 7, 2013) ..................................................................................... 1

*S.E.C v. Softpoint, Inc.*,
  No. 95 Civ 2951 (GEL), 2001 U.S. Dist. LEXIS 286
  (S.D.N.Y. Jan. 18, 2001) .................................................................................... 8

*Sinatra v. National Enquirer, Inc.*,
  854 F.2d 1191 (9th Cir. 1988) ............................................................................ 9

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) .......................................................................... 10

*Walden v. Fiore*,
  — U.S. —, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) ....................................... 6

**STATUTES AND RULES**

15 U.S.C. § 78cc(a) ................................................................................................... 9

Exchange Act of 1934 ............................................................................... 1, 3, 4, 9, 10

Rule 8 ......................................................................................................................... 3

Rule 9(b) .................................................................................................................... 3

Rule 10b-5 ................................................................................................................. 3

**TREATISES**

4 Wright, Miller & Kane, Federal Practice Sc Procedure § 1067.1
 (2000 Pocket Part) ............................................................................................... 8

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

## I.  INTRODUCTION

Plaintiff Motorcar Parts of America, Inc. ("MPA") need only make a prima facie showing of jurisdiction in order to defeat a motion to dismiss.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  As set forth in its Oppositions to Defendants' Motions to Dismiss, its Supplemental Brief in Opposition and its Supplemental Reply Brief, MPA has done just that.  In fact, MPA has gone further by providing evidentiary documentation to support its allegations.

Plaintiffs, however, largely ignore the facts, allegations and evidence set forth by MPA (which, should the Court find it necessary, can be used to amend the complaint), discuss primarily the allegations of the original pleading, and attempt to deflect the Court's attention with evidentiary arguments not appropriate at this stage of the proceedings.  Nonetheless, it is clear that MPA made a prima facie showing providing this Court with an adequate basis in which to exercise personal jurisdiction over Joel and Paul Fenwick ("Joel and Paul").

## II.  ARGUMENT

### A.  Jurisdiction From Using Instrumentalities of U.S. Capital Markets

Under § 27 of the Exchange Act of 1934 (the "Exchange Act"), personal jurisdiction exists so long as a defendant has minimum contacts with the United States. *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[M]inimum contacts may be established either by purposeful direction or purposeful availment." *S.E.C. v. Ficeto*, No. CV 11-1637-GHK, 2013 U.S. Dist. LEXIS 26223, *14 (C.D. Cal. Feb. 7, 2013).  Defendants, in their Supplemental Brief, seem to forget this standard as they argue, almost exclusively and without merit, that Joel and Paul lack sufficient contacts.[1]  In fact, Defendants attempt to disprove the allegations of Joel and Paul's involvement with U.S. capital markets, which, at this stage, is not

---

[1] MPA suggests that if this Court has personal jurisdiction over Joel and Paul as to any claim asserted, it may exercise pendant personal jurisdiction over all claims, which are related. *See Action Embroidery Corp. v. Alt. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

1

warranted and unavailing. Indeed, "uncontroverted allegations in the complaint must be taken as true and conflicts between the facts contained in the parties' affidavits must be resolved in [MPA's] favor." *CYBERsitter v. People's Rep. of China,* 805 F. Supp. 2d 958, 966-67 (C.D. Cal. 2011).

In terms of the effect of Joel and Paul's conduct, Defendants ignore the fact that Joel and Paul: (i) warranted that certain financial statements provided by FAPL Holdings Inc. ("FAPL") to MPA were accurate (which they knew they were not); (ii) understood that FAPL's financial statements would be consolidated with MPA's financial statements and that the consolidated financial statements would be filed with the SEC in accordance with federal securities regulations and disseminated to U.S. investors; (iii) knew that, to the extent FAPL's financial statements were false, MPA's statements would also be false and would result in false information being injected into the market; and (iv) sold, on the NASDAQ, their MPA stock received in exchange for the sale of FAPL and earned a substantial benefit. (Compl. ¶¶ 30-38; Supp. Brief [Dkt. 42]). The Complaint alleges that Joel and Paul knew that the financial statements were false and that they had the ability to influence the content of the financial statements when they were provided to MPA. (Compl. ¶¶ 46, 49, 55, 77, 89.) More specifically, the Complaint alleges that Gordon Fenwick ***advised all the principals,*** which includes Joel and Paul, that "we are losing $5MM per month in Sales Revenue due to Fill Rate issues." (*Id.* ¶ 55.) This was never communicated to MPA. All of these factual allegations demonstrate Joel and Paul's knowledge of the fraudulent scheme undertaken by all the Defendants and directed at MPA in California as adequately alleged in MPA's Complaint.

