SETH ARONSON (S.B. #100153)
saronson@omm.com
WILLIAM K. PAO (S.B. #252637)
wpao@omm.com
MICHELLE C. LEU (S.B. #285437)
mleu@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

Attorneys for Defendants
FAPL HOLDINGS INC., JACK SHUSTER, GORDON FENWICK, PAUL FENWICK, and JOEL FENWICK

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MOTORCAR PARTS OF AMERICA, INC., a New York corporation,<br><br>                              Plaintiff,<br><br>          v.<br><br>FAPL HOLDINGS INC., a Canadian corporation, JACK SHUSTER, an individual, GORDON FENWICK, an individual, PAUL FENWICK, an individual, and JOEL FENWICK, an individual,<br><br>                              Defendants. | Case No. CV14-01153<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF MOTORCAR PARTS OF AMERICA, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Hearing Date:   July 10, 2014<br>Judge:          Hon. George H. Wu<br><br>Complaint Filed:  February 13, 2014<br>Trial Date:       N/A |

1  On January 13, 2015, Plaintiff Motorcar Parts of America, Inc. ("MPA") filed a second Notice of Supplemental Authority, this time citing a First Circuit case, *C.W. Downer & Co. v. Bioriginal Food & Science Corp*, 771 F.3d 59 (1st Cir. 2014). (*See* D.E. 45.) *C.W. Downer* is an out-of-circuit decision that is neither new nor binding on this Court. Further, *C.W. Downer* is distinguishable on the facts and does not address *forum non conveniens*, which alone justifies dismissal here.

In *C.W. Downer*, the First Circuit found specific jurisdiction over defendant Bioriginal Food & Science Corp. because Bioriginal reached out and created "a four-year working relationship with [plaintiff Downer & Co.]," which required Bioriginal to have "an ***ongoing*** connection with Massachusetts in the performance under the contract." (*Id.* at 9 (emphasis added).) The court found persuasive that Bioriginal initiated discussions with Downer about a potential deal at Downer's Boston headquarters. (*Id.* ("[T]he genesis of the Downer engagement strongly supports the case for purposeful availment.").) Further, the court emphasized that Bioriginal and Downer entered into an ongoing services contract that required "Downer to undertake extensive activities on Bioriginal's behalf within Massachusetts." (*Id.* at 10.) Thus, it was indisputable that "Bioriginal reached out beyond Canada and into Massachusetts by entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum state." (*Id.* at 9 (internal quotations omitted).)

In contrast, this case is the complete opposite. Here, it was MPA that reached out into Canada, and the contract at issue—MPA's purchase of Fenco—envisioned continuing and wide-reaching contacts in Canada, not California. As Defendants have shown in their Motion to Dismiss, it was MPA that first approached Defendants about purchasing Fenco, a privately owned Canadian company. (D.E. 14-1 at 23.) It was MPA that ensconced itself in Fenco's headquarters and conducted extensive due diligence in Canada. (*Id.*) And after MPA traveled to Canada to close the deal, it was MPA that was committed to

1  continue running Fenco in Canada. (*Id.*) MPA's officers even became the sole
2  officers of Fenco—the public face of a Canadian company. (*Id.* at 22.) Indeed,
3  until Fenco filed for bankruptcy, it is undisputed that MPA operated Fenco as an
4  independent subsidiary in Canada. (*Id.*)

5  Finally, *C.W. Downer* in no way alters the analysis that personal jurisdiction
6  over the individual defendants is improper—especially as to Paul and Joel
7  Fenwick—and that dismissal is warranted on *forum non conveniens* grounds alone.
8  Paul and Joel Fenwick both remained on the sidelines during the negotiations (D.E.
9  43 at 10) and visited California only twice during the acquisition process to attend
10 meet-and-greets that MPA hosted about potentially integrating the companies.
11 (D.E. 29 at 14.) At no time during those meetings did the parties negotiate the
12 details of the deal. (*Id.*) As for the doctrine of *forum non conveniens*, *C.W.*
13 *Downer* does not address it at all, and, as previously discussed, the practical and
14 convenience concerns at the heart of the doctrine strongly weigh in favor of
15 dismissal. (*See* D.E. 14-1 at 26–30; D.E. 29 at 14–20.)

Dated: January 14, 2015            O'MELVENY & MYERS LLP

                                   By:   /s/ Seth Aronson
                                         Seth Aronson

                                   Attorney for Defendants
                                   FAPL HOLDINGS INC., JACK SHUSTER,
                                   GORDON FENWICK, PAUL FENWICK,
                                   and JOEL FENWICK