The result of this fraud by Defendants was not an insignificant event. The Defendants' concealment, including that by Joel and Paul, of FAPL's true financial state and the misstated financials had a material, negative impact on MPA, which resulted in this lawsuit. (Compl. ¶¶ 56-59). Defendants try to minimize the realities and argue that all transactions in which a publicly traded company engages can have

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071

2
SUPPLEMENTAL REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

an impact on that company's financials such that anyone who deals with that company could expect to be haled into court. (Dkt. 43 at 4). Defendants are simply wrong. Rather, only those persons who defraud the company by providing materially false and misleading information that they knew or should have known would materially impact that company's financials could expect to be haled into court. That is the situation in which MPA finds itself, which is why, for the reasons set forth in MPA's Opposition Papers, the exercise of personal jurisdiction over Joel and Paul is proper.

### B. Personal Jurisdiction Over Control Persons

Section 20(a) of the Exchange Act imposes liability on persons who control a company that violates federal securities laws. In this case, Joel and Paul were controlling persons of FAPL, a primary violator of § 10(b) and Rule 10b-5. MPA has alleged that they exercised day-to-day control over the company and were able to influence its decisions such that they could have corrected misrepresentations contained in the financial statements. (Compl. ¶¶ 8, 9, 39, 82, 83, 89-91). Defendants ignore all of the allegations of control, which satisfy the pleading requirements for a Section 20 claim. *See Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1575 (9th Cir. 1990), cert. denied, 499 U.S. 976, 111 S. Ct. 1621, 113 L. Ed. 2d 719 (1991) (To establish "controlling person" liability, the plaintiff must show that a primary violation was committed and that the defendant "directly or indirectly" controlled the violator.).[2] Moreover, as combined 50% owners of FAPL, it is reasonable to infer that Joel and Paul were able directly or indirectly to control and exert influence over the policy and decision making process at FAPL. In fact, we know this to be true, and two examples include:

---

[2] Furthermore, the relevant pleading standard for a claim under § 20(a) is governed by Rule 8, not Rule 9(b). *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1201 (C.D. Cal. 2008) (quoting *In re LDK Solar Secs. Litig.*, No. C07-05182 WHA, 2008 U.S. Dist. LEXIS, *38 (N.D. Cal. Sept. 24, 2008)); *see also Paracor Fin. Inc., v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996) ("[P]laintiff need not show controlling person's scienter or that they 'culpably participated' in alleged wrongdoings.")

- As vice president of manufacturing and facilities, Paul was responsible for Fenco's manufacturing operations and facilities for Fenco's U.S. subsidiaries. (Joffe Decl., Ex. A at 32 (organizational chart with entities), 35-40 (facilities overview); Hosp Decl., Ex. G at 180 (management overview); Paul Fenwick Decl. ¶ 4.)
- As vice president of procurement and product development, Joel was responsible for sourcing cores, raw materials and new products from suppliers. (Joffe Decl., Ex. A at 32 (organizational chart), 35-40 (facilities overview); Hosp Decl., Ex. G at 172 (core procurement), 180 (management overview); Joel Fenwick Decl. ¶ 4.)

Notwithstanding, Defendants simply gloss over these facts suggesting that they are insufficient to establish personal jurisdiction. They are not. Even if an adequately pleaded Section 20 violation will not suffice to establish a prima facie showing of personal jurisdiction, the specific facts noted in the Complaint and MPA's Opposition Papers support an inference that Joe and Paul purposefully directed their activities to the forum (*i.e.,* the United States), which is sufficient for personal jurisdiction.

### C. Contacts With the U.S. Establish Personal Jurisdiction

Defendants seemingly forget that Section 27 of the Exchange Act, as interpreted by the Ninth Circuit, provides that personal jurisdiction over a foreign defendant exists in any U.S. district court if the foreign defendant has minimum contacts <u>anywhere</u> within the United States and not just with the particular state in which the federal court is located. *Sec. Inv. Prot. Corp. v. Vigman,* 764 F.2d 1309, 1316 (9th Cir. 1985). Thus, as previously explained Joel and Paul's business contacts with the U.S., whether characterized as continuous and systematic or otherwise, also provide a basis for specific personal jurisdiction. They include:

- Each owned 25% of Fenco and, as part of the "senior management team," they were personally involved in the "ongoing and judicious reviews of investment opportunities, including capital expenditures and acquisitions." (Hosp Decl., Ex. G at 167-68.)
- In 2005, Joel and Paul determined that Fenco "could no longer survive as a Canadian manufacturing company" and decided to relocate the company's manufacturing and distribution operations to the U.S. and Mexico. (*Id.* at 166.) In this respect, they concluded that U.S. manufacturing was

"advantageous" because of the "skilled labor force and modern assembly lines." (*Id.* at 173.)

- Joel and Paul were directly involved in the management of Fenco's U.S. operations and the irregular business practices that occurred on their watch were directly related to warranties in the Purchase Agreement and the misrepresentations alleged by MPA: (i) the extent of Fenco's outstanding core liabilities, (ii) the terms of side agreements with major customers and suppliers, (iii) inventory and payable amounts owed to vendors for pre-acquisition financial transactions, and (iv) inaccurate revenue forecasts using inflated filled rates. (Compl. ¶¶ 31-35, 83.)

- As vice president of manufacturing and facilities, Paul was responsible for Fenco's manufacturing operations and facilities for Fenco's U.S. subsidiaries. (Joffe Decl., Ex. A at 32 (organizational chart with entities), 35-40 (facilities overview); Hosp Decl., Ex. G at 180 (management overview); Paul Fenwick Decl. ¶ 4.) Paul had intimate knowledge of material facts that he did not disclose to MPA such as: (i) In October 2010, Gordon sent an email to him stating, "I stand behind my statement made ***at the management meeting*** 3 weeks ago, where I stated we are losing $5MM per month in Sales Revenue due to Fill Rate issues." (Compl. ¶ 55.) and (ii) despite the warranty in the Purchase Agreement relating to undisclosed contracts (Compl. ¶ 32), Paul knew about undisclosed supplier arrangements, which included an off the books agreement with Lap Co., a California based supplier, to obtain cores that Fenco needed in order to fill orders for Advance Auto Parts. (Hosp Decl., Ex. J at 203; Lee Decl. ¶ 9.)

- As vice president of procurement and product development, Joel was responsible for sourcing cores, raw materials and new products from suppliers. (Joffe Decl., Ex. A at 32 (organizational chart), 35-40 (facilities overview); Hosp Decl., Ex. G at 172 (core procurement), 180 (management overview); Joel Fenwick Decl. ¶ 4.) Fenco, through Joel, procured materials from California based suppliers including A-1 Automotive Core Supplier Company, Inc., Lap Co., WJB Automotive Inc., and The Recycler Core Company, Inc. In addition to his contacts with suppliers, ***Joel also met with customers in the U.S. to develop business.*** (Ex. U at 293 (meeting with Napa in Atlanta, GA).) Based on Joel's position, he knew material facts relating to Fenco's financial condition that were not disclosed in his meetings with MPA, which included: (i) he knew Fenco was losing $5

5

SUPPLEMENTAL REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

million a month due to fill rates. (Compl. ¶ 55.); and (ii) there was no money to pay suppliers.[3]

Therefore, it is clear that Joel and Paul had contacts with the U.S. that were directly related to MPA's claims such that personal jurisdiction is appropriate

Defendants are incorrect in contending MPA is basing personal jurisdiction on alleged business practices. The allegations are substantial and clear that Joe and Paul were responsible for managing Fenco's U.S. operations and the misstated financials that were provided to MPA, and quite frankly, this entire claim, resulted from, among other things, Joel and Paul's knowing misstatement and concealment of information relative to underreported cores, undisclosed customer agreements, underreported inventory and low fill rates. Thus, to the extent required, it is entirely proper for the Court to conclude that MPA's securities fraud claims "arise out of" Joel and Paul's contacts with the U.S. They are far from the "random, fortuitous, and attenuated" contacts discussed in *Walden v. Fiore*, — U.S. —, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014).

**D.    Joel and Paul Purposefully Directed Conduct to California That Had A Foreseeable Effect of Causing Injury in California.**

In considering all contacts with the U.S. as a whole, Joel and Paul also intentionally directed conduct towards MPA's management in California as follows:

- The financial statements presented at the first meeting with MPA were prepared using estimates and assumptions provided by Fenco's management, which includes Joel and Paul. (Joffe Decl., Ex. A at 107.)

- As part of Fenco's "senior management team," Joel and Paul were personally involved in the "ongoing and judicious reviews of investment opportunities, including capital expenditures and acquisitions." (Hosp Decl., Ex. G at 167-68). That is why they knew that MPA's first investment was not enough and travelled to California for an "IMPORTANT MEETING!!!,"

---

[3] In a subsequent email relating to an issue with a supplier, Joel advised Gordon to "stop smoking crack" and elaborated: "[W]e have no money to pay for cores- and the suppliers of New units won't ship us. We paid vendors a million a week the last 4 weeks. Need 4 million per week!! We have been on our financial death bed for months. Our buyers have their hands tied…. Sales and Purchasing take all the heat for our mess." (Hosp Decl., Ex. Q at 256.)

6

Ex. I at 202, to "discuss the possibility of MPA providing additional loans," (Joffe Decl. ¶ 15.) Despite Fenco's "deathbed" financial situation, Joel and Paul concealed the situation and did not correct the misleading picture painted by the 2009 Financial Statements. (Compl. ¶¶ 48-55.) They knew that Fenco was losing $5 million a week and had forecasted future revenue using fictitious fill rates but did not tell MPA. (*See id*. ¶ 55.) They also knew that MPA had federal securities laws reporting obligations and would be disclosing the financial statements to the investing public. (Joffe Decl. ¶ 13.)

- Joel and Paul returned to California in January 2011 for meetings during which they were designated to lead the operations and manufacturing group. (Ex. E at 140 (identifying person in charge as "Ops/Mfg – Steve/Doug; Fenco (Ray B.**/Paul F./Joel F.**)").) And, indeed, MPA's understanding of Fenco's operations and manufacturing was one of the primary incentives for it to acquire the company. (*See* Joffe Decl. ¶ 12; Shuster Decl. ¶ 9.)

- Joel and Paul also conducted conference calls with their MPA counterparts in so-called "combined MPA/Fenco group meetings" to develop a joint strategy centered on the strengths and weaknesses of each company. (Ex. E at 139-40.) At no point, did Paul or Joel disclose the substantial irregularities with their core receiving process, the fact that it was indebted with U.S. core suppliers, or the fact that Fenco was on its "financial deathbed." (Compl. ¶¶ 48-55.)

MPA has offered certain emails from Joel and Paul demonstrating their knowledge and participation in the scheme directed to MPA in California to induce MPA to buy FAPL. Those emails, (in particular, Exhibits P and Q to the Hosp Decl.) show Joel and Paul's knowledge regarding the dire financial situation of the company and the Defendants' penchant for concealment when it came to MPA. In fact, Joel references that FAPL has been on its "death bed" for months. (*Id*). Defendants interpret this statement as simply the company was in distress. However, any reasonable person knows the difference between distress and being on one's death bed; it is quite a distinction. Defendants also contend that the emails never went to MPA and are therefore irrelevant. Regardless of whether MPA received the emails, they show knowledge of falsity and concealment as to MPA by Joel and Paul, which the Complaint and those facts set forth in MPA's Opposition Papers clearly allege.

7

SUPPLEMENTAL REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Try as they might, Defendants cannot explain away these contacts with California and MPA to avoid this Court's exercise of personal jurisdiction.

## III. PERSONAL JURISDICTION IS NOT UNREASONABLE.

MPA has made a prima facie showing of personal jurisdiction over Joel and Paul, and Defendants' attempts to present a "compelling case" that the exercise of jurisdiction would be unreasonable, is without merit. If the plaintiff shows that defendants had substantial contacts with the United States, the court next must determine whether the assertion of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice' - that is, whether it is reasonable under the circumstances of the case." *S.E.C. v. Softpoint, Inc.*, No. 95 Civ 2951 (GEL), 2001 U.S. Dist. LEXIS 286, *7 (S.D.N.Y. Jan. 18, 2001) (quoting *Metro. Life Ins. Co. v. Robertson Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)). In this analysis, Defendants bear the burden to show "that the assertion of jurisdiction in the forum will 'make litigation so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to [their] opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478). Such unfairness will rarely be found, *see, e.g., Asahi Metal Indus. Co. v. Sup. Crt. of Cal.*, 480 U.S. 102, 116, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), and such a result is still less likely in a federal-question case coupled with nationwide service of process. *See, e.g., Softpoint, Inc.*, 2001 U.S. Dist. LEXIS 286, *7 (citing 4 Wright, Miller & Kane, Federal Practice Sc Procedure § 1067.1 at 169-70 (2000 Pocket Part)).

Defendants again ignore the plethora of allegations and facts MPA submitted in its Supplemental Brief (Dkt. 42). While Joel and Paul may have visited California only twice regarding MPA, their substantial contacts with the United States provide a proper basis for this Court to find personal jurisdiction. *Sec. Inv. Prot. Corp. v. Vigman,* 764 F.2d 1309, 1316 (9th Cir. 1985). In addition, the realities of modern transportation and communication, as well as the nature of civil litigation (Joel and Paul have retained a prominent, high-powered Los Angeles attorney and worldwide law firm to represent them in this action), serve to reduce the burdens of litigating in a

distant forum. *See, e.g., Burnham v. Sup. Crt. of Cal.*, 495 U.S. 604, 638-39 & n. 13, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (noting that "any [such] burdens that do arise can be ameliorated by a variety of procedural devices").

Also, at this stage, we do not know the extent of the application of Canadian law. The federal securities claims will always be governed by U.S. law. The fraud claims should certainly be governed by California law. Even if the other claims may be governed by Canadian law, at this stage in the proceedings, it is too early to know for sure.[4] Furthermore, California, and the Federal Courts here, both have a strong interest in seeing its U.S. securities laws enforced and providing redress for its residents and citizens. *See Dole Food Co., Inc. v Watts*, 303 F.3d 1104, 1115-16 (9th Cir. 2002); *Grunenthal Gmbh v. Holz*, 712 F.2d 421, 424-25 (9th Cir. 1983); *Panavision v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir. 1998). This is also confirmed by the anti-waiver provision of the Exchange Act. *See* 15 U.S.C. § 78cc(a).

In fact, MPA would not be able to bring its federal securities claims in Canada. That is a point that MPA made during oral argument to which Defendants never responded. Another critical question to which Defendants never responded, at oral argument or in their Supplemental Brief, is whether any claim is available to MPA by virtue of the potential expiry of the statute of limitations. To merely suggest that other claims or remedies are available without answering that key inquiry is certainly misleading to this Court.

California is also the most efficient forum. Defendants' arguments that Canada is more efficient because that is where the transaction occurred misses the point and ignores the nature of the factual allegations of MPA's Complaint. As Joel and Paul purposefully directed their conduct with the U.S. to influence MPA's decisions in California, the availability of an alternative forum is irrelevant. *See Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988); *Burger King*, *supra,*

---

[4] In any event, U.S. courts routinely deal with issues of foreign law and interpret it or apply it in cases before them. *See* Dkt. 19, pg. 17 n. 8 (citing examples).

471 U.S. at 477 (holding that if a nonresident has deliberately engaged in activities within the forum state, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."). Finally, Defendants argue that personal jurisdiction is unreasonable because of the insufficiency of the Exchange Act claims. However, this argument "puts the cart before the horse" as expressly noted by this Court (Dkt. 33, pg. 6), and again, not a proper basis for this Court to find the exercise of personal jurisdiction over Joel and Paul to be unreasonable.

## IV.   DISMISSAL BASED ON *FORUM NON CONVENIENS* IS IMPROPER.

The plaintiff's choice of forum is given great deference and places a significant burden on Defendants to establish oppression and vexation if the matter is not transferred. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 n. 8 (9th Cir. 2006). Plaintiff will reference only those factors the Court suggested may be in favor of a Canadian forum:

- **Adequate Alternative Forum.** As even Defendants conceded at the July 10 hearing, all of the same causes of action will not be available to Plaintiff in Canada. (Dkt. 40 [Transcript, July 10, 2014, 26:16-19]).

- **Deference of Plaintiff's Choice of Forum.** "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Carijano v. Occidental Petro. Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011).

- **Private Interest Factor: Location of Parties & Witnesses.** In accordance with the deference shown to California residents bringing suit in their home district, this factor weighs against granting the Motion. *See Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009) (finding the District Court had erred when it held the private interest factor concerning the parties' residence was "neutral" when plaintiffs were United States citizens and also noting that if plaintiff were a California citizen, he would have been "in a stronger position."); *see also Kedkad v. Microsoft Corp.*, No. C13-0141 THE, 2013 U.S. Dist. LEXIS 158470, *12 (N.D. Cal. Nov. 4, 2013) (location of witnesses in Libya does not outweigh plaintiff's choice of forum in the Northern District).

- **Private Interest Factor: Access to Evidence and Sources of Proof:** The Court suggested that this factor may favor a conclusion that litigation was more

convenient in Canada based on the analysis that documentary evidence may be primarily located in Canada. Plaintiffs would note that the Court, in its Tentative Order, correctly remarked that "with the ease of electronic transmission of documents, the present physical location of [the] documents is of somewhat less importance." (Dkt. 33 [Tentative Order, p. 9]). In addition, this matter does not involve an accident site or manufacturing site that needs to be viewed "as is". Documents can be scanned, uploaded and emailed to anywhere in the world. It is commonplace in today's litigation. Plaintiff would thus suggest that this factor is also neutral.

- **Private Interest Factor: Compelling Witnesses to Testify:** "[W]e have cautioned that the focus for this private interest analysis 'should not rest on the number of witnesses…in each locale' but rather the court 'should evaluate the materiality and importance of the anticipated…witnesses' testimony and then determine their accessibility and convenience to the forum." *Boston Telecomms.*, 588 F.3d at 1209 (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001)); *see also Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1335-36 (9th Cir. 1984) (holding that a district court should keep in mind that "the increased speed and ease of travel and communication…makes, especially when a key issue is the location of witnesses, no forum 'as inconvenient [today] as it was in 1947,'" when the Supreme Court decided *Gilbert. Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981)). Thus, this factor is neutral.

- **Private Interest Factor: Cost of Bringing Witnesses to Trial:** While each of the parties listed potential witnesses, at this early stage of the litigation, we do not have the precise number of witnesses in either locale who would need to testify at trial. However, it is agreed that witnesses, no matter where located, would need to travel regardless of whether venue is in California or Canada. Noteworthy, that in this technology age, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale. *See Herbert v. Fisher Sci. Co. LLC,* No. 13-00452 DKW-BMK, 2014 U.S. Dist. LEXIS 51436, *18-19 (D. Haw. April 14, 2014) (citing *Candela Corp. v. Palomar Med. Tech., Inc*., No. 9:06-cv-277, 2007 U.S. Dist. LEXIS 19994, *13 (E.D. Tex. Feb. 22, 2007)) ("With modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated…Given this reduced need for travel, the court concludes this factor does not weigh in favor of transfer, and is, at most, neutral."). Accordingly, the cost of bringing witnesses to trial should be a neutral factor.

- **Private Interest Factor: Enforcement of Judgment.** As there would be no problem enforcing a judgment in <u>either</u> forum, this factor should be neutral in the Court's final weighing. *See Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201, 1210 (9th Cir. 2009).

11
SUPPLEMENTAL REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

- **Private Interest Factor: Other Practical Problems:** The mediation in Toronto was attended by MPA subject to MPA's reservation of rights to pursue all remedies available to it in a U.S. court. *See* Hosp Decl., ¶ 14, Ex. R (Dkt. 23-12 [Page ID# 780]). This factor should be neutral.

- **Public Interest Factor: Court's Familiarity With Governing Law:** *See supra*, Section III. This factor should be, at the least, neutral.

In taking into account the above, the "disputed" factors appear to be more neutral than in Defendants' favor. Accordingly, dismissal on *forum non conveniens* grounds is improper.

## V. CONCLUSION

Defendants are operating under a "take the money and run" mentality. They came to the United States and sold their business; accepted U.S. securities; sold those securities for millions of dollars; and now, are trying to run with the money immune from the jurisdiction of this Court. For the foregoing reasons, the allegations, facts and evidence in this case are sufficient for the Court to exercise personal jurisdiction over Joel and Paul, the exercise of which would not be unreasonable. Moreover, dismissal based on *forum non conveniens* is not appropriate in this matter. As a result, Defendants' Motions to Dismiss should be denied.

Dated: August 29, 2014    LOCKE LORD LLP


By: */s/ Michael F. Perlis*
     Michael F. Perlis (095992)
     Cary J. Economou (211438)
     F. Phillip Hosp (265225)

Attorneys for Plaintiff
MOTORCAR PARTS OF AMERICA, INC.